IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:13-cr-00147 |
| v. | ) | |
| MO YUN, | ) | GOVERNMENT'S BRIEF IN SUPPORT OF MOTION FOR PRETRIAL DETENTION |
| Defendant. | ) | |

COMES NOW the United States by its undersigned attorney, and in support of government's motion for pretrial detention, states the following:

**BACKGROUND**

On or about June of 2011, the Federal Bureau of Investigation (FBI) learned of an apparent attempt to remove inbred corn seed constituting the valuable intellectual property of Pioneer Hi-Bred from an unmarked field near Dysart, Iowa. One of the individuals involved in the apparent theft was later identified as defendant, Mo Hailong.

Based upon this incident and other subsequently developed information, the FBI commenced an extensive ongoing investigation into the alleged conspiracy to steal trade secrets from several U.S. seed companies.

On or about December 11, 2013, defendant Mo Hailong, was arrested at his Boca Raton, Florida residence pursuant to a criminal complaint charging him with conspiracy to steal trade secrets in and about the Southern District of Iowa. Search warrants were executed at the defendant's residence and office contemporaneous with his arrest. Pursuant to said search warrants, law enforcement seized a significant volume of electronic evidence to include E-mail and other correspondence between defendant, Mo Hailong, and other members of the conspiracy.

On December 17, 2013, defendant, Mo Hailong, along with five other Chinese Nationals, were indicted by a Southern District of Iowa grand jury for conspiracy to steal trade secrets between April of 2011 and December of 2012.

At the time of his arrest, defendant, Mo Hailong, was a legal permanent resident of the United States residing with his wife and two children in Boca Raton, Florida. Following a contested detention hearing, defendant, Mo Hailong, was ordered detained by a Florida magistrate and ordered transported to the Southern District of Iowa.

Upon defendant, Mo Hailong's, arrival in Iowa, counsel for the government and the defense negotiated a detailed stipulation for home incarceration pending trial.

At the same time, law enforcement continued its review of the electronic evidence seized from defendant, Mo Hailong's, residence and office. As a result of that review, law enforcement uncovered additional evidence of the conspiracy. More specifically, law enforcement discovered the ongoing conspiracy to steal trade secrets began at least as early as January of 2007, and involved several additional, previously unidentified, individuals.

As a result of this newly discovered information, law enforcement began watching for any travel to the United States by the newly discovered conspirators. On or about June 22, 2014, law enforcement received information indicating one of these individuals, defendant, Mo Yun, would be arriving in the United States from China on June 25, 2014.

On July 1, 2014, Magistrate Judge Celeste F. Bremer signed a criminal complaint and arrest warrant charging defendant, Mo Yun, with conspiracy to steal trade secrets. Defendant, Mo Yun, was arrested later that same day as she attempted to board a return flight to China with her two children, ages 12 and 5. Even after being advised she was under arrest, defendant, Mo Yun, was not handcuffed or restrained. After deciding to place her children on their originally

scheduled flight, defendant, Mo Yun, was allowed to remain in the gate area until her children were safely on board the aircraft. It wasn't until the defendant, Mo Yun, was transported from the airport that law enforcement placed her in hand restraints.

Following a brief initial appearance on July 2, 2014, defendant, Mo Yun, appeared before a Magistrate Judge in the Central District of California for a detention hearing on July 3, 2014. At the conclusion of the detention hearing, the magistrate judge ordered the release of the defendant to a private security firm[1] for immediate transport to the Southern District of Iowa. The Order also required: electronic monitoring, home incarceration and the posting of a $500,000 cash appearance bond. While not part of the written order, the magistrate made clear that his order was not intended to govern the entirety of the case, rather it was intended to cover the period of her release from custody in California to her arrival in Iowa. Upon filing of an appeal by the government, the magistrate judge stayed its release order.

On July 8, 2014, the magistrate judge accepted a stipulation entered into by the parties, whereby the defendant, Mo Yun, would be escorted from California to Iowa by federal agents. Upon her arrival in Iowa, the parties agreed the defendant, Mo Yun, would submit to home incarceration pending a detention hearing in the Southern District of Iowa.

## LAW

The Bail Reform Act provides "upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be . . . detained under subsection (e) of this section." 18 U.S.C. § 3142(a). Section 3142(e) provides that "[i]f, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably *assure the appearance of*

[1] Steven Martinez, a former Assistant Director of the Federal Bureau of Investigation, is a managing director of the private security firm.

*the person as required* and the safety of any other person and the community, he shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e) (emphasis added). The government must prove by a preponderance of the evidence that the defendant presents a serious flight risk. *United States v. Hoover*, 2014 Wl 2094201 (D. Ariz) at *2. Once proven, the district court evaluates § 3142(g) factors, which "include the nature and seriousness of the charges, the substantiality of the Government's evidence against the arrestee, the arrestee's background and characteristics, and the nature and seriousness of the danger posed by the suspect's release." *United States v. Salerno*, 481 U.S. 739, 742-43 (1987) (citing 18 U.S.C. § 3142(g)). The arrestee's background and characteristics include "the person's character, physical and mental condition, *family ties*, *employment*, *financial resources*, *length of residence in the community*, *community ties*, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . ." 18 U.S.C. §3142(g)(3)(A) (emphasis added). "The weight to be accorded to each of [§3142(g)] factors rests in the district court's discretion." *United States v. Gentry*, 455 F.Supp. 2d 1018, 1020 (D. Ariz. 2006).

## ARGUMENT

**The defendant poses a significant flight risk and should be detained pending trial**

After weighing the relevant factors set forth in §3142(g), the defendant, Mo Yun, poses a significant risk of non-appearance and pre-trial detention is appropriate.

**1. The nature and seriousness of the offense are such to induce flight**

The Superseding Indictment charges Mo Yun with conspiracy to steal trade secrets in violation of Title 18, United States Code, Section 1832. Although this crime does not carry a rebuttable presumption of detention, if convicted of said charge, Mo Yun faces a statutory maximum 10 years imprisonment, up to a $250,000 fine, not more than 3 years of supervised

release and a mandatory $100 special assessment. The superseding indictment also contains a notice of forfeiture.

The Superseding Indictment sets forth the complex, long-term, scheme whereby Mo Hailong, Mo Yun, and others conspired to knowingly and intentionally steal trade secrets belonging to several U.S. seed companies. Based upon evidence gathered to date, law enforcement conservatively estimates the victims loss to exceed 500 million dollars. If convicted, Mo Yun, could be ordered to compensate the victims for their loss.

As set forth in the indictment, the defendant's role in the conspiracy is detailed in overt acts 27 - 32:

> "27. On or about January 16, 2007, Defendant, LI SHAOMING, advised Defendant, MO HAILONG, also known as, Robert Mo, that, "MO Yun is in charge of the specifics from the home country side. She will contact you and work with you. I hope we can gather 1000 pieces of the top notch corn hybrids or inbred lines currently available in the U.S. It's even better if we can collect the elite breeds that are being tested…."
>
> 28. On or about January 18, 2007, Defendant, MO HAILONG, and Defendant, MO YUN, discussed what seeds to collect. Defendant, MO YUN, instructed Defendant, MO HAILONG, to "….send to Dr. LI, he can check which is better."
>
> 29. On or about June 29, 2007, Defendant, MO HAILONG, and Defendant, MO YUN, discussed the advantages of purchasing farmland to facilitate their plans. Defendant, MO HAILONG, advised Iowa farmland is affordable. Defendant, MO HAILONG, stated the purchase of land would be good for business as they could hire 2-3 individuals from DBN and plant to get the "parent of germplasm." Defendant, MO YUN, agreed and instructed Defendant, MO HAILONG, to contact the farms' owners to learn more about their purchase.
>
> 30. On or about September 17, 2007, Defendant, MO YUN, asked Defendant, MO HAILONG, if he could get any corn. Defendant, MO HAILONG, explained it's easy to pick and take pictures but caution is needed to drive somewhere unseen as more vehicles are passing by.

31. On or about October 31, 2007, Defendant, LI SHAOMING, told Defendant, MO HAILONG, he will be speaking with Defendant, MO YUN, about sending additional personnel to assist Defendant, MO HAILONG, with seed collection activities.

32. On or about January 2, 2008, Defendant, MO YUN, informed Defendant, MO HAILONG, that Defendant, LI SHAOMING, is very glad to see the performance of the seeds Defendant, MO HAILONG, had sent. Defendant, MO YUN, told Defendant, MO HAILONG, that his work in the United States is very important to Defendant, LI SHAOMING'S, plan. Defendant, MO YUN, told Defendant, MO HAILONG, that "Zhang Hongwei" was asked to test the DNA of all important seeds."

The defendant cites *United States v. Lopez* for the proposition that "lack of evidence regarding her role weighs strongly in favor of setting reasonable conditions of pretrial release." Def. Br. at 15. In *Lopez,* the court held that the defendant's "comparatively limited role in the alleged conspiracy" mitigated concerns about pretrial release involving the dangerousness posed to the community, not to his risk of flight. *United States v. Lopez,* 827 F.Supp. 1107, 1110 (D. N.J. 1993).

While perhaps not extensive, evidence of Mo Yun's involvement in the conspiracy is far from weak. In spite of the fact they were made early in the conspiracy, these communications clearly show Mo Yun's knowledge of, and active participation in, key aspects of the conspiracy to steal trade secrets. A conspiracy which continued unabated until on or about December of 2012.

**2. The history and characteristics of the defendant demonstrate a high risk of non-appearance**

The district court must evaluate the defendant's background and characteristics including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

proceedings . . . ." 18 U.S.C. § 3142(g)(3)(A). The defendant's background and characteristics are such that pre-trial detention is necessary because of the defendant's significant risk of flight.

Mo Yun is a 42 year old lifelong resident of the People's Republic of China. Mo Yun resides in China with her husband, Shao Genhuo, and their two children. At the time of her arrest, she had been present in the United States for approximately seven days pursuant to a B-1/B-2 Visitor's Visa. Unlike her brother and co-defendant, Mo Hailong, Mo Yun has no long term status permitting her presence in the United States. As a result of her recent arrest, an immigration detainer has been lodged by U.S. Customs and Border Protection.

The defendant, Mo Yun, has limited ties to the United States and no ties to the Southern District of Iowa. In addition to her brother and codefendant Mo Hailong and his family in Florida, the defendant has a niece in New York and a sister-in-law in Texas. Shao Genhuo, her husband, is the founder and Chief Operating Officer of Beijing Dabeinong Technology Group Company (DBN) in China. As of July 16, 2014, The Forbes List approximates Shao Genhuo's net worth to be 1.3 billion dollars.

The People's Republic of China has no extradition treaty with the United States. If the defendant were to return to China, she would have virtually no incentive to return to the United States for trial. Any warrant or other process issued by this court would be completely ineffective to secure her return. This is further illustrated by the fact that none of the remaining indicted defendants have contacted the U.S. government, or attempted in any way, to return to the United States to answer an indictment which is well publicized in China.

All of these factors point strongly to the fact that Mo Yun is a significant flight risk. The biggest being her undoubtedly strong and resilient ties with China. Ms. Mo lives in China and is a Chinese citizen. Her family's wealth is sizeable – in the billions of dollars. She lives in a country which does not have an extradition agreement with the United States. Although "alienage does not by itself tip the balance either for or against detention" it is a factor that the district court must consider. *United States v. Garcia*, 801 F.Supp. 258, 262 (S.D. Iowa 2000). In *Garcia*, the court found that an illegal alien in the United States did not by itself determine pre-trial detention. In deciding that Garcia did not pose a significant flight risk back to Mexico, the court noted that Garcia's girlfriend and five children all lived in the U.S., that Garcia had resided in the U.S. continuously for the previous nineteen years, Garcia's parents, siblings, and other relatives all lived in the U.S., that Garcia was educated in the U.S. and he was currently employed in the U.S.

Ms. Mo relies on *Garcia* in support of her argument for pre-trial release based on her alienage. That reliance is ill-founded. Almost all of Ms. Mo's relatives live in China – including her children, her husband, and her ailing parents, – Ms. Mo has never resided in the United States, she has no community ties here, she is not employed in the United States, and has many significant reasons to flee.

Although Ms. Mo does not have a history of eluding or escaping charges, she has no incentive to stay in the United States and has every reason to flee to China. In *Stenger*, the court held that although the defendant did not pose a flight-risk – because he had completed probation successfully in the past, was a lifelong resident of Iowa, had strong family ties to Iowa, and had no history of failing to appear, – he did pose a significant danger to the community and was therefore placed in pre-trial detention. *United States v. Stenger,* 436 F.Supp. 2d 1022, 1025

(S.D. Iowa 2008). Unlike *Stenger,* Ms. Mo has not completed any sort of court ordered task, has not been a resident of Iowa or any other state, and does not have strong family ties to the United States – all of which weighed heavily in favor of finding that Stenger did not pose a flight-risk.

Mo Yun also directs the court to a number of cases where Chinese nationals charged with similar crimes were granted pre-trial release. These cases differ from the instant case in significant ways. In *United States v. Jin*, the defendant was a naturalized U.S. citizen, who was not charged with theft of trade secrets until approximately one year after being stopped at the airport attempting to leave the country. Moreover, Jin, who was represented by a public defender, did not enjoy the financial resources available to Mo Yun. In *United States v. Qin*, a 2010 case, the husband and wife defendants entered the United States in 1984 and were engineers employed by GM for 20 years. Finally, in *United States v. Yang*, the defendant was arrested attempting to leave the United States in possession of a *round-trip* ticket. Moreover, Yang had significant ties to the United States to include a wife and two U.S. born children, one of whom was about to start college at Harvard. In summary, all of the cases cited by the Mo Yun involved defendants with much greater ties to the United States and in some cases fewer financial resources to facilitate flight.

**CONCLUSION**

The serious nature and potential consequences of the charges contained in the indictment, along with the near complete lack of ties to the United States and the Southern District of Iowa dictate strongly toward detention in this case. Moreover, if the defendant were released on conditions and managed to find her way back to China, there would be no way to compel her to return to the Southern District of Iowa to stand trial. Simply put, the defendant has every incentive to flee to the China. While the government would agree with the same, or very similar,

conditions of release which it stipulated to in the case of her brother and co-defendant, Mo Hailong, it cannot agree to any condition which would enhance the significant risk of flight that exists in this case.

Respectfully submitted,

Nicholas A. Klinefeldt
United States Attorney

By: */s/ Jason T. Griess*

Jason T. Griess
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9288
Email: Jason.Griess2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2014, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail ______ Fax _____Hand Delivery

_X___ECF/Electronic filing ____Other means

UNITED STATES ATTORNEY

By: /s/ ddegraff____________
Paralegal Specialist