IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>LI SHAOMING, *et al.*<br><br><br>           Defendants. | Criminal No. 4:13-cr-147<br><br>**DEFENDANT MO YUN'S BRIEF IN SUPPORT OF HER MOTION FOR A BILL OF PARTICULARS** |

# I
# INTRODUCTION

Defendant Mo Yun ("Ms. Mo") is a Chinese national, a Ph.D. in veterinary science, and, for the last six years, the primary caregiver for her two young children. In a First Superseding Indictment filed July 2, 2014 (the "FSI"), she stands accused of conspiring with six other individuals to steal the trade secrets of certain U.S.-based seed companies and to export those trade secrets to China. Using information gathered in what appears to be a wide-ranging and intensive surveillance operation, the FSI goes into significant detail regarding the whereabouts and activities of several of the defendants (but not Ms. Mo) in the relevant time period. It includes several paragraphs explaining the generic process through which corn seed is germinated and bred to include certain traits. And it lists the ways Monsanto, Pioneer and other seed companies purport to protect their intellectual property at various stages of seed development. But it fails to identify with any particularity the seeds at issue here, what aspect(s) of these seeds are purported to constitute trade secrets, or the actual steps taken by the seed companies to protect those specific seeds. Against such vagaries, it is impossible for Ms. Mo to

1

discern what trade secrets she is accused of conspiring to steal, or why it is alleged that she believed those to be trade secrets. This will prejudice her ability to prepare her defense and will result in unfair surprise at trial. The Court should require the Government to identify those areas with specificity.

Rather than clarifying any of these issues, the Government's discovery efforts to date have included dumping more than three terabytes of data – including many thousands of documents in Mandarin, and without any usable index – on Ms. Mo and her counsel, less than four months before trial. Though there are only a handful of documents that purport to implicate Ms. Mo, given the mountain of other discovery the Government should not be heard to argue as a defense to this motion that the relevant information might be somewhere among those three terabytes.

Without the information requested here, the FSI does not adequately inform Ms. Mo of the particulars of the charge against her. There is no way for Ms. Mo to fairly defend against the amorphous conspiracy charge, or to avoid prejudicial surprise at trial. Accordingly, she respectfully requests that the Court issue an order pursuant to Federal Rule of Criminal Procedure 7(f) requiring the government to provide a bill of particulars as described below.

## II

## LEGAL STANDARD

Under Rule 7(f) of the Federal Rules of Criminal Procedure 7(f), "The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). A bill of particulars serves "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." *United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002). Thus, a court "may order the government to provide requested additional detail where the particulars set out in the indictment fail sufficiently to apprise the defendant of the charges to enable him to prepare a defense." *United States v. Garrett*, 797 F.2d 656, 665 (8th

Cir. 1986).

The decision whether to grant a request for a bill of particulars is within the court's discretion. *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993). This discretion "should be freely exercised with an awareness that an indictment may be sufficient on its face to state an offense, yet insufficient to adequately inform the accused of the charge against him to enable him to properly prepare his defense and, at least, to avoid prejudicial surprise." *King v. United States*, 402 F.2d 289, 292 (10th Cir. 1968). *See also United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012) ("Where the plain language of an indictment fails to alert a defendant of the precise nature of the government's allegations, a bill of particulars can cure deficiencies in the indictment's form."); Notes of Advisory Committee to Fed. R. Crim. P. 7(f) (noting that Rule 7(f) was altered specifically for the purpose of "eliminating the requirement of a showing of cause" in order to "encourage a more liberal attitude by the courts toward bills of particulars").

Nor is it any answer to the lack of specificity in an indictment that the Government has produced vast quantities of discovery; indeed, the large volume of material disclosed is sometimes precisely what necessitates a bill of particulars. *See, e.g., United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("providing mountains of documents to defense counsel" when the indictment contained general allegations of fraud "impermissibly shifted" the burden of proof to the defendants, necessitating a bill of particulars).

## III
## ARGUMENT

An indictment must allege the nature of the charges against a defendant with "sufficient precision to enable [him or her] to prepare for trial." *Hernandez*, 299 F.3d at 989-90. Here, the FSI fails to do so in a number of areas and for a variety of reasons. Taken together, these failures warrant that the Court exercise its discretion to order a bill of particulars.

A.   **The FSI Fails To Identify The "Trade Secrets" At Issue**

First, the FSI fails to adequately define the "trade secrets" Ms. Mo is alleged to have conspired to steal. Count One simply parrots the statute, alleging that defendants "knowingly"

stole, delivered or possessed "trade secrets belonging to Pioneer Hi-Bred, Monsanto, and LG Seeds." (FSI ¶¶ 25-26). Nor does the rest of the FSI provides any clarity on this point. It generally alleges that the intellectual property at issue is the seed companies' "corn germplasm," *id.* at ¶ 23, but it defines that term so broadly as to be of no use in preparing a defense. "Germplasm," it alleges, "is the genetic makeup of an organism." It can be developed to exhibit certain traits, such as disease resistance, pest resistance, and drought resistance; it can be "enhanced through selection of superior plants" or genetically modified through use of biotechnology; it is contained in both inbred and hybrid seed products; and it "contains the scientific and technical information utilized to develop and produce inbred and hybrid corn seed." *Id.* at ¶ 14. Germplasm, in other words, is present in every single seed in the world, is subject to manipulation in a variety of ways, and differs from seed variety to seed variety. Declaring that this was a conspiracy to steal germplasm is no more specific than alleging a conspiracy to steal the Pacific Ocean.

Moreover, given how broadly germplasm is defined, it inevitably contains vast amounts of information that cannot even be considered "property," much less "intellectual property." And even any such intellectual property is not necessarily a protected "trade secret." Still, the FSI provides no hint of which specific germplasm the defendants are accused of conspiring to steal. At various paragraphs it alleges that the defendants stole "inbred corn seed constituting the intellectual property of" the victim seed companies, FSI at ¶¶ 26, 35 45, 46, etc., but it never identifies any of those seeds by name, by model number, or by the trait they are supposed to exhibit. Merely alleging at this level of abstraction that defendants stole "intellectual property" fails to provide any notice of what the Government contends the defendants believed the *trade secrets* to be. Faced with these vague allegations, Ms. Mo is left to wonder what she is even accused of conspiring to steal.

When analyzing whether to order a bill of particulars, the Court should look to whether the defendant can avoid unfair surprise at trial. *Hernandez*, 299 F.3d at 989-90. Without further clarification to the charges in this case, the Government could change the trade secrets it is

alleging at its whim, either between now and trial or even during trial itself, posing a grave danger of unfair surprise. This is precisely the danger the defendant sought to avoid in another recent case involving allegations of conspiracy to steal trade secrets. In *United States v. Liew*, No. 11-cr-573 (N.D. Cal. 2014), the Government alleged that the defendant conspired and attempted to obtain certain trade secrets relating to DuPont's process of creating a chemical product called titanium dioxide (TiO2). The defendant argued that the indictment was insufficient because it claimed the entirety of the DuPont process was a secret, and failed to distinguish between elements of that process that remained proprietary and those that had been publicly disclosed over the years. *See Liew, supra,* Dkt. No. 314 (*Joint Motion for Bill of Particulars*) filed May 2, 2013, at 4, 9-10. The court granted Liew's motion and ordered the Government to provide a bill of particulars to clarify. *Id.* at Dkt. No. 338 (*Order*) filed June 11, 2013. In its order, the court wrote:

> Specifically, in light of the fact that these counts charge Defendants with attempt, the United States shall provide a bill of particulars that sets forth its theory of what Defendants' reasonably believed the trade secret to be....[T]he United States, taking into account the EEA's definition of a trade secret, shall identify with particularity: (1) the "ways and means," described in paragraph 14.a; and (2) the "proprietary and non-proprietary components," described in paragraph 14.a.; (3) and the resulting compilations and combinations that formed substantial portions of the TiO2 manufacturing process.

*Id.* at *11-12.

Ms. Mo's case presents a similarly compelling need for a bill of particulars in which the Government must set forth its theory of what Ms. Mo believed the trade secrets to be. Saying "germplasm" over and over simply provides no useful guidance and leaves Ms. Mo open to being whipsawed at trial. It would be particularly unfair to force Ms. Mo to engage in guesswork here given that she was out of the workforce and home raising her children by no later than March 2009, more than two years before the Government alleges any digging about in proprietary fields. As in *Liew*, the Government should be required to set forth its theory with specificity, including the identities and origins of the seeds at issue, and what aspect of the seeds

it will argue Ms. Mo reasonably believed constituted a trade secret.[1]

**B.     The FSI Fails to Identify the Steps Taken to Protect the Alleged Trade Secrets from Disclosure**

For information to be considered a trade secret, its owner must also have taken "reasonable measures" to protect it from disclosure. In support of this element, the FSI identifies nine separate steps purportedly employed by Pioneer, Monsanto and LG Seeds "to protect their germplasm." FSI at ¶ 23. What it fails to allege, however, is which of those steps apply to the alleged trade secrets at issue here. It is all well and good, for instance, if Monsanto controls visitor access at its research and production facilities, but that means precious little in a case that involves no allegations that secrets were taken from any such facilities. The FSI also alleges that, "[a]t particularly sensitive field locations, fields are monitored by seed company security personnel." FSI at ¶ 23(g). There are multiple allegations that one or more defendants (though never Ms. Mo) "work[ed] together to remove inbred corn seed constituting the intellectual property of [seed company] from a field owned and planted by [seed company] near [location]." *See, e.g.,* FSI at ¶¶ 45, 46, 49, 50, etc. But nowhere in the FSI is it alleged that any of those fields were of the "particularly sensitive" variety warranting monitoring by security personnel. Whether the owner had security measures in place at the specific locations from which defendants are alleged to have removed seeds goes to the defendants' states of mind. Open, unfenced, unmonitored fields, for instance, give no impression that they contain trade secret information. Ms. Mo is entitled to know more than just Monsanto's generic security policies; the Government should be ordered to disclose the specific locations from which seeds are alleged to have been stolen, and the specific steps actually used by the seed companies to protect the

---

[1]   Another court has found fit to dismiss allegations altogether on the basis of failure to adequately define the trade secret at issue. *United States v. Case*, 2007 WL 1746399, at *4 (S.D. Miss. June 15, 2007). There, the indictment alleged that defendants stole a competitor's "entire working product," some of which was proprietary and some of which was not. When the Government refused to provide any additional detail about the actual trade secrets at issue, the court dismissed all the trade secret theft counts. Should the Government refuse to provide a bill of particulars here, Ms. Mo reserves the right to seek dismissal on that basis a la *Case*.

information at those sites.  Of particular importance to Ms. Mo, of course, is what specific measures were taken to protect information alleged to have been misappropriated in the 2007-08 time period.

The Government has also proffered that the seed companies require all customers purchasing seed to adhere to certain "technology agreements," and has argued elsewhere that Mo Hailong's purchase of farm land was merely "cover" allowing him to purchase seeds from various farm stores.  But it is unclear from the FSI whether such purchases on the open market form the basis for any of the allegations of trade secret theft.  (None of the overt acts, for example, allege such purchases.)  The Government should be required to clarify this point.  If it is so alleging, it should be required to disclose the dates of any such purchases, the store name and address, the name of the salesperson (if known), the seeds purchased, and any documentation from the seed company mandating any such "technology agreement."

Taken together, these factors create glaring uncertainties that undermine Ms. Mo's ability to prepare for trial.  Without a bill of particulars identifying and defining the "trade secrets" the Government asserts Ms. Mo believed she was conspiring to steal, the defense will be forced to prepare to defend against hundreds of potential trade secrets, will not know of what she is accused, and will be vulnerable to unfair surprise at trial.  An order for a bill of particulars is more than reasonable under these circumstances. Nor would an order requiring more specificity prejudice the Government.  Its investigation of the alleged conspiracy began in 2011.  It has had access to seized documents for more than eight months.  Indeed, it would likely take the Government less time to prepare a simple list of the items set forth below than it would to draft an opposition to this motion.  Under such circumstances, the balance clearly tips in favor of Ms. Mo and her right to receive fair notice of the charges that she will have to confront at trial.

## IV

## THE PARTICULARS SOUGHT

Ms. Mo respectfully requests that the Court order the government to provide the defense with a bill of particulars that sets forth with specificity the following information:

- The specific seeds purported to have been misappropriated by Ms. Mo and/or her alleged co-conspirators, identified by company (Monsanto, Pioneer, etc.), model number and year developed;

- The specific aspect of each seed that is alleged to have been a trade secret (or that the defendants are alleged to have believed was a trade secret);

- Whether the particular seeds at issue were inbred, hybrid, and/or genetically modified;

- The specific locations, including the address, owner, and other identifying information, from which the co-conspirators are alleged to have acquired the seeds in question, whether it was a growing field, seed store, or other source;

- The dates of each alleged misappropriation of seeds; and

- The specific security measures purported to have been in place at those locations at the time of the alleged misappropriation.

# V
# CONCLUSION

The Indictment fails to provide adequate notice of the trade secrets that are alleged to have been the target of the charged conspiracy. Without notice of this most basic aspect of the Government's case, Ms. Mo will be unfairly prejudiced at trial. She therefore respectfully requests that the Court issue an order requiring the Government to provide a bill of particulars as set forth above.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED:  August 28, 2014	Respectfully submitted,

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**


By:   */s/ Terry W. Bird*
    Terry W. Bird
    Gary S. Lincenberg
    Peter J. Shakow
    Ariel A. Neuman

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email:  twb@birdmarella.com
Email:  gsl@birdmarella.com
Email:  pjs@birdmarella.com
Email:  aan@birdmarella.com


**MELLON & SPIES, ATTORNEYS**


By*:   /s/ Leon F. Spies*
    Leon F. Spies

312 E. College Street, Suite 216
Iowa City, Iowa 52240
Phone 319-337-4193
Fax 319-337-2396
Email:  Spieslegal@aol.com


ATTORNEYS FOR DEFENDANT MO YUN