IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF IOWA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>LI SHAOMING, et al.,<br><br>    Defendants. | Criminal No. 4:13-cr-147<br><br>**DEFENDANT MO YUN'S BRIEF IN SUPPORT OF MOTION TO SEVER AND PROCEED TO TRIAL ON OR ABOUT DECEMBER 1, 2014** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................3

    A.    Procedural History .......................................................................................................3

    B.    Mo Hailong Intends to Seek a Continuance of the Trial Date ................................5

III. LEGAL STANDARD............................................................................................................5

IV. ARGUMENT.........................................................................................................................7

    A.    Delay Would Compromise Ms. Mo's Right to Confront the Government's
          Evidence at the Earliest Possible Date....................................................................7

    B.    The Lack of Evidence Against Ms. Mo Argues For Severance .............................8

         1.    The Evidence Against Ms. Mo is Weak .......................................................8

         2.    The Case Against Ms. Mo Is Not Based on the Same Evidence
             And Acts as Other Defendants..................................................................10

         3.    The Evidence Against Ms. Mo Is Inadmissible ........................................11

             a.    The "excerpts" are unreliable and cannot be authenticated...........11

             b.    There is no "independent evidence" of Ms. Mo's
                 participation in the charged conspiracy to justify admission
                 of alleged co-conspirator statements...............................................12

          4.    These Evidentiary Factors Favor Severance Now .....................................13

    C.    The Emotional Hardship That Would Result From Further Delay Favors
          Severance ...................................................................................................................14

V. CONCLUSION.....................................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barker v. Wingo*,
    407 U.S. 514 (1972)................................................................................................8

*Brinlee v. United States*,
    496 F.2d 351 (8th Cir. 1974) ..............................................................................12

*Klopfer v. North Carolina*,
    386 U.S. 213 (1967)..............................................................................................7

*United States v. Baker*,
    98 F.3d 330 (8th Cir. 1996) .............................................................................6, 14

*United States v. Eisenberg*,
    807 F.2d 1446 (8th Cir. 1986) ............................................................................12

*United States v. Finn*,
    919 F. Supp. 1305 (D. Minn. 1995).....................................................................6

*United States v. Johnson*,
    767 F.2d 1259 (8th Cir. 1985) ............................................................................12

*United States v. Kime*,
    99 F.3d 870 (8th Cir. 1996) ..................................................................................6

*United States v. Lightfoot*,
    483 F.3d 876 (8th Cir. 2007) ................................................................................8

*United States v. Miller*,
    725 F.2d 462 (8th Cir. 1984) ...........................................................................6, 14

*United States v. Mothershed*,
    859 F.32d 585, 588-89 (8th Cir. 1988) ................................................................6

*United States v. Ragland*,
    555 F.3d 706 (8th Cir. 2009) ..............................................................................12

*United States v. Rodgers*,
    18 F.3d 1425 (8th Cir. 1994) ................................................................................6

*United States v. Swarek*,
    656 F.2d 331 (8th Cir. 1981) ................................................................................6

*United States v. Titlbach*,
   339 F.3d 692 (8th Cir. 2003) ...................................................................................8

*United States v. Wint*,
   974 F.2d 961 (8th Cir. 1992) ...................................................................................5

*United States v. Young*,
   753 F.3d 757 (8th Cir. 2014) .................................................................................12

*Zafiro v. United States*,
   506 U.S. 534 (1993).................................................................................................6

**Statutes**

18 U.S.C. § 3161 ....................................................................................................7, 8

**Other Authorities**

Federal Rule of Criminal Procedure 14 .....................................................................5

Fed. Rule of Evidence 801......................................................................................12

Federal Rule of Evidence 901.................................................................................10

# I

# INTRODUCTION

Defendant Mo Yun ("Ms. Mo") moves for severance from her co-defendants in order to i) obtain as speedy a trial as possible, ii) avoid the prejudice that would result from a joint trial where evidence inadmissible against her would nevertheless be heard by the jury, and iii) minimize the length of the unjust and emotionally debilitating separation from her young children.

Ms. Mo is a mother of a 12-year-old son and a 5-year old daughter.  She is married to Dr. Shao Genhuo, the founder and chairman of Beijing Dabeinong Technology Group Company (DBN).  She lives with her children, husband, and parents in a Beijing apartment.  On July 1, 2014, she brought her two children to Disneyland for a summer vacation.  When they were at the Los Angeles airport preparing to return home, Ms. Mo was arrested for conspiracy to steal trade secrets.  Her arrest was premised on extraordinarily thin evidence, consisting entirely of a handful of instant message "excerpts" purported to be taken from conversations between her and her brother, Mo Hailong, in 2007 and 2008.  Save for these "excerpts," nearly every overt act in the charged conspiracy is alleged to have taken place in 2011 and 2012, long after Ms. Mo left the workforce to care for her children full-time.  Indeed, the FBI case agent has acknowledged that even the "excerpts" acquire relevant meaning only through the lens of what the Government believes happened years later.  Yet because of the document-intensive, complex case against others, Mr. Mo's case has been placed on a slow track.

This nightmare for Ms. Mo is taking place despite the fact that Ms. Mo is ***actually innocent*** of the charge against her.  Not only is the Government's proffered evidence not proof at all of the trade secret conspiracy charge, but it is ***inadmissible against her***.  The Government

does not have any actual instant messages themselves; only cut-and-pasted documents recovered from a computer seized from Mo Hailong.  As hearsay with authentication problems, the "excerpts" might not be admissible even against Mo Hailong.  As to Ms. Mo, the "excerpts" are *double* hearsay with authentication problems, and clearly not admissible.  Yet this is the extent of the evidence upon which Ms. Mo was detained and for which she faces indefinite separation from her family before trial.

Ms. Mo's trial has been set for December 1, 2014, a date that was set for her co-defendant Mo Hailong's trial before Ms. Mo was indicted.  This puts her trial date well outside of the 70-day window mandated by the Speedy Trial Act, even though she never waived time.  Compounding the problem is that the December 1, 2014 date was apparently set only as a placeholder for Mo Hailong's trial.  Because of the volume of discovery produced by the Government, the slow pace of the Government's disclosure (which apparently is still incomplete), and complexities involved in the case against Mo Hailong, the parties expect Mo Hailong soon will move for a substantial continuance of that date.  If Ms. Mo's trial date continues to be chained to that of her brother, she faces the prospect of having to wait many months or even a year or more for vindication, all while she is separated from her home and family in China.  This is fundamentally unfair, especially because the considerations that legitimately justify a continuance in Mo Hailong's case do not carry the same weight with respect to Ms. Mo.  In her case, the need to be vindicated as soon as possible outweighs the need to analyze all of the evidence of conduct that has nothing to do with her.  Ms. Mo should be permitted to face her accusers sooner rather than later, without impacting her brother's right to prepare adequately for his defense.

In addition to unnecessary and emotionally costly delay, a joint trial would also subject Ms. Mo to enormous unfair prejudice.  If the "excerpts" are admitted against Mo Hailong at a joint trial, Ms. Mo would face the terrifying risk that a jury might convict her based on "excerpts" which are not admissible against her.  Indeed, given that the excerpts from 2007 and 2008 are the only purported evidence of Ms. Mo's involvement in any alleged conspiracy, the government's evidence from 2011 and 2012 likewise is inadmissible as to Ms. Mo.  A limiting instruction would not suffice to remove the substantial prejudice that would result from a joint trial.

Ms. Mo does not want to waive her speedy trial rights any longer than necessary to defend against this false charge, and should not be forced into a joint trial under circumstances that would be so clearly and unfairly prejudicial.  Ms. Mo therefore respectfully requests that the Court sever her trial from that of Mo Hailong.

## II

## FACTUAL BACKGROUND

### A.  Procedural History

Mo Hailong is Ms. Mo's brother.  He was arrested in Florida on December 11, 2013, following the filing of a criminal complaint in this district.  An indictment charging him and five co-defendants with conspiracy to steal trade secrets was filed on December 17, 2013.  (Docket No. 6.)  The indictment alleged that the charged conspiracy began in April 2011, and did not mention or refer to Ms. Mo in any capacity.  (*See* Indictment, ¶ 24.)  Mo Hailong made his initial appearance in this district on January 14, 2014.  (Docket No. 26.)  On April 30, 2014, a status conference was held before Magistrate Judge Celeste F. Bremer at which Magistrate Judge Bremer set Mo Hailong's trial for December 1, 2014.  (Docket No. 51.)  At the hearing,

Magistrate Judge Bremer indicated that the December 1 trial date was just a "placeholder," and that a continuance was inevitable.  (4/30/2014 RT[1] at 5-6.)  We understand that parties  agreed.

In late June 2014, Ms. Mo traveled to this country for a vacation with her two young children.  They spent a week visiting Disneyland, Universal Studios, and other tourist attractions.  When federal agents were notified that Ms. Mo was in the country, they did not want to let her leave the country.  Based on a few "excerpts" of internet chat conversations that purportedly occurred between her and her brother many years earlier, the Government arrested Ms. Mo in the gate area at Los Angeles International Airport ("LAX") as she and her two children were about to board a return flight to Beijing.  (*See* Exhibit A.)

On July 2, 2014, Ms. Mo was charged in a First Superseding Indictment ("FSI") with conspiracy to steal trade secrets, along with the six defendants charged in the original indictment.  The FSI states that Ms. Mo is the wife of the chairman of DBN, a large, public agricultural company in China that – together with a subsidiary – is also purported to be the employer of the other co-defendants.  The FSI notes that Ms. Mo worked at DBN many years ago, but concedes that she has not worked there since at least March 2009.  (FSI at ¶ 10.)   As to Ms. Mo, the FSI alleges only that she engaged in certain instant message conversations with her brother, the last of which is purported to have occurred in January 2008.  (FSI at ¶ 32.)  Other than the allegations against Ms. Mo, nearly every other aspect of the alleged conspiracy involves events that are said to have taken place in 2011 and 2012, long after Ms. Mo left DBN.

After preliminary proceedings in Los Angeles, Ms. Mo was transferred to the Southern District of Iowa where she made her initial appearance on July 10, 2014.  (Docket No. 78.)

---

[1]   "RT" refers to the Report's Transcript.  It is preceded by the relevant date and followed by the relevant page and, in some cases, line numbers.

Magistrate Judge Walters set Ms. Mo's trial for the same date as her brother's – December 1, 2014.  (Docket No. 80.)  On July 21, 2014, the Court ordered Ms. Mo released on bond under conditions that she be subject to electronic monitoring and a curfew, and that require her to stay in Des Moines absent permission to travel.  (Docket No. 90.)  She is currently residing in Des Moines, anxiously awaiting trial.

**B.      Mo Hailong Intends to Seek a Continuance of the Trial Date**

From our preliminary review of discovery and discussions with counsel for Mo Hailong, we understand that there is a huge amount of data, including thousands of documents in Mandarin, that Mo Hailong's counsel must translate, review, and assess as part of their defense case.  Moreover, Government counsel has advised that he is still in the process of attempting to declassify additional discovery.  Mo Hailong's counsel have recently confirmed that the Government's discovery production is not yet completed, and that Mo Hailong will not be ready to begin a trial on December 1, 2014.

As it currently stands, then, if joined for trial with Mo Hailong, Ms. Mo faces the prospect of a lengthy delay before she could get to trial.  During that time, under the current bail order, Ms. Mo will be unable to live with or even visit her family in China – a hardship caused by a prosecution based on exceedingly thin evidence, much of which will not even be admissible against her.  To provide Ms. Mo with a fair and speedy trial, the Court should sever her trial from that of her brother and maintain her early December trial date.

### III

### LEGAL STANDARD

Federal Rule of Criminal Procedure 14 provides:  "[i]f it appears that a defendant or the Government is prejudiced by a joinder of offenses or of defendants in an indictment . . . the court

. . . may sever the defendants' trials." "The decision whether to grant severance is committed to the discretion of the district court." *United States v. Wint*, 974 F.2d 961, 966 (8th Cir. 1992); *United States v. Swarek*, 656 F.2d 331, 337 n.4 (8th Cir. 1981). While the general practice is to try alleged co-conspirators together, the Court should grant severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 538 (1993).

To justify severance of co-conspirators, a defendant must make "an affirmative demonstration that the joinder prejudice[s] the movant's right to a fair trial" in that "the jury will be unable to compartmentalize the evidence against each individual defendant." *United States v. Kime*, 99 F.3d 870, 880 (8th Cir. 1996) (citations omitted). Severance is "***necessary*** where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. Miller*, 725 F.2d 462, 468 (8th Cir. 1984) (emphasis added, internal citation omitted) (abrogated on other grounds by *United States v. Mothershed*, 859 F.32d 585, 588-89 (8th Cir. 1988)); *see also United States v. Finn*, 919 F. Supp. 1305, 1324 (D. Minn. 1995) (risk that "[j]ury will be disposed to cumulate the evidence against each Defendant" justifies severance). While alleged co-conspirators are usually tried together, if the evidence against them is not based on the "same evidence and acts," severance is warranted. *Kime*, 99 F.3d at 880; *see also United States v. Rodgers*, 18 F.3d 1425, 1431-32 (8th Cir. 1994) (same). In particular, where prejudicial and inflammatory evidence is properly admitted against only one of two co-defendants, severance is appropriate when "the risk of substantial prejudice from the spillover effect" of the inadmissible evidence is "too high to be cured by less drastic

measures, such as [a] limiting instruction….” *United States v. Baker*, 98 F.3d 330, 335 (8th Cir.

1996).

# IV

# ARGUMENT

Without a severance, Ms. Mo will likely be forced to wait an even lengthier period of

time before trial.  This would deny her the right to confront the charges against her as

expeditiously as possible and would violate her fundamental right to a speedy trial.  Moreover,

because the material proffered by the Government as its evidence against Ms. Mo is

extraordinarily thin and likely inadmissible as to her, a joint trial where that evidence was

introduced as against her brother would subject her to abject prejudice that could not be

mitigated by a limiting instruction.  For these reasons, and because  delay constitutes

unnecessary punishment for Ms. Mo and her family, severance should be granted.

**A.      Delay Would Compromise Ms. Mo’s Right to Confront the Government’s Evidence
         at the Earliest Possible Date**

The right to a speedy trial is a specific trial right which should not be compromised.  It

“is as fundamental as any of the rights secured by the Sixth Amendment.”  *Klopfer v. North

Carolina*, 386 U.S. 213, 226 (1967).  “The history of the right to a speedy trial and its reception

in this country clearly establish that it is one of the most basic rights preserved by our

Constitution.”  *Id.*  Here, Ms. Mo was never given the option of proceeding to trial within the 70-

day window guaranteed by the Speedy Trial Act.  She did not seek a trial delay, was not at the

April 2014 hearing where the current trial date was set, and has never waived time.

The December 1, 2014 date might itself constitute a Speedy Trial Act violation.  Any

further postponement of her opportunity to confront the Government’s case would violate her

rights under the Speedy Trial Act.  Under normal procedure where one defendant is arrested after another, "their speedy trial clocks will, subject to section [3161(h)(6)'s] reasonableness requirement, be reset and synchronized with the clock of the defendant with the most time remaining."  *United States v. Lightfoot*, 483 F.3d 876, 885-86 (8th Cir. 2007).  But that rule applies only if the speedy trial clock has not run as to one of the defendants.  When the court set a December 1, 2014 trial date for Mo Hailong, it did not make oral or written findings on the record that the period of time from April 30, 2014 to December 1, 2014, should be excluded for purposes of the Speedy Trial Act, as required by 18 U.S.C. § 3161(h)(7)(A).  Nor was exclusion of that time proper under any of the "automatic" exclusion periods set forth in § 3161.  Thus, the Speedy Trial Act clock as to Mo Hailong expired well before Ms. Mo was arrested.  Accordingly, when Ms. Mo made her initial appearance in this district, her trial should have been set for no later than 70 days forward (i.e., September 18, 2014) instead of December 1, 2014.  Further delay of Ms. Mo's trial would be without justification, and would violate Ms. Mo's speedy trial or Sixth Amendment rights.[2]  At a minimum, these facts further support allowing her to proceed to trial as soon as possible.

**B.      The Lack of Evidence Against Ms. Mo Argues For Severance**

   **1.      The Evidence Against Ms. Mo is Weak**

   As the Court preliminarily concluded at the bail hearing, the Government's evidence against Ms. Mo is "thin."  (Docket 90 at 6.)  According to the Government's proffer and the

---

[2]   It appears that each of the factors for a Sixth Amendment violation would be present should Ms. Mo's trial be further continued over her objection.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (setting forth a four-factor balancing test to analyze whether a pretrial delay violates the Sixth Amendment: (1) the delay's length; (2) the reason for the delay; (3) whether the defendant asserted her right to a speedy trial; and (4) whether the defendant suffered any prejudice); *see also, United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003) (applying the *Barker* test).

discovery it produced, the totality of its evidence regarding Ms. Mo's alleged participation in the charged conspiracy is set forth in paragraphs 27 through 32 of the FSI.  The evidence consists of six alleged excerpts of purported instant message conversations, four of which allegedly include Ms. Mo as a participant and two of which purport to reference her.  As the case agent admitted during the bail hearing and as the Government's discovery thus far has borne out, the Government has no additional evidence related to Ms. Mo. [3]  The vast majority of the allegations in the FSI relate to purported conduct by others in 2011 and 2012 – more than three years after the last alleged statement by Ms. Mo and more than two years after she left DBN to bear her second child and raise her children.

Nor do the alleged 2007-08 "excerpts" evidence any sort of conspiracy to steal trade secrets.  By the case agent's own admission, the "excerpts" on their own are not incriminating.  It is only when he interprets them through the lens of alleged co-conspirator statements from 2011 and 2012 that even he speculates that they suggest Ms. Mo may have been part of a conspiracy to steal trade secrets.  (7/17/14 RT 41:1-5, 47:10-13.)  These interpretations are at best imaginative.  An example of just how manipulative the FSI is in this regard can be found in one of the first overt acts.  After 12 pages of allegations that these co-defendants were engaged in stealing valuable trade secrets and highly protected intellectual property in the form of proprietary corn seeds, the Government charges that:

> On or about January 18, 2007, Defendant, MO HAILONG, and
> Defendant, MO YUN, discussed what seeds to collect.  Defendant,
> MO YUN, instructed Defendant, MO HAILONG, to "…send to
> Dr. LI, he can check which is better."

---

[3]    While the Government has recovered other "excerpts" which it claims constitute conversations involving Ms. Mo, the case agent conceded that it would not "be a fair characterization of those communications" to call them "acts in furtherance of the alleged conspiracy."  (7/17/2014 RT 37:22 – 38:10.)

FSI at ¶ 28.  In the context of the FSI, the clear implication of this charge is that Ms. Mo and her brother were discussing the theft of high-tech Monsanto or Pioneer seed products.  When one refers to the purported source of this quote, however, one learns that the context is not proprietary seeds developed under secure conditions by Monsanto or Pioneer, but instead seeds to be purchased online from www.burpee.com or www.seedlover.com, websites available to anyone in the world, and geared towards the amateur home gardener.

**2.      The Case Against Ms. Mo Is Not Based on the Same Evidence And Acts as Other Defendants**

Nor is this the normal case of co-conspirators being tried on similar evidence with alleged conduct that occurred at roughly the same time.  The Government concedes that Ms. Mo left her job at DBN no later than March 2009, and admits that it has no evidence related to her involvement in any conspiracy after January 2008.  But the gravamen of the FSI relates to events that are alleged to have taken place in 2011 and 2012.  Indeed, the original indictment in this case charged that the conspiracy itself began in 2011.  We submit that the conspiracy start-date was stretched back to 2007 only to accommodate the Government's desire to charge Ms. Mo. The Government will seek to introduce evidence that other defendants were digging in fields, storing corn seed in storage lockers, secreting seed in popcorn packages and attempting to export it to China via UPS or Federal Express.  It will offer surveillance video, photographs, and surreptitiously recorded audio of some of the defendants talking to one another.  None of that evidence involves or implicates Ms. Mo.  She was raising her children in Beijing and doing nothing involving corn seeds.  There is no evidence that any of this evidence has anything to do with Ms. Mo.

### 3.     The Evidence Against Ms. Mo Is Inadmissible

Not only is the evidence against Ms. Mo weak, it is inadmissible as to her.  Federal Rule of Evidence 901 requires the proponent of any piece of evidence to provide "evidence sufficient to support a finding that the matter in question is what its proponent claims."  The Government will not be able to meet that burden with respect to any of the evidence it hopes to admit against Ms. Mo.

### a.     The "excerpts" are unreliable and cannot be authenticated

Here, instead of transcripts retrieved from an instant messaging program, the "excerpts" are taken from electronic documents (i.e., Microsoft Word files) into which somebody either typed or pasted the purported conversations.  (7/17/2014 RT 43-44.)  No witness will testify that the purported conversations actually occurred, that the purported participants actually wrote the words attributed to them, or that the excerpts are fair and accurate depictions of the original purported conversations.  (Id.)  There is also no forensic or other evidence to this effect.  At best, these "excerpts" are cut-and-paste jobs, with no reasonable indicia of authenticity, completeness, or reliability, and they are evidence which the Court has noted is of a type that "will likely make it substantially more difficult for the Government to prove its case against Mo Yun at trial." (Docket 90 at 6, n.3.)

Hoping to overcome these obstacles and elicit an admission, FBI SA Mark Betten interrogated Ms. Mo about the "excerpts" in the harried atmosphere of the airport boarding lounge at the time of her arrest on July 1, 2014, without the benefit of *Miranda* warnings or an interpreter.  (*See* Exhibit A.)  Accordingly, Ms. Mo will move to suppress them.  But even if admitted at trial, the interrogation provides no support for the Government unless twisted by the testifying agent: Ms. Mo not only did not recall these alleged "excerpts," she did not even recall

11

using the relevant chat service to communicate with her brother during those years.  (Id.)
Neither these statements (if admitted over Ms. Mo's objection) nor any other testimony will
permit the Government to authenticate the alleged "excerpts" as containing statements by Ms.
Mo, and they will not be admissible against her.

> b.       There is no "independent evidence" of Ms. Mo's participation in the
>          charged conspiracy to justify admission of alleged co-conspirator
>          statements

Neither will any purported co-conspirator statements from 2011 or 2012 be admissible as
to Ms. Mo.[4]  The Government alleges no acts by Ms. Mo; there are only the "excerpts."
(7/17/2014 RT 35-36.)  Even if these were somehow authenticated and attributable to Ms. Mo,
they do not constitute "independent evidence" of her participation in the charged conspiracy, and
are therefore not sufficient to justify admission against her of any co-conspirator statements.  *See*
Fed. R. Evid. 801(d)(2)(E); *United States v. Young*, 753 F.3d 757, 771-72 (8th Cir. 2014); *United
States v. Ragland*, 555 F.3d 706, 713 (8th Cir. 2009); *United States v. Eisenberg*, 807 F.2d 1446,
1453 (8th Cir. 1986); *United States v. Johnson*, 767 F.2d 1259, 1271 (8th Cir. 1985); *Brinlee v.
United States*, 496 F.2d 351, 354 (8th Cir. 1974).  The "excerpts" are not independent because
the Government concedes that to find them incriminating, the "excerpts" must be read *through
the lens of the very co-conspirator statements that it seeks to admit* from 2011 and 2012.[5]
(7/17/2014 RT 41.)  In other words, the Government would seek to:  (i) use the co-conspirator

---

[4]    A large portion of the overt acts alleged in the First Superseding Indictment are purported co-
conspirator statements.  *See* FSI, ¶¶ 27, 31, 40, 42, 43, 47, 48, 51, 52, 54, 55, 56, 57, 71.  Without
those statements the remaining allegations even as to co-defendants would have little meaning.

[5]    Indeed, the alleged co-conspirator statements are necessary to give meaning not only to the
"excerpts," but to every alleged act of the co-conspirators.  Allegations of digging in fields,
renting storage lockers, and carrying seeds into an airport would not be evidence of a conspiracy
to steal trade secrets without the purported recorded statements to allegedly give them context.

statements; (ii) to interpret the "excerpts;" (iii) which it would then declare are independent evidence of Ms. Mo's participation in the conspiracy; (iv) in order to get those same co-conspirator statements admitted into evidence.  The Federal Rules of Evidence do not countenance such boot-strapping.  Nor is this what the Eighth Circuit had in mind when it mandated "independent" evidence of participation in a conspiracy before admission of co-conspirator statements.

### 4.  These Evidentiary Factors Favor Severance Now

Any consideration of injustice and prejudice must consider the strength of the evidence and likelihood of conviction.  The thin evidence here is a strong factor weighing in favor of an expeditious trial for Ms. Mo.  Forcing her to wait months to defend the charges under these circumstances is unfair and will cause undue prejudice.

If (and when) these "excerpts" and co-conspirator statements are ruled inadmissible against Ms. Mo, we believe the Government will have little choice but to dismiss the indictment as against her, as it will have no evidence whatsoever tying her to the alleged conspiracy.[6]  The question of admissibility of the "excerpts," however, is likely to be made only just before trial as part of an *in limine* motion, or at trial.

Should the defendants be tried together, the Government will certainly seek to admit both the "excerpts" and the co-conspirator statements against Mo Hailong.  Should they be admitted against him, there is no way a limiting instruction could cure the prejudice Ms. Mo would suffer.  The jury would be told to ignore conversations in which she is purportedly a party, and to ignore the majority of the Government's evidence generally, in making determinations about her guilt

---

[6]   If the Government persisted in its case despite this evidence being excluded, of course, a trial against Ms. Mo alone would be significantly shorter than a trial against both defendants.

13

or innocence.  This is not something one can reasonably expect of a jury, even a conscientious

one.  The co-conspirator statements and the "excerpts" are exactly the type of evidence that is so

"prejudicial" and "inflammatory" that "the risk of substantial prejudice from the spillover effect"

is "too high to be cured by less drastic measures, such as [a] limiting instruction." *Baker*, 98

F.3d at 335.  Severance and separate trials are warranted, and indeed would be "necessary" under

such circumstances.  *Miller*, 725 F.2d at 468.  Severance would be unavailable at that point,

however, because jeopardy would have already attached.  The only solutions at that point would

be to immediately dismiss the case against Ms. Mo, or proceed with a clearly unfair trial.  The

far more prudent course is to sever the cases now.

## C.     The Emotional Hardship That Would Result From Further Delay Favors Severance

Both Ms. Mo and her family are anxiously awaiting a disposition in this case under a

judicial system they are struggling to understand.  If Ms. Mo's trial is not severed from that of

her brother but instead is delayed for many months, that anxiety only increases and the distress

of the young children and their mother only grows.  Not only would these charges hang

menacingly over her head for months on end, preventing her from getting on with the rest of her

life, but they also keep her from her family, an ocean and half a continent away.  Already,

precious months have passed.  Her son is now 12, entering a crucial time in his educational

progress under the Chinese system.  The next year or two are crucial formative years.  Her

daughter is now five and soon will start grade school, an exceedingly important transition in the

life of any young child.  For the first time in their young lives they must face such new

challenges without their mother there by their side.  Ms. Mo also serves as the primary caregiver

for her aging – and ailing – parents, both of whom moved into Ms. Mo's apartment and continue

to live there with her husband and children to this day. They are now without their daughter to

14

help care for them.  While she appreciates that the Court may be inclined to grant a travel request

to Los Angeles for a visit by her children, any such visit would of course be no substitute for

being there for her children and her parents on a daily basis.

Dr. Freda K. Cheung, a clinical psychologist consulted by defense counsel, cautioned that

separating Ms. Mo from her son and daughter would be extremely damaging and potentially life-

altering for the two children.

> [Mo Yun] being held for a period of more than a year before going
> to trial would be a catastrophic experience for the two children.
> This situation would likely place them in a high condition for
> developing severe emotional disturbance, psychological trauma
> and possibility of other psychological and conduct disorders in
> otherwise healthy children.  Emotional problems that the children
> face will affect not only their school life but social development as
> well.

 (Exhibit B at 6.)  She further discusses the long-term ramifications of the separation anxiety

which the children are going through right now:

> Separation anxiety is a psychological condition that is
> characterized by significant distress when a person is away from
> parents, primary caregivers, or home. This separation anxiety or
> extreme worry about what happens to a close parent might
> dramatically affect a person's life by adversely affect the child's
> normal development, and limiting his/her ability to engage in
> ordinary activities such as interacting and playing with other
> children. . . . When they don't find their caregiver, or that the
> individual is not available, the child worries. Such worries can
> overwhelm a child which may lead to fears that may become
> irrational, such as the fear that the parent may suddenly die or
> never return. Frequently, a child tolerates separation from ones
> parent more easily than from the other parent, who is generally the
> primary caregiver… Research indicates that the longer the period
> of separation, the riskier it is for the child to develop such a
> disorder.

(*Id.* at 4-5.)  For the sake of her children, as well, Ms. Mo requests as speedy of a trial as is

reasonably possible.

Ms. Mo has spent her entire life in China.  Other than her brother – who is now under house arrest in Des Moines pursuant to this Court's order – Ms. Mo knows no one in Iowa.  She has no visitors other than her lawyers.  She speaks little English, and coupled with a publicized indictment hanging over her head, is hard-pressed to make friends here.  She lives under a curfew in an entirely unfamiliar setting, alone and separated from her family and everyone she knows and loves.  The only thing she has to look forward to is vindication at trial at the earliest possible opportunity.  She asks that she be given that chance.

**V**

**CONCLUSION**

For all the reasons described above, Ms. Mo respectfully requests that this Court sever her case from that of her brother Mo Hailong and allow her to proceed to trial on December 1, 2014, as currently scheduled, or as soon thereafter as the Court can accommodate her.

DATED:  August 28, 2014                   Respectfully submitted,

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By:  /s/ Terry W. Bird
       Terry W. Bird
       Gary S. Lincenberg
       Peter J. Shakow
       Ariel A. Neuman

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email:  twb@birdmarella.com
Email:  gsl@birdmarella.com
Email:  pjs@birdmarella.com
Email:  aan@birdmarella.com

**MELLON & SPIES, ATTORNEYS**

By:  /s/ Leon F. Spies
       Leon F. Spies

312 E. College Street, Suite 216
Iowa City, Iowa 52240
Phone 319-337-4193
Fax 319-337-2396
Email:  Spieslegal@aol.com

ATTORNEYS FOR DEFENDANT MO YUN

17