IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Crim. No. 4:13-CR-00147-7 |
| v. | ) | |
| | ) | |
| MO YUN | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT MO YUN'S MOTION TO SEVER**

The UNITED STATES OF AMERICA submits the following response to defendant Mo Yun's motion to sever, Dkt. 98.

## INTRODUCTION

Defendants Mo Hailong and Mo Yun, who are brother and sister, are charged with five others in a one-count indictment, which charges them with conspiring to steal trade secrets, in violation of 18 U.S.C. § 1832(a)(5). Dkt. 57. Trial for both defendants is scheduled for December 1, 2014.

Defendants should be tried together. The Eighth Circuit has recognized that joint trials are almost always proper, and are nearly universally proper for codefendants who are charged in the same conspiracy and face no other charges. Establishing the kind of substantial prejudice that could justify severance is a heavy burden, and one defendant has not met. Neither of the two recognized bases for severance exist here, because defendant has not demonstrated that her defense is irreconcilable with that of her brother, and she has not shown that the jury will

be unable to compartmentalize the evidence against her, and distinguish it from evidence against her brother. Indeed, the government's evidence against the two defendants will be nearly identical, and all of it is admissible against defendant. Separate trials would force the parties and the court to conduct the same lengthy, complicated trial twice, and this result would prejudice the government. Moreover, defendant's desire for a trial date before that of her brother is not a basis for severance. The Speedy Trial Act contains the same preference for joint trials that severance doctrine protects, and time should be excluded under the Act for delay necessary to secure a joint trial in this case.

This court should deny defendant's motion.

## ARGUMENT

### I. The preference for joint trials is strong, and applies with particular force here.

There is a strong preference that defendants who are indicted together should be tried together, and such joint trials "play a vital role in the criminal justice system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).[1] Joint trials are preferred because they conserve scarce time and resources, they give the jury the best perspective on all the evidence and therefore increase the likelihood of a correct outcome, and they avoid the "scandal and inequity of inconsistent verdicts." *Id.*; *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006). The presumption in favor of joint trials is particularly strong where defendants are charged in the same

[1] Unless otherwise noted, internal quotations and citations are omitted.

indictment with participating in the same conspiracy. "Rarely, if ever, will it be improper for co-conspirators to be tried together." *United States v. Kime*, 99 F.3d 870, 880 (8th Cir. 1996).

All of the general reasons for joint trials apply with particular force in this case. Defendant and her brother Mo Hailong are charged in the same indictment with participating in the same conspiracy, and there are no other charges. A trial of the defendants, whether joint or separate, would be lengthy—at least a month, if not longer. And, as explained in more detail below, the evidence at a trial of defendant would be nearly identical to the evidence at a trial of her brother. There is a strong presumption against forcing the government and court to try the same case twice. As the Supreme Court has explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

Recognizing the preference for joint trials, Rule 14 of the Federal Rules of Criminal Procedure permits a district court to sever a defendant from trial only if a joint trial will result in prejudice, and the Eighth Circuit has explained that such prejudice must be "real" rather than speculative. *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010). The court of appeals has recognized two circumstances that may establish prejudice: if defendants have defenses that are

"irreconcilable," or if "the jury will be unable to compartmentalize the evidence as it relates to separate defendants." *Id.* "Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." *United States v. Al-Esawi*, 560 F.3d 888, 891 (8th Cir. 2009).

Critically, defendant bears the burden of showing a clear likelihood of prejudice, *Hively*, 437 F.3d at 765, and this burden is "heavy." *Sandstrom*, 594 F.3d at 644.

## II. Defendant has not demonstrated that a joint trial will prejudice her.

### A. There are no irreconcilable defenses.

Defendant's motion for severance does not even contend, much less demonstrate, that her defense at trial will be irreconcilable with that of her co-defendant and brother, Mo Hailong. In any event, there is a high bar to showing such an irreconcilable defense. There is no inherent prejudice when defendants offer defenses that conflict with one another. *Zafiro*, 506 U.S. at 538. The risk of prejudice exists "only when there is a danger that the jury will unjustifiably infer that *this conflict alone demonstrates that both [defendants] are guilty*." *Sandstrom*, 594 F.3d at 644 (emphasis in original). Even then, "[t]he risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions." *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004); *see also Sandstrom*, 594 F.3d at 646 (holding that jury instructions cured any prejudice from antagonistic defenses). In short, defendant's motion offers no grounds for severance based on irreconcilable defenses.

**B. There is no risk of spillover.**

This is not a case in which a jury will be unable to differentiate between the evidence against defendant and the evidence against her brother, Mo Hailong. There will be little to compartmentalize, because the evidence at a trial of defendant alone would be nearly identical to the evidence at a joint trial of defendant and Mo Hailong, and all of this evidence is admissible against defendant. Moreover, any slight risk of spillover does not support the drastic step of severance, and the court can cure any potential prejudice with appropriate jury instructions.

**1. Defendant's chats with Mo Hailong are admissible against both defendants.**

From 2006 to 2008, defendant, Mo Hailong, and the conspiracy's leader, Dr. Li Shaoming, communicated with each other about their plan to steal corn seed from companies in the United States, send the seed to China, and conceal their actions from American companies and authorities. Some of these conversations occurred through instant messenger "chats," which Mo Hailong preserved in text files on his computer.[2] As outlined in the indictment, on January 16, 2007, defendant Li Shaoming told Mo Hailong:

> [Defendant] MO Yun is in charge of the specifics from the home country side. She will contact you and work with you. I hope we can gather 1000 pieces of the top notch corn hybrids or inbred lines currently available in the U.S. It's even better if we can collect the elite breeds that are being tested.

---

[2] The indictment summarizes such chats from 2007 and 2008, but there are additional chats involving defendant from 2006, which the government has provided defendants in discovery.

Indictment, ¶ 27.

In subsequent conversations up to January 2008, defendant instructed Mo Hailong to contact Dr. Li Shaoming about what corn seed to collect; defendant instructed Mo Hailong to contact farm owners about purchasing farmland for DBN, which, according to Mo Hailong, would help them obtain the "parent of germplasm"; defendant asked Mo Hailong if he could get corn, and Mo Hailong responded that it's easy to pick and take pictures, but caution is needed to avoid being seen; Li Shaoming told Mo Hailong that Li Shaoming would speak to defendant about sending additional employees to help Mo Hailong collect seed; and defendant told Mo Hailong that Li Shaoming was very glad to see the performance of the seeds Mo Hailong had sent, and that Mo Hailong's work in the United States was very important to Li Shaoming's plan. *Id.* ¶¶ 28-32.

Defendant has not filed a motion to exclude the chats summarized in the indictment, but her severance motion claims they are inadmissible hearsay and that the government cannot authenticate them. Dkt. 98-1 at 15-16. These claims are baseless.

The chats are not hearsay. Chats between Mo Hailong and Mo Yun are admissible against both defendants as statements of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). Chats between Mo Hailong and Li Shaoming are admissible against Mo Hailong as statements of a party opponent, and are admissible against Mo Yun as co-conspirator statements. *See* Fed. R. Evid. 801(d)(2(E).

Defendant's challenge to the authenticity of the chats is equally flawed. If the

chats cannot be authenticated, they are inadmissible against both defendants, but that is something defendants have in common and is not a reason to sever their trials. More importantly, there is no authentication problem.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The evidence at trial will show the chats are conversations between defendants—not necessarily every conversation defendants had, but at least some of their conversations. To establish this, the government does not need testimony from a participant in the conversations; it can demonstrate what they are through circumstantial evidence, including their content. *United States v. Wadena*, 152 F.3d 831, 854 (8th Cir. 1998); *United States v. Young*, 753 F.3d 757, 773 (8th Cir. 2014); Fed. R. Evid. 901(b)(4).

There is plenty of evidence that the chats are conversations between defendants: (1) the chats are contained in text files found on Mo Hailong's computer, which the FBI seized from his home; (2) the chats are saved in individual files, and the file names contain defendant's name, "Mo Yun," and often include the date; (3) the text of the chats indicates that they are between "Hailong" and the Chinese character for "Mo Yun"; (4) in several chats, defendant and Mo Hailong refer to defendant's email address as moyun@dbn.cn—defendant's name, followed by her employer, DBN, followed by ".cn," the Internet country domain for China; and (5) defendant admitted to the FBI that one of the chats records her giving advice to her brother, Mo Hailong, about personal matters. (During the same chat, defendant and

Mo Hailong discussed buying farmland in furtherance of the conspiracy. Indictment ¶ 29.)[3]

This evidence is more than enough to satisfy the proponent's threshold: "a rational basis" to believe the chats are conversations between defendants. *Wadena*, 152 F.3d at 854; *see also United States v. Manning*, 738 F.3d 937, 943 (8th Cir. 2014) (affirming district court's admission of chats found on defendant's computer based on identifying information about defendant contained in chats, testimony that defendant admitted using the username contained in chats, and presence of chats on defendant's laptop in his house).

Once the government meets this burden, "the jury determines any further questions as to the evidence's authenticity." For example, defendant suggests that because Mo Hailong may have cut and pasted the chats into a text file, they might be inaccurate or incomplete. Dkt. 98-1 at 15. Defendant will be free to argue this point to the jury, but they go to the evidence's weight, not its admissibility. *See United States v. Garrison*, 168 F.3d 1089, 1094 (8th Cir. 1999) (holding that defendant's claim that airline flight records were inaccurate because they conflicted with other evidence at trial was for the jury to resolve).

**2. Coconspirator statements and acts in furtherance of the conspiracy are admissible against both defendants.**

As summarized above, in 2007 and 2008, defendant gave her brother Mo

[3] Defendant says she will move to suppress this admission. Dkt. 98-1 at 15-16. But she has not done so, and her motion will be meritless, because she was not in custody at the time of the interview.

Hailong instructions about collecting corn seed in the United States and Mo Hailong discussed the need to avoid being detected while doing so, defendant and Mo Hailong discussed sending the seed to defendant Li Shaoming in China, and defendant instructed Mo Hailong to contact land owners about buying farmland in Iowa, which Mo Hailong said would help them obtain the "parent of germplasm." Indictment ¶¶ 27-32.

In the following years, Mo Hailong and other coconspirators followed defendant's instructions and carried out the plans defendant, Mo Hailong, and Li Shaoming had discussed. In May 2008 and March 2012, Mo Hailong bought farmland in Iowa and Illinois. *Id.* ¶¶ 33 38. In May 2011, he was found digging hybrid corn out of a field in Iowa, and after being caught, Mo Hailong and defendant Wang Lei sped away in a car. *Id.* ¶ 35. In September 2011, Mo Hailong mailed over 340 pounds of "corn samples" from Iowa to his home in Florida, and in May 2012, he and defendants Ye Jian and Lin Yong attempted to ship 250 pounds of corn seed from Illinois to Hong Kong. *Id.* ¶¶ 37, 39.

In August and September 2012, defendants Ye Jian and Lin Yong stole inbred corn seeds from fields in Illinois and had numerous conversations about their activities. *Id.* ¶¶ 42-64. These included conversations in which they specifically discussed how they were stealing intellectual property, and the consequences if they were caught. *Id.* ¶¶ 54-57. In September 2012, Mo Hailong instructed Ye Jian to thoroughly clean the cars used to steal corn seed and to remove any "traceable marks or clues." *Id.* ¶ 71. Mo Hailong also explained how he and coconspirators

Wang Lei, and Dr. Li Shaoming had washed cars in the past for the same purpose. *Id.* Also in September 2012, Mo Hailong smuggled stolen corn seed from Chicago to his home in Florida; defendants Li Shaoming and Ye Jian attempted to smuggle stolen corn seed from Illinois to China; and defendant Wang Honwei attempted to smuggle stolen corn seed from Illinois to Canada. *Id.* ¶¶ 72-75.

All of this evidence—and more—will be part of the government's case against both defendants, and all of it is admissible against both. The overt acts of defendant's coconspirators are evidence of her guilt because defendant is responsible for the foreseeable acts of coconspirators taken in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946); *United States v. Elder*, 682 F.3d 1065, 1073 (8th Cir. 2012). Defendant was part of a conspiracy to steal corn seed from American companies, smuggle it to China, and conceal the scheme from American companies and law enforcement. In 2007 and 2008, she and Mo Hailong discussed each part of the conspiracy, and defendant instructed Mo Hailong about specific ways to carry it out. After these conversations, Mo Hailong and other coconspirators carried out her instructions. Evidence of their acts in furtherance of the conspiracy is admissible against defendant.[4]

[4] While defendant notes that she left DBN in 2009, Dkt. 98-1 at 14, she does not claim that she withdrew from the conspiracy. Defendant bears the burden of proving her withdrawal, which requires evidence that she "took affirmative action to withdraw from the conspiracy either by making a clean breast to the authorities or by communicating [her] withdrawal in a manner reasonably calculated to reach [her] coconspirators." *United States v. Zimmer*, 299 F.3d 710 (8th Cir. 2002). Merely ending her criminal activities is not enough to show withdrawal. *Id.* The indictment alleges that defendant was a member of the conspiracy from its beginning in 2007 to

In addition, the statements of defendant's coconspirators in furtherance of the conspiracy are evidence of her guilt and are admissible against her under Federal Rule of Evidence 801(d)(2)(E). "The exchange of information is the lifeblood of a conspiracy[,]" *United States v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990), and this one was no different. The coconspirator statements summarized above, coupled with the overt acts in furtherance of the conspiracy, show the conspirators acting on the plans defendant, Mo Hailong, and Li Shaoming formed in 2007 and 2008. Defendant has not filed a motion to exclude these coconspirator statements, but her severance motion claims they are inadmissible because the government has no evidence, other than the coconspirator statements themselves, that defendant was part of a conspiracy. Dkt. 98-1 at 16-17.

Defendant is wrong. There are two categories of independent evidence showing defendant's involvement in the conspiracy. First, in 2007 and 2008, defendant, Mo Hailong, and Li Shaoming had numerous conversations, summarized above, about Mo Hailong's efforts to steal corn seed from companies in the United States, send corn seed back to China, buy farmland in Iowa, and conceal the conspiracy from others. Indictment ¶¶ 27-32. In some of those conversations, defendant, who Li Shaoming described as being "in charge of the specifics" of the conspiracy from China, gave Mo Hailong instructions about how to carry out the conspiracy. *Id.* ¶¶ 27-29. Second, beginning in 2008 and continuing to the end of the

---

its conclusion in 2012, Indictment ¶ 25, and she is responsible for the acts of her coconspirators during that time.

conspiracy in 2012, Mo Hailong and multiple other conspirators carried out defendant's instructions, stealing corn seed in Iowa and Illinois, smuggling and attempting to smuggle it out of the country, buying farmland, and concealing their actions from the victim companies and authorities. *Id.* ¶¶ 33-75.

To admit coconspirator statements under Rule 801(d)(2)(E), this court need only find that a conspiracy exists by a preponderance of the evidence. *Young*, 753 F.3d at 771. In making that finding, the court may consider the content of the coconspirator statements themselves—the only requirement is that the coconspirator statements cannot be the "*sole* evidence of the conspiracy." *United States v. Ragland*, 555 F.3d 706, 713 (8th Cir. 2009) (emphasis added). Here, the independent evidence described above, coupled with the coconspirator statements themselves, proves a conspiracy by a preponderance of the evidence. The coconspirator statements were made in furtherance of that conspiracy, and they are admissible against defendant.

**3. Nothing about a joint trial requires severance.**

As described above, the government will introduce the same core of evidence at trial against both defendants. Moreover, because the same evidence is admissible against both defendants, there is no risk of the jury convicting defendant based on evidence inadmissible against her—the problem of spillover. *See Kindle*, 925 F.2d at 277 (holding that severance was not warranted because "much of the testimony did directly or indirectly implicate appellant in the conspiracy"). Whatever minor risk of spillover exists does not justify severance. "Severance is never warranted simply

because the evidence against one defendant is more damaging than that against another. . . . What is required for a severance is a specific showing that a jury could not reasonably be expected to compartmentalize the evidence." *Hively*, 437 F.3d at 765; *accord Kime*, 99 F.3d at 880. Even if there were evidence to compartmentalize in this case, which there is not, the Supreme Court and Eighth Circuit have repeatedly held that jury instructions can prevent any prejudice. *See Zafiro*, 506 U.S. at 939; *Hively*, 437 F.3d at 765; *Kime*, 99 F.3d at 880.

## III. Defendant is not entitled to severance merely in order to secure a trial date before her codefendant.

Defendant's main argument for severance is that she claims to want a trial on December 1, 2014, while her co-defendant Mo Hailong is not prepared to go to trial on that date. Dkt. 98-1 at 7-8, 14-16. But securing a trial before a codefendant is not a basis for severance, and time is excluded under the Speedy Trial Act for reasonable delay made necessary by the Act's strong preference for joint trials.

### A. Severance is not justified merely to avoid a delay in trial.

As explained above, the Eighth Circuit has recognized that two types of prejudice may justify severance, and trial delay is not one of them. *See Sandstrom*, 594 F.3d at 644 (recognizing irreconcilable defenses, and a jury's inability compartmentalize evidence a proper bases to sever). Other authorities agree. *See, e.g.,* 41 *Geo. L.J. Ann. Rev. Crim. Procedure* at 327-330 (2012) (collecting cases that recognize four forms of prejudice warranting severance: mutually exclusive defenses, antagonistic conduct by a codefendant's attorney, a codefendant's refusal

to give exculpatory testimony due to potential for self-incrimination, and the introduction of a codefendant's confession that incriminates the defendant).

This is no quirk of severance doctrine: the preference for joint trials is built into the Speedy Trial Act itself. The Act provides that a district court must exclude time under the Act for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). The Eighth Circuit has held that this provision means that the speedy trial clocks of codefendants should be synchronized, and that exclusions of time for one defendant apply to all defendants. *United States v. Lightfoot*, 483 F.3d 876, 885-86 (8th Cir. 2007). Defendant claims that the speedy trial clock for codefendant Mo Hailong has expired, Dkt. 98-1 at 12, but that is incorrect. As the government explains in a separate filing, time should be excluded for Mo Hailong until December 1, 2014, this exclusion should also apply to defendant, and Mo Hailong's speedy trial clock should be reset and synchronized with defendant's, which will leave them both with no expired time under the Act. *See* Dkt. 104-1; *Lightfoot*, 483 F.3d at 885-86; 18 U.S.C. § 3161(h)(6).

As the Eighth Circuit has explained, the purpose of applying exclusions of time to all defendants in a case "is to insure that the Speedy Trial Act does not alter the present rules governing severance of co-defendants by forcing the government to prosecute the defendants separately or be subject to a speedy trial dismissal motion." *Lightfoot*, 483 F.3d at 886 (citing *United States v. Monroe*, 833 F.2d 95, 100 (6th Cir. 1987); *United States v. Vega Molina*, 407 F.3d 511, 532 (1st Cir. 2005)).

Time excluded for one defendant is excluded for all to "prevent[] speedy trial concerns from deterring the government from seeking to join defendants." *Lightfoot*, 483 F.3d at 886.

Without this rule, the Speedy Trial Act would become "a sword that can be used to shred the joinder rules"—an outcome Congress specifically guarded against. *Vega-Molina*, 407 F.3d at 532. "The legislative history of this section demonstrates a strong Congressional preference for joint trials and an intention that delays attributable to the joinder of defendants be liberally excluded." *Monroe*, 833 F.2d at 100. Indeed, by providing that all defendants should be on the same speedy trial clock, Congress "explicitly recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice [feeling that] the efficiency and economy of joint trials far outweighed the desirability of granting severance where the criterion was simply the passage of time." *Id.*; *accord United States v. Otero-Hernandez*, 743 F.2d 857, 859 (11th Cir. 1984); *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982).

In passing the Act, Congress explained that it did not want district courts to be "forced to grant severances unnecessarily in multi-defendant cases so that a defendant whose case was moving slowly would not hold up the trial of his codefendants," *Varella*, 692 F.2d at 1359—the exact demand defendant makes here. Following Congress's instruction, courts have denied Speedy Trial Act and severance claims of defendants based on significant trial delays made necessary by a joint trial. *See, e.g., United States v. Casas*, 425 F.3d 23, 36-37 (1st Cir. 2005)

(holding that defendant held in custody was not entitled to severance based on delay of three years and five months that resulted from joint trial); *Vega-Molina*, 407 F.3d at 532-33 (holding that there was no Speedy Trial Act violation for a year-and-a-half delay of trial that resulted because a codefendant's lawyer was unavailable during the delay).

**B. Delay of trial is reasonable.**

Like defendant, the government wants to proceed to trial at the earliest feasible date. The government acknowledges that defendant is separated from her children, but such collateral consequences of criminal charges are hardly unique to this case. Defendant's inability to travel to China is necessary in light of this court's finding that she "poses a substantial risk of flight." Dkt. 90 at 5. Defendant is not in custody, and the government and defendant are working together on a proposal that would permit defendant to travel to Los Angeles in the coming weeks to visit her children.

In preparation for trial, the government has been diligently reviewing discovery, has disclosed voluminous material as soon as it has become available (so much that defendant complains about the volume, Dkt. 97-1 at 2), and is working to declassify the relatively small amount of additional material as soon as possible. But some delay past the current trial date of December 1 is inevitable. And such delay is also reasonable.

First, defendant's pretrial litigation strategy alone may require a delay. Defendant has filed a motion to sever and a motion for a bill of particulars, and the

court has scheduled a hearing on these motions on October 1, 2014. Dkt. 103. Defendant's severance motion announces her intention to file the following additional pretrial motions: (1) a motion to exclude defendant's statements to Mo Hailong in the instant messenger chat sessions; (2) a motion to exclude coconspirator statements; (3) a motion to suppress defendant's pre-arrest statements to the FBI; and (4) a possible motion to dismiss the indictment under the Speedy Trial Act and Sixth Amendment. Dkt. 98-1 at 7-8, 11-12. Defendant's argument for severance assumes that this court will grant all of these additional motions, although none of them have merit.

There is currently no deadline for filing pretrial motions, and defendant has informed the government that she may file motions in addition to those listed above, some of which by their nature, would cause significant time to fully address. If defendant files extensive pretrial motions, and particularly those that raise complex factual or legal issues, the time necessary for the government to respond and the court to rule will likely make the December trial date unrealistic.

Second, because of the volume of discovery, the fact that much of it is in Mandarin, and the fact that some of it has not yet been disclosed because it is still classified, defendant Mo Hailong's attorneys have informed the court that they will not be prepared for trial by December 1. Dkt. 99. These are good reasons to delay the trial, and they apply to both defendants.

Third, all of the reasons that create a strong presumption in favor of joint trials apply with particular force in this case. Separate trials would be lengthy,

complicated, and nearly identical. Because the government's case would be nearly the same, a separate trial would not protect defendant from prejudice during the trial itself. And separate trials would risk the "scandal" of inconsistent jury verdicts, while prejudicing the government by allowing Mo Hailong to see the government's entire case far in advance of his own trial. *See Zafiro*, 506 U.S. at 537; *Richardson v. Marsh*, 481 U.S. at 210.

The Eighth Circuit has said that "[r]arely, if ever, will it be improper for co-conspirators to be tried together." *Kime*, 99 F.3d at 880. This is not the rare case.

**CONCLUSION**

For these reasons, the court should deny defendant Mo Yun's motion to sever.

Respectfully Submitted,

Nicholas A. Klinefeldt
United States Attorney

By: */s/ Marc Krickbaum*

Jason Griess
Marc Krickbaum
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: marc.krickbaum@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2014, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

_X_ ECF/Electronic filing ___ Other means (email)

UNITED STATES ATTORNEY

By: *__/s/ Marc Krickbaum__*
Assistant United State Attorney