IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LI SHAOMING, et al.,<br><br>Defendants. | Criminal No. 4:13-cr-147<br><br>**DEFENDANT MO YUN'S REPLY IN SUPPORT OF MOTION TO SEVER AND PROCEED TO TRIAL ON DECEMBER 1, 2014** |

## I. INTRODUCTION

While reciting the general law regarding severance, the Government ignores the fact that the case against Mo Yun ("Ms. Mo") involves no evidence of her involvement in the charged conspiracy during any time period in which an alleged theft of trade secrets took place. And while falling back on the argument that a conspiracy does not require proof of an actual theft, the Government further ignores the fact that none of the alleged excerpts of conversations purportedly involving Ms. Mo from 2007-08 reference obtaining seeds other than those that are sold and grown in the marketplace. In other words, the Government does not even possess a theory, much less evidence, which establishes that the conversations in 2007-08 related to seeds that enjoyed trade secret protection. Finally, the Government must acknowledge the enormous gap in time between the 2007-08 excerpts and the 2011-12 alleged acts of theft – a gap which includes Ms. Mo terminating her employment with DBN no later than March 2009. It is a last gasp effort to suggest that anyone could reasonably extend *Pinkerton* liability this far.

Judged against this background as well as the general dearth of evidence against Ms. Mo, she asks the Court to exercise its discretion and sever her trial from that of Mo Hailong. Severance is necessary to accord respect to Ms. Mo's rights to a speedy and fair trial – rights whose importance is paramount in light of the harsh circumstances arising out of Ms. Mo's arrest and lengthy separation from her children, husband, parents and community. This separation has already caused irreparable harm to the children and Ms. Mo.

While alleged co-conspirators are routinely tried together, this case is anything but routine.[1] Because the decision to grant severance depends on the individual circumstances and

[1] None of the severance cases cited by the Government involved defendants whose alleged acts were so removed in time from the operative acts of the conspiracy, where the evidence was as thin and isolated as the evidence here, and where the damaging effect of the pre-trial (footnote continued)

evidence of each case, courts are granted wide discretion in this area to determine what is just and fair. *See United States v. Wint*, 974 F.2d 961, 966 (8th Cir. 1992); *United States v. Swarek*, 656 F.2d 331, 337 n.4 (8th Cir. 1981). Here, the just and fair way to respect Ms. Mo's right to a speedy trial and not to be unfairly tainted by the evidence not involving her is to sever her case and set an early trial date.

## II. ARGUMENT

The Government contends that its problems timely producing discovery in this case, together with Ms. Mo's intended motions, preclude a December 1 trial. This argument is disingenuous. First, if the Government indicts a defendant but is not prepared to produce discovery reasonably in advance of the scheduled trial date, due process dictates that it should be precluded from using that evidence against the defendant. It is not the defendant's burden to wait for the Government to get its act together.[2] Second, the Court can and should impose reasonable deadlines for production of discovery and pretrial motions such that a December 1 trial can go forward. Ms. Mo will file her motions in accordance with that schedule. Given the Government's thin case against Ms. Mo, its aggressive and distorted interpretation of the instant

---

separation from family is so harsh. *See Zafiro v. United States*, 506 U.S. 534 (1993) (defendants arrested after joint delivery of drugs); *Richardson v. Marsh*, 481 U.S. 200 (1987) (defendants charged based on single, joint attack); *United States v. Sandstrom*, 594 F.3d 634 (8th Cir. 2010) (defendants charged with single shooting); *United States v. Al-Esawi*, 560 F.3d 888 (8th Cir. 2009) (question was whether to sever different counts, not co-conspirators); *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (defendants engaged in Government grant fraud which required simultaneous conduct by both); *United States v. Mickelson*, 378 F.3d 810 (8th Cir. 2004) (defendants were employees at same store where they used position to acquire and then sell pseudophedrine); *United States v. Kime*, 99 F.3d 870, 880 (8th Cir. 1996) (drug charges based on one-month wiretap investigation).

[2] *See, e.g. United States v. Davis*, 244 F.3d 666, 673 (8th Cir. 2001) (affirming exclusion of evidence provided by Government after discovery deadline "in order to maintain the integrity of the judicial process and respect the pressing scheduling problems of the district court"); and *United States v. Pherigo*, 327 F.3d 690, 694 (8th Cir. 2003) (setting forth standard for excluding evidence not timely produced by Government).

message excerpts, and its handling of her interrogation, none of the intended motions should be a surprise. The Government should be prepared to respond in a timely manner. There is no reason to delay.

Next, the Government assures the Court that the trial evidence against both Ms. Mo and her brother will be the same. This is far from accurate. By way of example only:

- The last allegation regarding Ms. Mo is from January 2008, and the indictment makes clear that she resigned from DBN in March 2009. The only allegations of actual trade secret theft relate to events alleged to have taken place in 2011-12.

- There is no allegation that Ms. Mo ever even *discussed* stealing trade secrets, let alone actually stole any.

- The evidence relating to Mo Hailong apparently consists of witness testimony, audio and video recordings, documentary evidence, surveillance records, and more. The "evidence" involving Ms. Mo consists of a handful of purported instant message excerpts.

- The alleged excerpts were found on Mo Hailong's computer. The Government will surely argue that the excerpts are admissible against Mo Hailong merely because they were in his possession. But to introduce them as against Ms. Mo, the Government faces the significant (and, Ms. Mo contends, insurmountable) burden of authenticating the excerpts as containing accurate and trustworthy copies of statements by Ms. Mo.[3]

At its most basic level, then, the evidence purportedly implicating Ms. Mo is vastly different from the evidence against Mo Hailong or any of her alleged co-conspirators. The Government's suggestion otherwise only highlights the concern that a joint trial would subject Ms. Mo to being smeared by evidence that is irrelevant or should not be admissible as against her. In light of the difference in quantity and type of evidence as between Ms. Mo and her

---

[3] The Government fails entirely to explain how it intends to authenticate excerpts of instant messages saved in a format which is inherently unreliable. The relevance of *United States v. Garrison*, 168 F.3d 1089 (8th Cir. 1999), cited by the Government on this point, is unclear. Opp. at 8. There, the defendant claimed that evidence introduced at trial was fabricated because it conflicted with trial testimony. 168 F.3d at 1094. Here, as the Government must concede, there will be no witness at all who can authenticate the excerpts.

brother, the Government's contention that a limiting instruction could resolve the resulting prejudice is absurd.[4]

Nor has the Government made any showing that the evidence related to Ms. Mo is anything but exceedingly thin. Rather, its response – both in its opposition to this motion and at the bail hearing several weeks ago – has been to assert that the excerpts are "independent evidence" of Ms. Mo's participation in the alleged conspiracy, permitting the Government to then introduce as against Ms. Mo later-in-time statements and acts *not involving her at all*. But even the Government does not assert that the excerpts are, by themselves, inculpatory. Instead, it insists that they implicate Ms. Mo *when interpreted in light of those later-in-time statements and acts not involving Ms. Mo*. The case agent conceded as much at the bail hearing and the Government now admits it again. *See* Opp. at 11-12. But it is only through the excerpts that the later statements and acts could potentially become admissible. This, then, is not "independent" evidence; it is improper bootstrapping, and the Government should not be permitted to bootstrap its way through basic evidentiary requirements.[5]

In the indictment, at the bail hearing, and in its opposition to this motion, the Government has suggested that Ms. Mo played a key role in this alleged conspiracy. That assertion is belied, however, by the dearth of evidence against her, and by the acknowledgement that Ms. Mo stopped working for DBN years before the events that form the gravamen of the indictment are

[4] Ms. Mo raised the looming evidentiary issues to explain just how prejudicial a joint trial would be. While the Government attacks Ms. Mo for not yet having filed her motions *in limine*, this misses the point. Even if the excerpts were somehow deemed to be admissible against Ms. Mo, the unfair prejudice that would result from a joint trial remains for all the reasons described here and in Ms. Mo's original motion.

[5] *United States v. Ragland*, 555 F.3d 706, 713 (8th Cir. 2009), cited by the Government, is inapposite. There, the court had independent witness testimony about the defendant's involvement in the alleged conspiracy. Here, there are no witnesses who will testify that Ms. Mo was part of any criminal conspiracy.

alleged to have occurred. Moreover, it relies entirely on the Government's own self-serving interpretations of purported excerpts from 2007-08. Indeed, it argues – unpersuasively – that statements made and acts committed by other people years later were somehow foreseeable to Ms. Mo, even though it has no witness or evidence to connect them together. The alleged Mo Yun excerpts from 2007-08 *do not discuss theft*, and by arguing that they provide evidence of the charged conspiracy, the Government seeks to stretch the rules of evidence beyond reason.

## III. CONCLUSION

The continued separation of Ms. Mo from her children and family is based on evidence which is unreliable, inadmissible, and most egregiously, not incriminating. This is not the "normal" case; here, all of the alleged acts of theft occurred years after Ms. Mo was gone from the company and nobody is alleging she was involved in any of them. Under these unique circumstances, Ms. Mo should not be forced to endure the unfair prejudice that would result from a joint trial. She asks that this Court exercise its discretion, sever her case from Mo Hailong, and allow her to proceed to trial on December 1.

DATED: September 25, 2014

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: /s/ Terry W. Bird
Terry W. Bird
Gary S. Lincenberg
Peter J. Shakow
Ariel A. Neuman

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email: twb@birdmarella.com
Email: gsl@birdmarella.com
Email: pjs@birdmarella.com
Email: aan@birdmarella.com

**MELLON & SPIES, ATTORNEYS**

By: /s/ Leon F. Spies
Leon F. Spies

312 E. College Street, Suite 216
Iowa City, Iowa 52240
Phone 319-337-4193
Fax 319-337-2396
Email: Spieslegal@aol.com

ATTORNEYS FOR DEFENDANT MO YUN

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2014, I electronically filed the foregoing with the Clerk of Court using the CM EFC system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by ECF/Electronic filing.

Executed on September 25, 2014, at Los Angeles, California.

/s/ Max Mitchell

Max Mitchell
Legal Assistant
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
telephone 310-201-2100