IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | 4:13-cr-147 |
| Plaintiff, | * | |
| v. | * | |
| MO YUN, | * | ORDER |
| Defendant. | * | |

Before the Court is Mo Yun's ("Defendant" or "Yun") Motion for a Bill of Particulars. Clerk's No. 106. The Government filed a resistance to the Motion (Clerk's No. 106) and Defendant replied (Clerk's No. 113). Also before the Court is Defendant's Motion to Sever. Clerk's No. 98. The Government responded to the Motion[1] (Clerk's No. 105), and Defendant replied (Clerk's No. 114).

The Court scheduled a hearing on the Motions for October 1, 2014. Clerk's No. 115. On the morning of the hearing, the Government informed the Court that, due to instruction from the Department of Justice, it would not participate in the hearing. *See* Hr'g Tr. (Clerk's No. 118) at 3–15. The Government additionally requested leave to withdraw its responses to Defendant's Motions. *See id*. The Court proceeded with the scheduled hearing and permitted Defendant to make argument, despite the Government's non-participation. *See id*.; Clerk's No. 115. On October 3, 2014, the Government filed a request to reinstate its responses to Defendant's Motions (Clerk's No. 116), which the Court granted (Clerk's No. 119). The Government also filed a supplemental response to the Motion to Sever. Clerk's No. 117. Defendant replied to the

[1] Codefendant Mo Hailong also filed a response to Defendant's Motion to Sever. Clerk's No. 99.

Government's supplemental response on October 6, 2014.[2] Clerk's No. 120. The Government filed a second supplemental response to Defendant's Motion to Sever on October 15, 2014. Clerk's No. 125. Defendant filed a reply to the Government's second supplemental response on October 17, 2014. Clerk's No. 126. The matters are fully submitted.

## I. BACKGROUND

On December 17, 2013, the Government filed an Indictment charging Defendant's brother, Mo Hailong, and five others with conspiring to steal trade secrets from approximately April 2011 to December 2012, in violation of 18 U.S.C. §§ 1832(a)(1)–(a)(5).[3] In general, the

---

2 In this Reply, Defendant also objected to the Government's request to reinstate its filings. *See* Clerk's No. 120.

3 18 U.S.C. §§ 1832(a) provides:

(a) Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;
(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
(4) attempts to commit any offense described in paragraphs (1) through (3); or
(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined under this title or imprisoned not

Indictment charged that Mo Hailong and the others created and executed a plan to steal proprietary corn seeds from Pioneer Hi-Bred, Monsanto, and LG Seeds, and ship them to China. *See* Clerk's No. 6. On July 2, 2014, the Government filed a Superseding Indictment. Clerk's No. 57. The Superseding Indictment differs from the original Indictment in two primary ways. First, it alleges that the conspiracy began in January 2007, rather than in April 2011. *Id.* ¶ 25. Second, it alleges that Defendant participated in the conspiracy. *See id.* ¶¶ 10, 25, 27–32. In particular, the Superseding Indictment contains the following six paragraphs with specific allegations regarding Defendant's participation in the alleged conspiracy:

> 27. On or about January 16, 2007, Defendant LI SHAOMING, advised Defendant MO HAILONG, also known as, Robert Mo, that, "MO YUN is in charge of the specifics from the home country side. She will contact you and work with you. I hope we can gather 1000 pieces of the top notch corn hybrids or inbred lines currently available in the U.S. It's even better if we can collect the elite breeds that are being tested. . . ."
>
> 28. On or about January 18, 2007, Defendant, MO HAILONG, and Defendant, MO YUN, discussed what seeds to collect. Defendant, MO YUN, instructed Defendant, MO HAILONG, to ". . . . send to Dr. LI, he can check which is better."
>
> 29. On or about June 29, 2007, Defendant, MO HAILONG, and Defendant, MO YUN, discussed the advantages of purchasing farmland to facilitate their plans. Defendant MO HAILONG, advised Iowa farmland is affordable. Defendant, MO HAILONG, stated the purchase of land would be good for business as they could hire 2–3 individuals from DBN and plant to get the "parent of germplasm." Defendant, MO YUN, agreed and instructed Defendant, MO HAILONG, to contact the farms' owners to learn more about their purchase.
>
> 30. On or about September 17, 2007, Defendant, MO YUN, asked Defendant, MO HAILONG, if he could get any corn. Defendant, MO HAILONG, explained it's easy to pick and take pictures but caution is needed to drive

---

more than 10 years, or both.

somewhere unseen as more vehicles are passing by.

31. On or October 31, 2007, Defendant, LI SHAOMING, told Defendant, MO HAILONG, he will be speaking with Defendant, MO YUN, about sending additional personnel to assist Defendant, MO HAILONG, with seed collection activities.

32. On or about January 2, 2008, Defendant, MO YUN, informed Defendant, MO HAILONG, that Defendant, LI SHAOMING, is very glad to see the performance of the seeds Defendant, MO HAILONG, had sent. Defendant, MO YUN, told Defendant, MO HAILONG, that his work in the United States is very important to Defendant, LI SHAOMING's plan. Defendant MO YUN, told Defendant, MO HAILONG, that "Zhang Hongwei" was asked to test the DNA of all important seeds.

*Id*. ¶¶ 27–32.

## II. MOTION FOR BILL OF PARTICULARS

Defendant moves, pursuant to Federal Rule of Criminal Procedure 7(f), for a bill of particulars. Specifically, Defendant requests that the Government be instructed to provide the following detailed information:

* The specific seeds purported to have been misappropriated by Ms. Mo and/or her alleged co-conspirators, identified by company (Monsanto, Pioneer, etc.), model number and year developed.

* The specific aspect of each seed that is alleged to have been a trade secret (or that the defendant are alleged to have believed was a trade secret).

* Whether the particular seeds at issue were inbred, hybrid, and/or genetically modified.

* The specific locations, including the address, owner, and other identifying information, from which the co-conspirators are alleged to have acquired the seeds in question, whether it was a growing field, seed store, or other source.

* The dates of each alleged misappropriation of seeds.

* The specific security measures purported to have been in place at those locations at the time of the alleged misappropriation.

Clerk's No. 97 at 1–2.

Defendant claims that without such information, it will be impossible for her to "discern what trade secrets she is accused of conspiring to steal, or why it is alleged that she believed those to be trade secrets." Clerk's No. 97-1 (Def.'s Br. in Support of Mot. for Bill of Particulars) at 1–2. According to Defendant, this will substantially prejudice her ability to prepare her defense and will result in prejudicial and unfair surprise at her trial. *Id*. at 2.

A. *Legal Standards*

The Federal Rules of Criminal Procedure provide:

> Bill of Particulars. The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

"If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009). "[A] bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *Id*. Rather, "[t]he purpose of a bill of particulars is to inform the defendant of the nature of a charge with 'sufficient precision to enable him to prepare for trial' and 'to avoid or minimize the danger of surprise at trial.'" *Id*. (quoting *United States v. Hernandez*, 299 F.3d 984, 989–90 (8th Cir. 2002)). "The district court has broad discretion in granting or denying a bill of particulars." *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993).

Ordinarily, an indictment is sufficient, and a bill of particulars unnecessary, where the indictment "'contains all of the essential elements of the offense charged, fairly informs the

defendant of the charges against which [s]he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.'" *United States v. Huggans*, 650 F.3d 1210, 1217 (8th Cir. 2011) (quoting *United States v. Summers*, 137 F.3d 597, 601 (8th Cir. 1998)); *see also Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (finding that an indictment is "generally sufficient" if it "set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

B. *Analysis*

Defendant argues that a bill of particulars is necessary in this case because the Superseding Indictment fails to adequately define the trade secrets that Defendant allegedly conspired to steal. Clerk's No. 97 at 3–6. According to Defendant, the Superseding Indictment merely parrots the statutory language, accusing Defendant of "'knowingly' st[ealing], deliver[ing], or possess[ing] 'trade secrets belonging to Pioneer Hi-Bred, Monsanto, and LG Seeds.'" Clerk's No. 97-1 at 3–4 (quoting Superseding Indict. ¶¶ 25–26). Defendant claims that the alleged trade secret at issue—"corn germplasm"—is defined so broadly that it is applicable to "every single seed in the world," and thus is of little or no use in preparing a defense. *Id.* at 4 ("Declaring this was a conspiracy to steal germplasm is no more specific than alleging a conspiracy to steal the Pacific Ocean."). Indeed, Defendant asserts that much of the information contained in germplasm cannot even be considered "property," let alone "intellectual property," and that the Government's failure to identify any claimed intellectual

property by name, model number, or trait leaves Defendant "to wonder what she is even accused of conspiring to steal." *Id*. at 4. Moreover, Defendant argues that, without further clarification, the Government "could change the trade secrets it is alleging at its whim, either between now and trial or even during trial itself, posing a grave danger of unfair surprise."[4] *Id*. at 4–5 ("Saying 'germplasm' over and over simply provides no useful guidance and leaves Ms. Mo open to being whipsawed at trial.").

To convict Defendant of conspiring to steal trade secrets, the Government must prove: (1) that the Defendant and at least one other person reached an agreement to commit one of the three object offenses in §§ 1832(a)(1)–(3); (2) that the Defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; (3) that at the time Defendant joined in the agreement, she knew the purpose of the agreement; and (4) that while the agreement was in effect, one of the persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement. *See generally* Eighth Circuit Manual of Model Jury Instructions § 5.06A-I. Upon careful review of the Superseding Indictment in this case, the Court declines to require the Government to submit a bill of particulars. Because Defendant is charged with *conspiring* to steal trade secrets rather than with the substantive offense of *actually* stealing trade secrets, the Government only needs to prove at trial that Defendant and her co-conspirators

---

[4] Defendant further argues that the need for a bill of particulars is compounded because the Superseding Indictment fails to identify the steps taken by Pioneer, Monsanto, and LG Seeds to protect their allegedly proprietary trade secrets from disclosure. Clerk's No. 97-1 at 6–7. Defendant contends this information is required because in order to be considered a trade secret, its owner must have taken "reasonable measures" to prevent the secret from disclosure. *Id*. at 6.

*believed* the items to be stolen were trade secrets, not that they *actually were* trade secrets. Stated another way, the Government is simply not obligated to provide "proof that the [D]efendant[] sought to steal actual trade secrets" to prove the conspiracy alleged in this case. *United States v. Hsu*, 155 F.3d 189, 205 (3d Cir. 1998). Indeed, Defendant "can be convicted of . . . conspiracy pursuant to 18 U.S.C. [§ 1832(a)(5)] even if h[er] intended acts were legally impossible." *Id*. ("It is thus the conspiratorial agreement itself, and not the underlying substantive acts, that forms the basis for the conspiracy charges. The illegality of the agreement does not depend on the achievement of its ends, and it is irrelevant that the ends of the conspiracy were from the very inception of the agreement objectively unattainable." (internal quotation marks and citations omitted)); *see also United States v. Wen Chyu Liu*, 716 F.3d 159, 170 (5th Cir. 2013) ("[T]he relevant inquiry in a conspiracy case . . . is whether the defendant entered into an agreement to steal, copy, or receive information that he *believed* to be a trade secret[.]"); *United States v. Yang*, 281 F.3d 534, 542 (6th Cir. 2002) (finding that a defendant's conviction under § 1832(a)(5) was sustainable even though the object of the conspiracy turned out not to actually be a trade secret: "The fact that the information they conspired to obtain was not what they believed it to be does not matter because the objective of the Yangs' agreement was to steal trade secrets, and they took an overt step toward achieving that objective.").

In this case, the Superseding Indictment clearly alleges that beginning in January 2007, Defendant, Mo Hailong, and others, knowingly and voluntarily came to an agreement to steal or otherwise misappropriate trade secrets belonging to Pioneer, Monsanto, and LG Seeds and that one or more of the conspirators took overt acts in furtherance of the conspiracy. *See generally* Clerk's No. 57. These allegations, combined with all the other information in the Superseding

Indictment, are more than sufficient to satisfy the constitutional requirement that the Superseding Indictment fairly apprise the Defendant of the charge against her, permit her to prepare a defense and avoid unfair surprise at trial, and permit her to plead double jeopardy as a bar to future prosecution.[5] While no doubt the information Defendant requests *may* be useful to her in the overall context of her defense, the Court concurs with the Government that Defendant's request is more in line with seeking discovery than with a proper motion for a bill of particulars. *See United States v. Hester*, 917 F.2d 1083, 1084 (8th Cir. 1990) (district court did not abuse its discretion in denying a defendant's "discovery-oriented bill of particulars"). For these reasons, Defendant's Motion for a Bill of Particulars is denied.

## III. MOTION TO SEVER

Defendant requests that the Court sever her trial from that of her codefendants so that she: (1) may obtain as speedy a trial as possible; (2) avoid the prejudice that would result from a joint trial where evidence inadmissible against her would nevertheless be heard by a jury; and (3) minimize the length of Defendant's "unjust and emotionally debilitating separation from her

---

[5] Defendant's citation to *United States v. Liew* does not compel a different result. *See* No. 11-cr-573, 2013 WL 2605126 (N.D. Cal. June 11, 2013). In *Liew*, the court ordered the Government to file a bill of particulars to more specifically identify the details of "Trade Secret 1," which the defendant was accused of "attempting" to steal in violation of § 1832(a)(4). *Id*. at *8. The *Liew* court, however, provided no particular substantive explanation for its decision that is useful in analyzing the present facts; rather it simply stated that since "Trade Secret 1" was more broadly defined in the indictment than certain other trade secrets, and since the counts at issue charged "attempt," requiring the Government to "set[] forth its theory of what Defendants[] reasonably believed the trade secret to be" would "minimize surprise at trial and [] assist in the expeditious and efficient resolution of th[e] matter." *Id*. Thus, *Liew* does little more than reinforce the long-standing and well-established principle that decisions regarding bills of particular are firmly in the trial court's discretion. *See Wong Tai v. United States*, 273 U.S. 77, 82 (1927) ("The application for the bill of particulars was one addressed to the sound discretion of the court[.]"); *Sileven*, 985 F.2d at 966 ("The district court has broad discretion in granting or denying a bill of particulars.").

young children." Clerk's No. 98-1 (Def.'s Br. in Support of Mot. to Sever) at 1.

A. *Legal Standards*

An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Court may, however, order separate trials for properly joined defendants when "consolidation for trial appears to prejudice a defendant." Fed. R. Crim. P. 14(a). The threshold for establishing prejudice is high, though, as "[t]here is a preference in the federal system for joint trials of defendants who are indicted together [because joint trials] promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Indeed, "[o]nce defendants are properly joined under Rule 8, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Flores*, 362 F.3d 1030, 1040 (8th Cir. 2004).

"To overcome the presumption, defendants must demonstrate severe or compelling prejudice." *United States v. Crumley*, 528 F.3d 1053, 1063 (8th Cir. 2008) (citing *Flores*, 362 F.3d at 1039); *see also United States v. Davis*, 534 F.3d 903, 916 (8th Cir. 2008) ("A defendant seeking severance must show that 'real prejudice' will result from a joint trial." (quoting *United States v. Mickelson*, 378 F.3d 810, 817–18 (8th Cir. 2004)); *United States v. Warfield*, 97 F.3d 1014, 1018 (8th Cir. 1996) (emphasizing that a showing of prejudice in a conspiracy case must be "severe or compelling" because "rarely, if ever, will it be improper for coconspirators to be tried together."). To establish this type of prejudice, a defendant generally must demonstrate that: (1) her "defense was irreconcilable with that of [a] codefendant" (*United States v. Lewis*,

557 F.3d 601, 609 (8th Cir. 2009)); (2) the "jury will be unable to compartmentalize the evidence as it relates to the separate defendants because of a prejudicial spillover effect" (*United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (internal citations and quotations omitted)); or (3) a joint trial would pose a serious risk that a specific trial right of a defendant would be compromised (*Zafiro*, 506 U.S. at 539). "The burden of showing a clear likelihood of prejudice falls on the party seeking severance." *Id*. (citing *United States v. Frazier*, 280 F.3d 835, 844 (8th Cir. 2002)).

B. *Analysis*

1. *Speedy trial concerns.*

Defendant first argues that her "right to confront the charges against her as expeditiously as possible" would be violated if the Court declines to sever her trial from that of her codefendants. Clerk's No. 98-1 at 11 (arguing that the previously-set December 1, 2014 trial date "itself might constitute a Speedy Trial violation" and that any continuances of the December 1, 2014 trial date over Defendant's objection would "be without justification" and would "violate Ms. Mo's speedy trial or Sixth Amendment rights").[6] The Government counters that Defendant's trial cannot practicably occur on December 1, 2014, and that "securing a trial before a codefendant is not a basis for severance" in any event, because "time is excluded under the Speedy Trial Act for reasonable delay made necessary by the Act's strong preference for joint trials." Clerk's No. 105 (Gov't Resistance to Mot. to Sever) at 13 (contending that the "Eighth Circuit has recognized that two types of prejudice may justify severance, and trial delay is not one of them" (citing *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010)).

[6] Defendant conceded at hearing that her Speedy Trial deadline was properly waived until December 1, 2014. *See* Hr'g Tr. at 56.

Several courts have acknowledged that speedy trial concerns may be sufficiently prejudicial to warrant severance. *See, e.g.*, *United States v. Nyuon*, No. CR.12-40017-01-KES, 2013 WL 943635, at *4 (D.S.D. Mar. 11, 2013) (granting severance where a defendant had been in custody for 13 months and was facing further delay of his trial "for an unforeseeable length of time" in light of continuance requests by codefendants: "The defendant's right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. The right to a speedy trial is one of the most basic rights ingrained in the Constitution. Thus, severance is an appropriate remedy when a defendant's Sixth Amendment rights are in jeopardy." (internal quotation marks and citations omitted)); *United States v. Stockman*, No. Cr. 09-50029, 2010 WL 959928, at *1 (D.S.D. Mar. 12, 2010) (granting severance where a defendant had been in pretrial custody for eight months and where it was uncertain when a codefendant would be physically or mentally able to proceed with trial). While the Court acknowledges its authority to consider the timeliness of a defendant's trial in its severance analysis, it does not believe such concerns warrant a severance in this case at this time.

Here, Defendant was arrested on the Superseding Indictment on July 1, 2014. Clerk's No. 3. Since that time, she has mostly been free on bond, albeit with conditions. *See* Clerk's No. 90. Defendant's speedy trial clock has not yet expired. *See* Clerk's No. 118 at 56 (Defendant conceding that the speedy trial deadline in her case was properly waived until December 1, 2014); *United States v. Lightfoot*, 483 F.3d 876, 885–86 (8th Cir. 2007) (providing that speedy trial clocks of codefendants be synchronized and that exclusions of time for one defendant applies to other defendants). Defendant claims that she is prepared to proceed to trial on December 1, 2014, but that Mo Hailong is not.

While Defendant argues that the delay in forcing her to go to trial at the same time as Mo Hailong will prejudice her, there is no clear indication in the record as to how long any delay is likely to be. While the delay *could* be very long, it also *could* be relatively short. In either case, the Speedy Trial Act specifically anticipates the exclusion of a reasonable period of time when codefendants are joined in single trial. *See* 18 U.S.C. § 3161(h)(6) (excluding from the speedy trial computation "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"); *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir. 1982) (discussing that the legislative history of § 3161(h)(6) demonstrates that Congress "felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time"). Moreover, denial of severance at this time does not preclude the possibility that severance may become necessary later; nor does it prevent Defendant from later claiming a constitutional speedy trial violation. *See* 18 U.S.C. § 3161(h)(6) (permitting exclusion of a "reasonable" period of delay when a defendant is joined for trial with others); *id*. § 3161(h)(7) (providing for the exclusion of time where "the ends of justice served by [granting a continuance] outweigh the best interest of the public and the defendant in a speedy trial"); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972) (articulating a four-factor balancing test to determine whether a constitutional speedy trial violation occurred).

At this relatively early stage of the proceedings, it is not clear that further delay of Defendant's trial due to her joinder with codefendants is unreasonable. Moreover, the only real prejudice Defendant has identified attributable to a delay of her trial is the emotional trauma and stress that Defendant and her children will suffer due to the fact that Defendant is currently

prohibited from returning to China. While the Court is extremely sympathetic to the added burdens Defendant faces in these proceedings due to her involuntary separation from her children, it cannot conclude that this type of prejudice alone is sufficiently severe to mandate severance as a constitutional matter.[7]

2. *Evidentiary considerations.*

Defendant next claims that her trial must be severed from that of her codefendants due to the lack of evidence against her. Clerk's No. 98-1 at 12–18. First, Defendant posits that the evidence against her is exceedingly weak, with the allegations against her comprising only six paragraphs of the Superseding Indictment. *Id*. Moreover, Defendant points out that the allegations pertaining to her reference conduct that occurred solely in 2007–2008, whereas the "vast majority of the allegations [against the codefendants] relate to purported conduct . . . in 2011 and 2012—more than three years after the last alleged statement by Ms. Mo and more than two years after she left DBN to bear her second child and raise her children." *Id*. at 13. Second, Defendant contends that since the government admits it has no evidence of her involvement in the alleged conspiracy after January 2008, the evidence against her differs significantly from the evidence against her codefendants. *See id*. at 14 ("We submit that the conspiracy start-date was

[7] Defendant's third argument in favor of severance is premised entirely on the emotional hardship that she and her children face due to the fact that Defendant's pretrial conditions prohibit her from returning to China. While the Court does consider the emotional impact of these proceedings on Defendant and her children in its overall severance analysis, it declines to examine this issue as an independent basis for severance. Indeed, Defendant does not cite a single case where a court has granted severance based solely on—or for that matter based even in substantial part on—emotional hardship. As the Government correctly points out, "such collateral consequences of criminal charges are hardly unique to this case." Clerk's No. 105 at 16. Moreover, the Court notes that Defendant's inability to travel to China is premised on this Court's finding that she poses a substantial risk of flight. Defendant has nonetheless been permitted to travel to Los Angeles, California to visit with her children and her attorneys, largely with the Government's acquiescence.

stretched back to 2007 only to accommodate the Government's desire to charge Ms. Mo. The Government will seek to introduce evidence that other defendants were digging in fields, storing corn seed in storage lockers, [etcetera]. . . . None of that evidence involves or implicates Ms. Mo. She was raising her children in Beijing and doing nothing involving corn seeds.").

Defendant's third evidentiary argument in favor of severance is that the Government's evidence against her, consisting of excerpts from purported chat conversations and statements she made at the time of her arrest, will be inadmissible because, among other things, the excerpts cannot be authenticated and the statements were made without the benefit of *Miranda* warnings. *Id*. at 15. Defendant further claims that coconspirator statements from 2011 and 2012 will be inadmissible as to her because there is no "independent evidence" of her participation in the charged conspiracy that would justify admission of coconspirator statements under Federal Rule of Evidence 801(d)(2)(E). Finally, Defendant urges that no limiting instructions could cure the prejudice she would suffer if she is tried with codefendants in light of all the considerations previously asserted.

After careful consideration, the Court concludes that Defendant has failed to demonstrate that she will suffer the type of "severe or compelling prejudice" necessary to overcome the "strong presumption" in favor of a joint trial. *See Crumley*, 528 F.3d at 1063; *United States v. Jenkins-Watts*, 574 F.3d 950, 967 (8th Cir. 2009). While the Court agrees that the allegations against Defendant in the Superseding Indictment are substantially "thinner" than the allegations against the codefendants, it is well settled that "[s]everance is never warranted simply because the evidence against one defendant is more damaging than that against another, even if the likelihood of the latter's acquittal is thereby decreased." *United States v. Hively*, 437 F.3d 752,

765 (8th Cir. 2006) (internal citations omitted); *see also United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir. 1985) ("A defendant is not entitled to severance simply because evidence may be admissible as to one defendant but not as to another, nor is he entitled to relief merely because the evidence against his codefendants is stronger."); *United States v. Finn*, 919 F. Supp. 1305, 1324–25 (D. Minn. 1995) ("[T]here is no requirement that, in order to allow a joint Trial, the evidence against each defendant be quantitatively or qualitatively equivalent.").

Moreover, the Court cannot agree with Defendant's assertions that the evidence against her is "different" than that against her codefendants or that evidence against her codefendants is inadmissible against her. Defendant is charged with a conspiracy to steal trade secrets, not with the substantive offense of theft of trade secrets. "In a conspiracy case, each member of a conspiracy may be held criminally liable for any substantive crime committed by a coconspirator in the course of and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act." *United States v. Espinoza*, 684 F.3d 766, 778 (8th Cir. 2012); *see Pinkerton v. United States*, 328 U.S. 640 (1946) (holding that a member of a conspiracy is responsible for all reasonably foreseeable actions of coconspirators unless he withdraws from the conspiracy).[8] Thus, even though Defendant is not alleged to have been actively participating in the conspiracy after early 2008, evidence of later conspirator actions and statements, if foreseeable and taken in furtherance of the conspiracy, will potentially be admissible against *all* the alleged conspirators, including Defendant.

---

[8] As the Government notes, Defendant does not claim that she withdrew from the conspiracy. Clerk's No. 105 at 10 n.4; *see Smith v. United States*, 133 S. Ct. 714, 720 (2013) ("On the matter of withdrawal . . . [p]assive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy. 'To avert a continuing criminality' there must be 'affirmative action . . . to disavow or defeat the purpose' of the conspiracy.") (quoting *Hyde v. United States*, 225 U.S. 347, 369 (1912)).

Defendant's other claims regarding the admissibility or inadmissibility of evidence are equally unpersuasive on the question of severance. While Defendant asserts that the chat excerpts referenced in the Superseding Indictment are inadmissible, she has not filed a motion to exclude them. *See* Clerk's No. 98-1 at 15, 17 ("If (and when) these 'excerpts' . . . are ruled inadmissible. . . ."); *see also id*. at 11 (Defendant stating that the "material proffered by the Government as its evidence is . . . *likely* inadmissible" (emphasis added)). Likewise, Defendant claims that statements made at the time of her arrest are inadmissible, but she has not moved to suppress them. *Id*. at 15 (stating that Defendant "will move to suppress" any statements made at the time of her arrest). And, the parties dispute whether sufficient independent evidence exists to admit conconspirator statements and actions under Federal Rule of Evidence 801(d)(2)(E), but the question has not yet been placed before the Court for actual resolution. *See* Clerk's No. 98-1 at 16; Clerk's No. 105 at 10–12. At best, Defendant has made conclusory and speculative assertions that she is likely to be prejudiced by continued joinder. This is insufficient to warrant severance. *See Hively*, 437 F.3d at 765 ("What is required for a severance is a specific showing that a jury could not reasonably be expected to compartmentalize the evidence. [Defendant's] claim of prejudice here is speculative and insufficient to overcome the presumption in favor of a joint trial."); *United States v. Osei-Tutu*, No. 11-87, 2011 WL 2456864, at *4 (D. Minn. May 9, 2011) (finding that "conclusory and speculative statements" and "general complaints of prejudice are insufficient to warrant severance").

On the record before it, the Court concludes that Defendant has not adequately shown that she is likely to be faced with irreconcilable defenses, prejudicial spill-over effect, or other serious and compelling prejudice if she remains joined for trial with her codefendants.

Moreover, even if such compelling prejudice existed, there is no support in the record for a conclusion that a jury would be unable, with appropriate limiting instructions, to compartmentalize the evidence against Defendant from that against her codefendants. The motion to sever must, therefore, be denied.

IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for a Bill of Particulars (Clerk's No. 97) and her Motion to Sever (Clerk's No. 98) are DENIED.

IT IS SO ORDERED.

Dated this __21st__day of November, 2014.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT