IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Crim. No. 4:13-CR-00147 |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE TO |
| MO HAILONG | ) | DEFENDANT'S MOTION TO |
| | ) | COMPEL |
| Defendant. | ) | |

The United States of America offers the following response to defendant Mo

Hailong's motion to compel. (Dkt. 254.)  The court should deny the motion.

## INTRODUCTION

The motion to compel portrays a discovery crisis that does not exist.

Discovery in this matter has proceeded along lines that are common in large,

complex investigations that involve classified information. Defendant has the vast

majority of the discovery he is entitled to, and will have the rest as soon as a

protective order is in place. The parties' remaining discovery disputes are few and

far between. This response focuses on those few differences.

## BACKGROUND

In June of 2011, the Federal Bureau of Investigation (FBI) initiated the

instant investigation after receiving information from Pioneer Hi-Bred

International, Inc. (Pioneer) about a suspicious incident involving one of their corn

fields.  After a lengthy and extensive investigation, Mo Hailong (Hailong) was

arrested pursuant to criminal complaint in the Southern District of Florida on

December 11, 2013.  (Dkt. 1.)

1

On December 17, 2013, a Southern District of Iowa grand jury returned a one-count indictment charging Hailong and five other defendants with conspiracy to steal trade secrets in violation of Title 18, United States Code, Section 1832.  (Dkt. 6).  Hailong made his initial appearance in the Southern District of Iowa on January 24, 2014.  (Dkt. 26.)  On January 29, 2014, Hailong was arraigned on the indictment.  (Dkt. 29.)

On July 1, 2014, Mo Yun (Yun) was arrested in the Central District of California pursuant to a criminal complaint.  (Dkt. 1.)  On July 2, 2014, a Southern District of Iowa grand jury returned a superseding indictment charging Hailong, Yun and five other defendants with conspiracy to steal trade secrets in violation of Title 18, United States Code, Section 1832.  On July 10, 2014, Yun made her initial appearance in the Southern District of Iowa and was arraigned on the Superseding Indictment.

## GOVERNMENT DISCOVERY

The investigation in this case was approximately 2 ½ years in duration and involved agents and investigation from at least nine different FBI divisions and resident agencies in the United States and abroad.  In an effort to prioritize discovery, the government sought to disclose the following categories of information as quickly as possible: 1) information supporting the indictment allegations, 2) Rule 16 material, and 3) potential Brady material.  Less significant evidence and statements were processed in accordance with these goals.

Moreover, in an attempt to expedite discovery, information was disclosed to the defense as quickly as it was made available in a form appropriate for disclosure. While the government retained copies of information disclosed to the defense, said information was not bates stamped to facilitate faster dissemination.  To date, the government has made seventeen separate disclosures to Hailong and Yun and expects to make an eighteenth disclosure within the week. [1]

The government made its initial disclosure to the defense on March 25, 2014. Included in this initial disclosure was evidence obtained from a listening device surreptitiously placed in a Chevy Tahoe operated and occupied by members of the alleged conspiracy.[2]  On April 25, 2014, the government disclosed evidence obtained from a listening device surreptitiously placed in a Ford Escape.[3]  On the same date, the government disclosed electronic evidence seized pursuant to search warrant at Mo's South Florida residence and business.[4]  As a result of these disclosures, less than five months after Mo's arrest in the Southern District of Florida, the defense team was in possession of evidence supporting nearly 70% of the overt acts alleged to have been committed as part of the conspiracy.

---

[1]  A spreadsheet reflecting the date and general nature of the government's disclosures is attached as Exhibit 1.

[2]   Supporting allegations contained in the Superseding Indictment, Paragraphs 42-64.

[3]  Supporting allegations contained in the Superseding Indictment, Paragraphs 71-75.

[4]  Supporting allegations contained in the Superseding Indictment, Paragraphs 27-32.

A majority of the investigative material disclosed in this case was at one time classified.  The process to declassify said material for disclosure to defense counsel is time consuming and involved.  Generally speaking, members of the prosecution team review the material for discoverable information.   Classified information identified to be discoverable is then submitted to agency supervisors for preparation of a more detailed request.  As part of this request, agency officials are required to make specific certifications concerning the potential risk to national security entailed in the disclosure.  Once the request is complete, several layers of approval must be obtained from successively higher levels within the investigative agency. Finally, a high-ranking official within the investigative agency, designated to be the Original Classifying Authority (OCA), reviews the request for approval.  If the OCA concurs, the material in question becomes available for disclosure to the defense.

The above described process must be completed on a document-by-document basis.  The investigating agency does not engage in bulk or group declassification. Therefore, the above described process has been repeated over and over again as part of the government's compliance with its discovery obligations in this case. Moreover, in an effort to provide the most relevant information first, the government prioritized its declassification requests as set forth above.  Moreover there are particular discovery considerations for FISA information, which require additional government coordination.

In *United States v. Liew*, the parties were faced with similar, albeit less complicated discovery issues. 2014 WL 2586329.   In that case, Walter Liew and

4

USA Performance Technology, Inc. were charged with conspiracy to commit economic espionage, conspiracy to commit theft of trade secrets, and other related charges. While Liew did *not* include *FISA* derived evidence, it did include: 1) classified information, 2) information containing trade secrets disclosed pursuant to protective order, and 3) an enormous amount of digital (electronic) and physical evidence, much of which had to be translated from Mandarin to English. More specifically, the digital evidence included approximately 12 computer hard drives containing approximately 19 Terabytes of forensic digital images obtained from 19 physical searches and 27 e-mail accounts.

Not surprisingly, discovery in *Liew* was a lengthy, ongoing process which began shortly after the initial indictment in August of 2011 and continued until a few weeks prior to trial in January of 2014. All told, discovery in *Liew*, which did not involve the FISA considerations present here, took two years to complete.

## ARGUMENT

The government is aware of its discovery obligations, which are governed by statute, the Federal and Local Rules of Criminal Procedure, and case law. *See, e.g.*, 18 U.S.C. § 3500; Fed. R. Crim. P. 16, 26.2; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). In this case, the government's discovery obligations are also informed by the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801 *et seq.*, and the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III. These authorities do not support defendant's discovery demands.

5

# I.   Rule 16 Material[5]

## A.   Defendant's Statements

The government has produced all relevant statements of the defendant pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A)-(C).

## B.   Transcripts and translations of defendant's statements

### 1.   Background

Some of the evidence in this case includes recorded audio conversations of defendant and coconspirators. For example, the government has audio recordings of conversations in cars between defendant and other defendants. The government also has recordings of telephone conversations involving defendant, Mo Yun, and other defendants. Additional evidence in this case includes written communications, such as email and chat communications, involving defendant. Some of the audio recordings and written communications are in Mandarin.

The government has disclosed audio recordings and written communications containing defendant's statements. In addition to these disclosures, defendant demands that the government immediately disclose all transcripts, including draft transcripts, of audio recordings of his statements; all translations, including draft

---

[5] When the Government states it has produced all material in a given category, we mean that we have produced all discoverable material we know about and have in our possession. The Government reserves the right to make additional disclosures if we learn about, or come to possess, additional discoverable material in the future. Moreover, said assertions do not include material for which the government intends to utilize the procedures set forth in Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, which we have addressed and will address in later, separate CIPA filings.

translations, of his statements; and all law enforcement notes regarding his statements. (Dkt. 254 at 13.)

In January, the government agreed to disclose transcripts and translations, and asked only that defendant do the same. Defendant has rejected this offer, refused to produce any transcripts to the government, and demanded that the government immediately produce its transcripts to him. The law of discovery does not support defendant's demand.

> ### 2.     Transcripts and translations are not statements of the defendant under Rule 16.

Defendant relies on Federal Rule of Criminal Procedure 16(a)(1)(A)-(C). None of these provisions support his request.

*Rule 16(a)(1)(A)*

Rule 16(a)(1)(A) provides

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

None of the statements at issue were made in response to interrogation, so this provision does not apply.

*Rule 16(a)(1)(B)*

Rule 16(a)(1)(B) provides:

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

(i) any relevant written or recorded statement by the defendant if:
· the statement is within the government's possession, custody, or control; and
· the attorney for the government knows—or through due diligence could know—that the statement exists;

(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

(iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

Rule 16(a)(1)(B)(i) does not apply to transcripts and translations. The government has already disclosed the relevant audio recordings and written communications (emails and texts) containing defendant's statements. Transcripts of the audio recordings, and translations of the recordings and written communications, are not "written or recorded statement[s] by the defendant." The transcripts and translations have been created by government employees, not the defendant, and are not the defendant's statements. The audio recordings and written communications of defendant, which the government has already disclosed, are the defendant's statements.

Defendant himself has acknowledged this. In his brief in support of his motion to suppress evidence found in his home and business, defendant noted that because the defendant had conversed with his codefendants in Mandarin, some statements attributed to him in a search warrant affidavit were not his actual statements. Rather, according to defendant, "he said *something* in Mandarin that an unnamed government translator claims is the statement shown in English in the

[affidavit]." (Dkt. 253-1 at 15 & n.19, emphasis in original.)  If, as defendant asserts, the transcripts and translations are merely the claims of the government employees who created them, then they cannot be defendant's statements.

Eighth Circuit precedent, and the jury instructions that will be given at trial, require the same conclusion. If a transcript of a recording was a defendant's statement, then the transcript, not the recording, should control. In fact, the opposite is true: it is the recording, not the transcript, that is evidence. See *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, 2014 ed., § 2.06A ("It is what you hear, however, and not what you read, that is the evidence"); *United States v. Martinez*, 951 F.2d 887, 889 (8th Cir. 1991).

Common sense also confirms this result. If every draft transcript or translation was a statement of the defendant, and if multiple draft transcripts or translations of a particular conversation exist, it would mean that the defendant made multiple, conflicting statements at precisely the same time. But a person cannot literally say two different things at once, any more than she can literally be in two different places at once. The defendant's statement is in the audio recording of his conversation or the email or text message he sent. The transcripts and translations of those communications are not defendant's statements; they are another person's account or report of defendant's statements.

Another way to say the same thing is that the transcripts and translations are a written record created by government employees that contain the substance of defendant's statements. According to Rule 16(a)(1)(B)(ii), such written records

9

containing defendant's statements are only discoverable if the statements were made "in response to interrogation by a person the defendant knew was a government agent." That includes none of the statements at issue here. "And by explicitly designating as discoverable only those written memorializations of oral statements made in response to interrogation by a known government agent under subsection (a)(1)(B)(ii), Rule 16 implicitly excludes from its scope written memorializations of other oral statements." *United States v. Siraj*, 533 F.3d 99, 102 (2d Cir. 2008); *accord United States v. McClure*, 734 F.2d 484, 493 (10th Cir.1984).[6]

Finally, Rule 16(a)(1)(B)(iii) does not apply because grand jury transcripts are not at issue here.

*Rule 16(a)(1)(C)*

Rule 16(a)(1)(C) provides:

Upon a defendant's request, if the defendant is an organization, the government must disclose to the defendant any statement described in Rule 16(a)(1)(A) and (B) if the government contends that the person making the statement:

(i) was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or

(ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee, or agent.

Defendant is not an organization, so this provision does not apply.

---

[6] For this and other reasons, defendants are also not entitled to agents' rough notes memorializing portions of defendants' statements.

Defendant has cited one district court holding that draft transcripts "amount[] to statements of the defendant," and are discoverable under Rule 16(a)(1). *United States v. Shields*, 767 F. Supp. 163, 165 (N.D. Ill. 1991) (Rovner, J.); *see also United States v. Finley*, 1987 WL 17165 (N.D. Ill. Sept. 3, 1987) (Rovner, J.). These cases do not mention, much less consider, the text of Rule 16(a)(1), and do not address any of the arguments made above. Other courts in the Northern District of Illinois have refused to follow *Shields* and *Finley*, and have held that the recordings, not the transcripts are the statements of the defendant. S*ee United States v. Bailey*, 689 F. Supp. 1463, 1468-70 (N.D. Ill. 1987). And in *Shields* itself, the district court effectively reversed itself, concluding in a later decision that, for purposes of trial, draft transcripts "must be considered statements of the individuals who prepared them." *United States, v. Shields*, 1991 WL 236492, *4 (N.D. Ill. Aug. 13, 1991). Based on this conclusion, the court ruled that draft transcripts could be used at trial for one purpose only: to impeach a witness who prepared the draft transcript and later prepared and authenticated an inconsistent version of the transcript. *Id.*

In other words, the court in *Shields* ultimately concluded that a transcript of a defendant's conversation is a statement of the witness who prepared the transcript. *Id.*; *see also Bailey*, 698 F. Supp. at 1468-70 (reaching same conclusion). But a transcript cannot simultaneously be a statement of the defendant, and of the government witness who prepared the transcript. The district court in *Shields* ultimately adopted the view of the Eighth Circuit and other courts that the recording of defendant's statement is the statement, and the transcript is prepared

11

by others as an aid to the jury. The same is true for translations. As such, neither transcripts nor translations are discoverable under Rule 16.[7]

### 3.    The government's proposal

Even though Rule 16 doesn't require it, the government believes it would be in both the court's and the parties' interests to exchange transcripts now, in order to identify issues that may be in dispute at trial. Defendant and his coconspirators made a number of highly incriminating recorded statements.  If there are going to be disputes about what they said, it is in everyone's interest to identify those disputes before trial. The scope of such disputes could affect a number of trial and pretrial decisions, including decisions about expert disclosures (if a party wants to call translators as experts).

For this reason, since January, the government has agreed to produce transcripts and translations of defendant's statements if such production is reciprocal, so that both parties produce the most current version of any transcript or translation in their possession, and both parties supplement this production with additional transcripts and translations as they become available. If there are any additional, undisclosed transcripts or translations that constitute 18 U.S.C. § 3500 material, both parties should produce them by the deadline for the disclosure of such material. We suggest that the court resolve this dispute by ordering such

---

[7] Defendant notes that in other cases, the government has produced transcripts and translations in discovery. (Dkt. 254 at 14-15.) And the government is willing to do so here, provided such production is reciprocal. But the government's willingness to produce material beyond its discovery obligations doesn't alter the meaning of Rule 16, or expand the government's discovery obligations.

reciprocal disclosures.

## II.   Scope of the government's discovery obligations

The government's position has always been that its discovery obligations extend to the prosecution team, that is, those government agencies that are, or have been, involved in the investigation or prosecution of this case. *See, e.g., United States v. Morris*, 80 F.3d 1151, 1169-71 (7th Cir. 1996) (holding that *Brady* did not require the government to seek out potentially exculpatory information in hands of IRS and other federal agencies because they were not "part of the team that investigated this case or participated in its prosecution"); *United States v. Pelullo*, 399 F.3d 197, 217 (3d Cir. 2005); *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999). In adopting this standard, courts have long recognized that "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).

Defendant claims that the government's discovery obligations are not limited to those agencies that participated in the investigation or prosecution, but are "much broader." (Dkt. 254 at 16.) He cites no case that holds this. Instead, he cites cases that, in defendant's own description, expressly adopt the prosecution-team standard. *See, e.g., United States v. Libby*, 429 F. Supp. 2d 1, 11 (D. D.C. 2006) (discovery obligation extended to Vice President's office and the CIA because they

"contributed significantly to the investigation, and without their contribution it is unlikely that the indictment in this case would ever have been secured."); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.")

In this case, the prosecution team includes: the FBI, US Customs and Border Protection, the Polk County, Iowa Sheriff's Office, and US Citizenship and Immigration Services.  The government has sought discoverable material from these agencies and disclosed it to the defense. There is no dispute for the court to resolve.

## III.   Classified information

All issues pertaining to classified information will be addressed as part of the government's CIPA filings.

## IV.   Ye Jian

The government has located one additional document concerning Ye Jian. Said document will be disclosed on April 10, 2015.

## V.   Attachments to reports

The defendant identified a recording and two documents as missing from a previous disclosure by the government.  The recording was disclosed to the defense on April 3, 2015.   The government is working to address the remaining two documents and expects to do so within the next seven days.

14

## VI.    Scientific and testing data

The government possesses such information, which includes confidential and proprietary information from the victim seed companies. The government intends to disclose this information pursuant to a protective order.  On March 18, 2015, the government proposed a stipulated protective order to both defendants.   The proposed order was intended to cover both sensitive and proprietary material currently in the government's possession as well as information sought directly from the victim seed companies by way of third party Rule 17 subpoenas issued by the defendants on January 30, 2015.

On April 2, 2015, the defendants proposed significant changes to the government's proposed protective order.  Since that time, the government has once again engaged the victim seed companies in an attempt to obtain a protective order agreeable to all parties.  The government intends to respond to the defendant's proposal within the next seven days.  Any remaining unresolved issues can be presented to the court for resolution at that time.

## VII.   Key documents

### A.    Exhibit list

In January, the parties submitted proposed pretrial deadlines in which they agreed to exchange witness exhibit lists by August 17, a month before trial. (Dkt. 168 at 2.) The court accepted this proposal. (Dkt. 175 at 2.) Defendant now demands that the government provide an exhibit list immediately in the form of a list of documents the government will use in its case-in-chief. (Dkt. 254 at 23-24 & n.11.)

In support of his new demand for an exhibit list five months before trial, defendant cites Rule 16(a)(i)(E)(ii), which provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the government intends to use the item in its case-in-chief at trial.

The government has produced, or has made available for inspection, the material in its possession subject to Rule 16(a)(i)(E)(ii). But the government should not be required to provide defendant with an exhibit list months before trial, and months before the date the parties and the court agreed to exchange such lists. Notably, though the court ordered defendant to produce reciprocal discovery by January 31, 2015, defendant has produced nothing, much less volunteered to immediately produce a list of material he intends to use in his case-in-chief under Rule 16(b)(1)(A).

## B.    List of *Brady* material

Defendant also wants the government to give him a list of documents in discovery that may contain exculpatory material. (Dkt. 254 at 26-27.) But the government is obligated to disclose *Brady* material, not to spoon feed it. Defendant's own motion contends that "Mr. Mo, not the government, is in the best position to ascertain the relevance" of potential *Brady* material. (Dkt. 254 at 13.) If defendant is in the best position for this task, then he should be the one to do it.

The reality is that no set of discovery in the history of this district has been scrutinized as carefully as the discovery in this case. Defendant and his teams of lawyers have scoured the material, catalogued it, and analyzed it. No detail has escaped them. *See* Exhibit 2. Defendant does not need the government to compile lists of discovery for him. The government has produced discovery. Defendant has made his own lists. Nothing more is required.

## VIII. Sanctions

Finally, defendant demands unspecified sanctions for supposed discovery violations. (Dkt. 254 at 27-29.) The government has done nothing to warrant such sanctions. Defendant has received the discovery he is entitled to. The parties' remaining discovery disputes are few. The government will, of course, abide by the court's resolution of those disputes.

## CONCLUSION

The court should deny defendant's motion to compel.

Respectfully Submitted,

Nicholas A. Klinefeldt
United States Attorney

By:      */s/ Jason Griess*

_____

Jason T. Griess
Marc Krickbaum
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: jason.griess@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on **April 9, 2015**, I electronically
filed the foregoing with the Clerk of Court using the
CM ECF system.  I hereby certify that a copy of this
document was served on the parties or attorneys of
record by:

____ U.S. Mail ____ Fax ____ Hand Delivery

 X  ECF/Electronic filing ___ Other means (email)

UNITED STATES ATTORNEY

By:  */s/ Jason T. Griess*
     Jason T. Griess

18