IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Crim. No. 4:13-CR-00147 |
| v. | ) | |
| | ) | |
| MO HAILONG | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT MO HAILONG'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM UNLAWFUL VEHICLE STOPS**

The court should deny defendant's motion to suppress the evidence as a result of the lawfully executed vehicle stops.

## INTRODUCTION

Defendant, Mo Hailong (Hailong), moves to suppress information obtained from separate encounters with law enforcement on September 6, 2011 and May 2, 2012. The defendant argues said encounters violated the Fourth Amendment and all evidence derived therefrom should be suppressed.

## FACTUAL BACKGROUND

On September 6, 2011, deputies with the Polk County, Iowa Sheriff's Office were dispatched to the scene of a suspicious person walking in a rural farm field. The dispatcher further advised that the person had been dropped off by a gray sports utility vehicle (SUV). Three Polk County Sheriff's deputies were in the area and responded to the scene. Upon arrival, Deputy Cass Bollman observed an Asian male standing a considerable distance within a growing corn field.

While the gray SUV was not initially observed in the immediate area of the field in question, Deputy Bollman quickly located a vehicle matching the description of the alleged drop-off vehicle and conducted a traffic stop. After stopping the gray SUV, Deputy Bollman identified the driver, Mo Hailong, and the passenger, Li Shaoming (Shaoming). The subject observed in the field was later identified to be Lei Wang (Wang). Mo Hailong provided Deputy Bollman with a Florida driver's license while Shaoming and Wang provided Chinese passports as identification.

On May 4, 2012[1], Federal Task Force Officer (TFO) Angel Lorenzo (TFO Lorenzo) of the Chicago Police Department was participating in mobile surveillance of Mo Hailong and associates in the Chicago, Illinois area. At approximately 5:30 pm, TFO Lorenzo stopped a tan GMC Yukon for running a red light in the vicinity of Cumberland Avenue and Montrose Avenue.

As a result of the traffic stop, TFO Lorenzo confirmed the identity of the driver to be Mo Hailong of Florida. The passengers of the GMC Yukon were identified to be Eugene Yu, Ye Jian and Lin Yong. Hailong was provided with a verbal warning at the conclusion of the traffic stop.

---

[1] The defendant's motion to suppress mistakenly identifies the stop as occurring on May 2, 2012 based upon the following statement made in the Affidavit of Special Agent Byron Militello on December 10, 2013: "On 5/2/2012, FBI surveillance teams observed Mo being accompanied in the rental vehicle by two Asian males, subsequently identified during a traffic stop by local police as Ye Jian, and Lin Yong, both PRC nationals and employees of DBN / Kings Nower Seed." "Subsequently" in the foregoing refers to the traffic stop that occurred in May 4, 2012.

## ARGUMENT

### I. The investigative stops conducted by law enforcement September 6, 2011 and May 4, 2012 were supported by reasonable suspicion.

#### A. Legal standard

An investigative stop is permissible under the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity. *United States v. Bell*, 183 F.3d 746 (8th Cir. 1999). "[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 8 (1989). "The Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot'" *Id.* Courts are to examine the totality of the circumstances in reviewing whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 2002).

To be reasonable, the suspicion must be supported by "specific and articulable facts." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause." *Id.* at 27. Moreover, reasonable suspicion "need not rule out the possibility of innocent conduct." *Arvizu* at 277. An anonymous tip can demonstrate "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop. *Navarette v.*

*California*, 134 S.Ct. 1683 (2014) (quoting *Alabama v. White*, 496U.S. 325, 327 (1990)).

**1. The September 6, 2011 investigatory stop was supported by specific and articulable facts.**

Based upon the anonymous report of a suspicious person walking in a farm field, the Polk County Sheriff's Office dispatched Deputy Bollman to the rural area in question. According to the report, the suspicious person was dropped off in the area by a gray SUV.

Upon arrival and consistent with the anonymous report, Deputy Bollman observed an Asian male standing a considerable distance within a growing corn field. While not initially in the immediate area, a short time later Deputy Bollman observed a gray SUV on a nearby roadway. As a result of these observations, Deputy Bollman conducted an investigatory stop of the gray SUV.[2]

According to his Field Interrogation Report, Deputy Bollman was investigating the crime of trespassing in a farm field. In Iowa, trespass is defined in a number of different ways, including:

> (1) [e]ntering upon or in property without the express permission of the owner, lessee, or person in lawful possession with the intent to commit a public offense, to use, remove therefrom, alter damage, harass, or place thereon or therein animate or inanimate, or to hunt, fish or trap on or in the property, including the act of taking or attempting to take a deer …

[2] Two other responding deputies contacted 1) the Asian male in the field, and 2) the apparent land owner.

> (2) [e]ntering or remaining upon or in property without justification after being notified or requested to abstain from entering or to remove or vacate therefrom …
>
> (3) [e]ntering upon or in property for the purpose or with the effect of unduly interfering with the lawful use of the property by others.
>
> (4) [b]eing upon or in property and wrongfully using, removing therefrom, altering, damaging, harassing, or placing thereon or therein anything animate or inanimate, without the actual or implied permission or the owner… Iowa Code § 716.7(2)(a)(1-4).

Within a few moments of his arrival, Deputy Bollman made observations corroborative of the anonymous report. First, Deputy Bollman observed an individual standing a considerable distance within a corn field. Second, Deputy Bollman located a gray SUV, a vehicle which matched the description of the vehicle which allegedly dropped the male off near the cornfield. This corroboration, in combination with the overall suspicious nature of the activity itself, justified an investigative, *Terry* stop of the defendant's vehicle. Based upon the anonymous call and the corroborative observations, Deputy Bollman was in possession of facts supporting a reasonable suspicion that the crime of trespass, in a number of ways violating the statute, may be taking place.

The defendant cites *Florida v. J.L.*, 529 U.S. 266 (2000) as a case he deems factually indistinguishable from the case at bar. In J.L., an anonymous caller informed the Miami-Dade police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a

gun. *Id.* at 268. Based upon said tip, officers went to the bus stop, located a young man matching the description, frisked him, and found a gun. *Id.* In concluding the police lacked reasonable suspicion to stop and frisk the young man based upon an uncorroborated tip, the Supreme Court emphasized that reasonable suspicion turns on the reliability of a tip's "assertion of illegality," not merely its "tendency to identify a determinate person." *Id.* at 272.

The facts of *J.L.* are completely dissimilar to the facts possessed by Deputy Bollman. Most significantly, merely standing at a bus stop is indicative of absolutely no crime at all. On the other hand, standing in the middle of a rural corn field having been dropped off by a vehicle that then leaves the area, is highly suspicious. Moreover, behavior of this sort is likely to result in suspicious person reports by nearby residents, who, not coincidentally, are likely to be able to differentiate between authorized and suspicious persons.

More analogous are the facts of *Terry v. Ohio*, where an officer observed a subject and his companions repeatedly walk back and forth, look into a store window, and speak with one another. While standing alone, each of these acts were "perhaps innocent in itself" the Court concluded that, taken together, they "warranted further investigation." 392 U.S. 1, 22 (1968). In this case, a man standing alone well within in a rural corn field, having been dropped off by a vehicle that left the area is clearly suspicious and exactly the type of behavior the police are supposed to investigate.

**2. The May 4, 2012 traffic stop was supported by probable cause that a traffic violation had occurred.**

A traffic stop can be "supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Guevara*, 731 F.3d 824, 828 (8th Cir. 2013) (quoting United *States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006)). In this case, TFO Angel Lorenzo observed the vehicle operated by the defendant run a red light in the vicinity of Cumberland Avenue and Montrose Avenue in Chicago, Illinois. Based upon said observation, TFO Lorenzo was permitted to conduct a traffic stop of said vehicle. After identifying the occupants of the vehicle, TFO Lorenzo provided the defendant with a verbal warning and concluded the encounter. Nothing about this encounter was unreasonable or otherwise in violation of the defendant's Fourth Amendment rights.

## CONCLUSION

Based upon the totality of the circumstances, the traffic stops conducted by law enforcement on September 6, 2011 and May 4, 2012 were supported by reasonable suspicion. The court should deny the motion to suppress.

Respectfully Submitted,

Nicholas A. Klinefeldt
United States Attorney

By: */s/ Jason T. Griess*

Jason T. Griess
Marc Krickbaum
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: jason.griess2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2015, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

_X_ ECF/Electronic filing ___ Other means (email)

UNITED STATES ATTORNEY

By: */s/ ddegraff*
Supervisory Paralegal