IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LI SHAOMING, et al.,<br><br>    Defendants. | Criminal No. 4:13-cr-147<br><br>**REPLY IN SUPPORT OF DEFENDANT MO YUN'S MOTION IN LIMINE TO EXCLUDE, PURSUANT TO FED. RULES OF EVID. 104 AND 403, ALLEGED EXCERPTS OF INSTANT MESSAGE CONVERSATIONS BASED ON FAILURE TO MEET THE *McMILLAN* AUTHENTICATION TEST** |

**TABLE OF CONTENTS**

**Page**

I .  INTRODUCTION ...................................................................................................................1

II .  ARGUMENT .........................................................................................................................2

    A.    The *McMillan* Trustworthiness Burden Applies To "Instant Message" Conversations Recorded By Another Defendant ......................................................2

        1.    The Government Cannot Meet Its *Prima Facie* Burden Under *McMillan* ........................................................................................................2

        2.    The *McMillan* Burden Applies Regardless Of *Who* Made The Recording .....................................................................................................4

        3.    The *McMillan* Standard Applies To Recorded Instant Message Conversations .............................................................................................5

        4.    The Government Attacks A Straw Man In Arguing That It Need Not Present "Every Conversation Defendants Ever Had" ...........................7

        5.    The Motion To Exclude The Instant Message Excerpts Was Not Based On Confusion Over The Interlocutors' Identity ...............................8

    B.    The Instant Message Excerpts Should Also Be Excluded Under Rule 403 ............8

III .  CONCLUSION .....................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Chaika*,
    695 F.3d 741 (8th Cir. 2012) ..................................................................................................8

*United States v. Jackson*,
    488 F.Supp.2d 866 (D. Neb. 2007) ..............................................................................1, 6, 7, 8

*United States v. Knohl*,
    379 F.2d 427 (2d Cir. 1967)......................................................................................................2

*United States v. Manning*,
    738 F.3d 937 (8th Cir. 2014) .....................................................................................................6

*United States v. McMillan*,
    508 F.2d 101 (8th Cir. 1974) ............................................................................................ *passim*

*United States v. O'Connell*,
    841 F.2d 1408 (8th Cir. 1988) ...............................................................................................1, 4

*United States v. Webster*,
    84 F.3d 1056 (8th Cir. 1996) .....................................................................................................3

**Other Authorities**

Fed. R. Evid. 403 .............................................................................................................................8

# I.

# INTRODUCTION

The government argues that the foundational burden established for recorded conversations in *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), applies only to governmental recordings of audible conversations. As such, the government does not rebut that the cut-and-pasted snippets of dialogue allegedly taken from instant message conversations are unreliable. The government argues only that such unreliability goes to the weight of the evidence, not its admissibility.

The government cites no authority for limiting *McMillan* to governmental audio recordings. Moreover, any such limitation would undermine the purpose of the *McMillan* foundational burden. Thus, contrary to the government's contention, the Eighth Circuit has applied *McMillan* to private as well as governmental recordings. *See United States v. O'Connell*, 841 F.2d 1408, 1420 (8th Cir. 1988) ("the considerations underlying the *McMillan* test should be applied [to non-governmental recordings] in a practical light to *assure the reliability* of the recorded material") (emphasis added). Nor is *McMillan* limited to audible recordings. Indeed, recorded instant message conversations are even easier to alter than audible recordings and, as a purportedly exact recording of the interlocutors' dialogue, are just as dramatically persuasive to jurors. That is why the district court in *United States v. Jackson*, 488 F.Supp.2d 866, 870-71 (D. Neb. 2007), applied the *McMillan* standards in excluding excerpted recordings of online chats.

The judicial gatekeeping function under *McMillan* is designed to protect against the admission of untrustworthy evidence of recorded conversations. The government's case against defendant Mo Yun is based upon suppositions it will ask the jury to draw from snippets of dialogue taken from instant message conversations. The government concedes, however, that the

dialogue from which the snippets were pulled have not been preserved. That makes it impossible to construe the cut-and-pasted snippets within the context of the conversations from which they were extracted. It also makes it impossible to verify the integrity of the snippets themselves. We cannot tell whether there are content gaps within a string of snippets. We cannot even know whether that which appears in the Word documents to be an immediate response to a preceding snippet was actually excerpted from another part of the conversation or even a different conversation altogether. Nor are the party who made the cut-and-paste document or the other parties to the alleged conversations available for cross-examination at trial.

## II.

## ARGUMENT

A.  **The *McMillan* Trustworthiness Burden Applies To "Instant Message" Conversations Recorded By Another Defendant**

1.  **The Government Cannot Meet Its *Prima Facie* Burden Under *McMillan***

In *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), the Eighth Circuit enumerated a number of non-exclusive factors to guide district courts in assessing the trustworthiness of recorded conversations. The Eight Circuit, like the Second, Third, Seventh and Ninth Circuits, requires a *preliminary judicial determination* of "trustworthiness" *before* exposing a jury to recorded conversations. (*See* Motion at 9-10 (describing the *prima facie* burden imposed by the Eighth Circuit and the "clear and convincing" evidentiary standards imposed by other circuits)). These safeguards are necessary because verbatim recordings are both easily altered and "often have persuasive, sometimes a dramatic impact on a jury." *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967). Recordings that the district court finds not to be trustworthy under *McMillan* are therefore inadmissible at trial.

The government in this case seeks to introduce the type of unreliable recordings that the *McMillan* standard is designed to prevent. *McMillan* generally "requires the prosecution to demonstrate: . . . '(4) changes, additions, or deletions have not been made in the recording.'" *United States v. Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996). The government cannot satisfy that requirement here because everything but *selected portions* of the instant message conversations have been deleted or destroyed. *McMillan* also requires that "(3) the recording is authentic and correct." *Id.* But snippets of conversations collected in a Word document are not an "authentic or correct" recording of an instant message conversation. Indeed, the Word documents into which selected portions are pasted create the illusion of a conversation that never occurred by mixing and matching excerpts from multiple conversations as if they are being presented verbatim from the original instant message recording. As the conversations giving rise to the selected snippets are missing, the Word documents also strip the selected snippets of context.

The government does not even attempt to show that the snippets are reliable. The government presents no metadata from the original instant message recordings to establish timing. And none of the parties to the recorded conversations are available as witnesses. The government does not dispute that excerpts collected into single Word documents may have come from different conversations, taking place at different times. It does not dispute that words, sentences, or paragraphs may have been deleted from purported strings of text—thereby creating artificial connections not present in the original conversation. All that remains are Word receptacles into which purported excerpts have been placed. Thus, even if the government had attempted to do so, it could not meet its burden under either the third or fourth *McMillan* factor.

      2.      **The *McMillan* Burden Applies Regardless Of *Who* Made The Recording**

Recordings made by private actors are just as easy to alter as government-made recordings and carry the same risk of inordinately influencing jurors. Hence, the judicial gatekeeping function mandated through the *McMillan* trustworthiness standard applies regardless of *who* taped the conversation. See *United States v. O'Connell*, 841 F.2d 1408, 1420 (8th Cir. 1988) (applying *McMillan* to non-governmental recordings).

With no case authority to support its effort to scale-back *McMillan*, the government references a passage in *O'Connell* where the court notes that the *McMillan* factors have most often been applied to governmental recordings. (Opposition at 4 (citing *O'Connell*, 841 F.2d at 1420)). But the court in *O'Connell* applied the *McMillan* factors to a recording made by the defendant objecting to its introduction at trial. In doing so, the court explained that the *McMillan* factors must "be applied [to private recordings] in a practical light to assure the reliability of the recorded material." *Id*. This requires a practical assessment of each factor's relevance to the particular facts at hand because the factors "become meaningful only when viewed in light of the facts of the specific case." *Id*.

The private recordings were properly admitted in *O'Connell* because a practical application of the *McMillan* factors revealed that there was no reason to suspect that the recordings were altered or edited and they remained in their native format. By sharp contrast, the government here is relying on Word documents containing excerpts cut from recorded conversations that are not available, making it impossible to assess the meaning, accuracy and completeness of the selectively preserved snippets. Indeed, on January 30, 2015, the government (belatedly) produced its October 14, 2014 expert analysis confirming that "Evidence to determine origination of [the Word files] was inconclusive." (Declaration of Scott F. Polus

("Polus Decl.") at Ex. B). Nor has the government rebutted Mo Yun's showing that (i) date and file names were created and added to the cut-and-pasted documents; (ii) several supposed excerpts are partial versions of longer excerpts saved under different file names, making clear that purported excerpts were edited; (iii) there are blank areas and unusual spacing in numerous excerpts; and (iv) many excerpts begin in what appears to be the middle of an ongoing discussion. (*See* Dkt. 247 ("Declaration of Peter Shakow") ¶ 8). Indeed, a review of the excerpts obtained by the government and produced in discovery shows them: (i) to be in a format that permits easy manipulation and selective editing; and (ii) to contain indicia of such manipulation and selective editing; but (iii) to be without any of the electronic metadata that would permit a forensic examiner to detect or identify those edits or other changes. (*See* Polus Decl. ¶¶ 9-12 (finding, for example, that "[t]he lack of additional and accurate metadata makes it nearly impossible to determine how many revisions were made to each of the RTF documents and makes it all the more difficult to reliably determine if these RTF documents were generated from one or many different conversations")).

Reliability questions arise whenever a purported conversation is preserved in an unreliable manner, regardless of *who* makes or preserves the recordings. There is no dispute in this case that the Word documents are, at best, nothing but receptacles for cut-and-pasted instant message conversations. The untrustworthiness of the manner in which these conversations were "preserved," along with the unavailability of the original conversations from which the excerpts are taken renders the excerpts inadmissible under *McMillan*.

3. **The *McMillan* Standard Applies To Recorded Instant Message Conversations**

The government also takes the position that the *McMillan* trustworthiness standard applies only to sound recordings. (Opposition at 5). That is incorrect. The *McMillan* standard

applies to any purported recording of a conversation. Recorded instant message conversations, like verbal conversations, are easily altered and carry the same risk of unduly influencing jurors.

Consistent with this, the district court in *United States v. Jackson*, 488 F.Supp.2d 866 (D. Neb. 2007), ruled that the government must make a *prima facie* showing before introducing excerpts from "an alleged online conversation" between the defendant and an undercover agent. *Id.* at 870-71.

The government's contention that "[a]t no point did the court [in *Jackson*] apply the *McMillan* factors" (Opposition at 5) is misleading. The court held that "[t]he government must make a foundational showing that the [cut-and-paste] transcript [of online chats] is trustworthy." *Jackson*, 488 F.Supp.2d at 870 (citing *Webster*, 84 F.3d at 1064, which relied on *McMillan*). In doing so, the court focused on the language of the fourth *McMillan* factor, requiring that no changes, additions or deletions have been made in the recording. The court found that the government failed to satisfy its *prima facie* burden of proving that the cut-and-paste record of online chats represented an unedited, unaltered record of the entire chat conversations recorded. Although the government agent in *Jackson* testified that he intended to cut-and-paste the entirety of all the chats, the court found the Word document into which the chats were cut-and-pasted "does not accurately represent the entire conversations took place between the defendant and [the officer]." *Id.* at 871. The missing portions of the "chat" conversations rendered the excerpts of doubtful "trustworthiness" because without the entire conversations, the defense could not demonstrate that facially inculpating excerpts could be construed in a non-inculpating manner when viewed within the context of the entire excerpted conversation. *Id.*[1]

---

[1] The government cites *United States v. Manning*, 738 F.3d 937 (8th Cir. 2014), involving chat transcriptions found on a defendant's computer. (Opposition at 7). But *Manning* involved an
(footnote continued)

Similarly, in this case, the government intends to draw inferences from tidbits of alleged conversations between Mo Hailong and Mo Yun, as well as between Mo Hailing and Li Shaoming, despite the fact only selected portions of the instant message conversations exist. As recognized in *Jackson*, the excerpts are not trustworthy because without the original conversation, the defense cannot demonstrate that the full context rebuts the government's inculpating interpretation of the excerpts.

The cut-and-pasted excerpts here are even less reliable than in *Jackson* because (i) the government will not be calling Mo Hailong or Li Shaoming as witnesses and therefore neither will be available for cross-examination about what else was said or what they meant by their statements in the alleged instant message conversations; (ii) the Word version of the instant messaging strings does not contain time stamps or any other indicia of when they were made, making it impossible to assess the connection or lack of connection between different bits of text; (iii) the government does not know where within the conversation the text appears, or what instant message dialogue strings may have taken place in-between the excerpted portions but not been preserved; (iv) there is no evidence of the criteria used by Mo Hailong for deciding which portions to save; and (v) the documents are eight years old, making it that much more difficult to speculate as to the accuracy, completeness, or meaning of the excerpted text.

  **4. The Government Attacks A Straw Man In Arguing That It Need Not Present "Every Conversation Defendants Ever Had"**

The government responds to a contention never made in the moving papers—that the government cannot rely on recorded communications between Mo Yun and Mo Hailong unless it presents a recording of "every conversation defendants ever had." (Opposition at 6). Mo Yun

---

original, unedited chat transcription—not excerpts cut-and-pasted into a document. The defendant did not contend that changes, additions or deletions had been made.

does not claim that *McMillan* renders a recorded conversation inadmissible because other conversations were not recorded. Rather, her contention, like the defendant in *Jackson*, is that the government should be precluded from introducing untrustworthy Word documents purporting to be recorded conversations involving a defendant. The existence of other, un-memorialized conversations may indeed present issues that go to weight. But where parts of purported conversations have been cut-and-pasted into Word documents, where those documents show indicia of editing and manipulation, and where there is no original record against which they can be compared, those documents are – as a matter of controlling Eighth Circuit law – not trustworthy and therefore not admissible.

> 5. **The Motion To Exclude The Instant Message Excerpts Was Not Based On Confusion Over The Interlocutors' Identity**

The government argues extensively that there is sufficient evidence to establish the identities of those participating in the instant message conversations. (Opposition at 3, 7-9). But the identity of the interlocutors is not at issue in this motion.

**B.    The Instant Message Excerpts Should Also Be Excluded Under Rule 403**

The Eighth Circuit recognizes that Rule 403 "affords a district court broad discretion to balance probative value against the danger of unfair prejudice in a particular case." *United States v. Chaika*, 695 F.3d 741, 745 (8th Cir. 2012). The government's opposition simply labels the 2007 and 2008 excerpts as being "highly probative" of Mo Yun's involvement in an alleged conspiracy to steal trade secret-protected hybrid seeds in 2011-2012. But the time gap alone belies the government's characterization. The excerpts are vague and only occasionally reference seeds. And when seeds are mentioned, it is generally in the context of obtaining seeds available to the public. Evidence relating to the legal acquisition of seeds in 2007-2008 is not relevant to prove participation in a conspiracy to steal trade secret-protected seeds in 2011-2012.

The unreliability of the excerpts, as discussed above, further undermines the contention that this evidence is "highly relevant" and reveals the substantial risk of an unduly prejudicial effect. Given the vagueness of the excerpted language and the government's interpretational gymnastics in parsing that language, the fact that it is not even Mo Yun's native language further undermines the already dubious relevance. In any event, the prejudicial effect of this unreliable evidence far outweighs any supposed relevance.

## III.
## CONCLUSION

For these reasons and those stated in the moving papers, the Court should exclude the excerpted recordings from admission at trial.

DATED:  May 11, 2015		Respectfully submitted,

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**


By:      /s/ Gary S. Lincenberg
	Terry W. Bird
	Gary S. Lincenberg
	Peter J. Shakow

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email:  twb@birdmarella.com
Email:  gsl@birdmarella.com
Email:  pjs@birdmarella.com


**MELLON & SPIES, ATTORNEYS**


By:  /s/ Leon F. Spies
	Leon F. Spies

312 E. College Street, Suite 216
Iowa City, Iowa 52240
Phone 319-337-4193
Fax 319-337-2396
Email:  Spieslegal@aol.com

ATTORNEYS FOR DEFENDANT MO YUN

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 11, 2015, I electronically filed the foregoing with the Clerk of Court using the CM EFC system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by ECF/Electronic filing.

      Executed on May 11, 2015, at Los Angeles, California.

      /s/ Maria Wilson
Maria Wilson
Legal Assistant
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone 310-201-2100