IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LI SHAOMING, *et al.*,<br><br>Defendants. | Criminal No. 4:13-cr-147<br><br>**DEFENDANT MO YUN'S MOTION TO CONDUCT RULE 15 FOREIGN DEPOSITIONS** |

## I. INTRODUCTION

Pursuant to Federal Rule of Criminal Procedure 15(b)(3) and the Court's May 15, 2015 scheduling order, Defendant Mo Yun ("Ms. Mo") respectfully moves this Court for an order permitting her to conduct foreign depositions of Chinese nationals Mo Xiaoou and Wang Danyu. These witnesses can provide material evidence in this case, but have indicated that they are unwilling to travel to the United States to testify at trial. As discussed further below, Ms. Mo has been granted permission to supplement her applications by July 15, 2015 (*see* Dkt. No. 388), and may do so after receiving the government's forthcoming discovery.

A Second Superseding Indictment (SSI) was filed in this case on June 25, 2015, nearly a year after Ms. Mo was first charged and a year and a half after the initial indictment. The SSI adds new allegations and a new charge under a different statute. It also focuses for the first time on ten particular lines of corn seed that the government asserts constitute trade secrets. It does not, however, give any identifying information about those lines beyond that some are male and one is female. The government

acknowledges that the defense will not know what these seed lines are until discovery has been provided. It has yet to provide any such discovery, either about the named seed lines or pertaining to the additional charge and new overt acts alleged in the SSI. Moreover, it has not yet provided a list of the witnesses it intends to call at trial. The government also has represented that it might have statements of Ms. Mo that it has not produced to the defense.[1]

In addition, the government has yet to produce critical discovery related to a witness who worked in China with the defendant, and whom the government has interviewed on multiple occasions. Guo Fengguang is a former DBN employee who now lives in Texas. Based on reports of two of Guo's FBI interviews, it is unclear whether Ms. Mo will need to rebut anything he says. However and notwithstanding multiple requests, the defense has yet to receive Guo's computer (even though it was seized seven months ago by the government). In addition, we understand Guo has now been interviewed for a third time by the government and has received limited immunity for his testimony. We have yet to receive a report of that interview.

As a result of the uncertainty of the government's allegations and proof against Ms. Mo, the absence of required discovery, FISA discovery not yet received, and a pattern of surprises, Ms. Mo may seek to depose additional individuals, as referenced below. More importantly, Ms. Mo respectfully requests that any Rule 15 foreign depositions be taken *after* the conclusion of the government's case-in-chief. This will ensure that Ms. Mo knows what allegations she must defend against before calling

---

[1] *See* RT of April 22, 2015 hearing at 9:20-25:

> THE COURT: In the Government's briefs it indicated it has produced all of Mo Hailong's known statements. Has it also produced all of Mo Yun's known statements?
>
> MR. GRIESS: With the exception of the matters that are going to be handled pursuant to the FISA hearing and the CIPA hearing, Your Honor, I do believe that's the case."

witnesses of her own. She should not be required to put on her case (or *any* case) before seeing the case, if any, against her.

The depositions could be conducted either by videoconference or in person in Asia over a weekend so as to cause minimal disruption during trial. Adequate provision would be made for the defendants to participate in the depositions by phone or video conference, should they need to be conducted in person.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 15 provides for the taking of depositions in criminal cases to preserve testimony for trial. Courts may grant motions by either party to conduct such depositions after a finding of "exceptional circumstances and in the interest of justice." Fed. R. Crim. Proc. 15(a)(1). The decision to grant such a motion is within the broad discretion of the trial court. *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993).

To establish "exceptional circumstances" in the Rule 15 context, "the moving party must show the witness's unavailability and the materiality of the witness's testimony." *United States v. Liner*, 435 F.3d 920, 924 (8th Cir. 2006). Courts have regularly found that the presence of a witness in a foreign country, outside the subpoena power of the federal courts, is a strong indicator that a witness is unavailable for purposes of a motion for a Rule 15 deposition, particularly when there is a representation that the witness is unwilling to testify in court. *See, e.g., Drogoul*, 1 F.3d at 1553 (granting motion for depositions of seven witnesses who were "substantially unlikely to be available to testify" because they are foreign nationals located outside the United States); *United States v. Farfan-Carreon*, 935 F.2d 678, 680 (5th Cir. 1991) (granting motion because proposed deponent was a Mexican national, beyond the subpoena power of the court, and could not be compelled to appear); *United States v. Vilar*, 568 F. Supp. 2d 429, 439 (S.D.N.Y. 2008) (granting motion for depositions of foreign nationals residing in the United Kingdom who had indicated a refusal to travel to testify).

Whether proposed testimony is material depends on the facts and circumstances of each case, but is guided by the idea that the evidence will be in some way exculpatory. *See, e.g., United States v. Sanford, Ltd.*, 860 F. Supp. 2d 1, 4 (D.D.C. 2012) ("In the Rule 15 context, materiality has the same meaning the Supreme Court gave the term in *Brady v. Maryland* and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence.") (internal quotations and citations omitted).

## III. DISCUSSION

Each of the witnesses Ms. Mo seeks to depose are expected to provide testimony that is material to her defense, as described further below. All are Chinese nationals, residing in the People's Republic of China. Not only are they beyond the subpoena power of this Court, but all have indicated an unwillingness to travel to the United States to testify. These individuals are either employees or former employees of DBN, a company at issue in this litigation. All are aware of the fact that Mo Yun – who was not charged in the initial indictment, stopped working for the Company more than six years ago, and never worked in the United States – was nevertheless detained and charged with serious federal crimes after she traveled here for a short family vacation in 2014. Her arrest and subsequent year-long forced separation from home and family has sufficiently frightened anyone with any connection to DBN – no matter how slight, and no matter how innocent their conduct – against traveling to the United States. Under such circumstances, it is not surprising that potential witnesses for Ms. Mo are reluctant to subject themselves to the jurisdiction of the U.S. Department of Justice.

For one potential witness, Mo Xiaoou, the fear of doing so has added implications. She is the sister of Mo Yun and Mo Hailong. She and her brother Michael are the only remaining familial caregivers for their aging parents and both have shouldered substantial responsibilities in caring for Ms. Mo's children while she awaits trial. The family is understandably adamant that she not travel without rock-solid guarantees for her safety

and freedom. The following, then, are individuals Ms. Mo seeks permission to depose in this case:

**A. Mo Xiaoou**

Mo Xiaoou is Ms. Mo's older sister. She has known Mo Yun all of her life. Mo Xiaoou is a resident of Sichuan Province, PRC, and until her retirement in 2014 worked mainly as an office administrator for a local middle school. From 1999 to the early 2000s, she lived in Beijing and worked for a short time for subsidiaries of DBN, again in administrative support positions. She is personally familiar with Mo Yun's life after Ms. Mo terminated her DBN employment in late 2008/early 2009 to be a stay-at-home mother, and will testify concerning the various reasons why Mo Yun was not engaged in any substantive DBN work or in the alleged conspiratorial acts after she left DBN employment, all of which is information material to Ms. Mo's defense. As noted above, Mo Xiaoou has expressed serious concerns about traveling to the United States to testify.

**B. Wang Danyu**

Wang Danyu is an employee of DBN, and has been employed there since approximately 2003. During much of the 2003-08 time period, she shared an office with Ms. Mo, as both worked in the DBN Research Institute. Among other things, Wang will testify that: (i) Ms. Mo's training and experience are not in corn breeding; (ii) Ms. Mo's role and day-to-day responsibilities at DBN from 2003 to 2008 were not in corn breeding; (iii) Ms. Mo departed the Company in 2008, had a baby in March 2009, and was no longer involved in DBN business affairs after that time. She has advised undersigned counsel that she will not travel to the United States to testify in this matter.

**C. Other DBN Employees**

There are a number of current and former DBN employees who worked with Mo Yun in the 2003-08 timeframe and can testify about her work at DBN. They can testify to Mo Yun's lack of expertise in corn breeding and involvement with the alleged conspiracy. Some also worked with government witness Guo Fengguang. Depending on

the government's forthcoming discovery regarding Guo, counsel might supplement this Rule 15 application with more complete summaries of potential testimony. It is our understanding that these witnesses will not travel to the United States to testify in this matter.

It is in the interests of justice to allow Mo Yun to produce evidence through these otherwise unavailable witnesses. Their testimony will address the government's untrue allegations in the SSI that Mo Yun knowingly and intentionally participated in the alleged conspiracy.

## IV. CONCLUSION

For the reasons stated above, defendant Mo Yun respectfully requests that the Court issue an order permitting her to take the depositions of these individuals following the conclusion of the government's case-in-chief, either by videoconference or in person in Hong Kong over a weekend during trial.

DATED: July 1, 2015

Respectfully submitted,

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: /s/ Terry W. Bird

Terry W. Bird
Gary S. Lincenberg
Peter J. Shakow

1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email: twb@birdmarella.com
Email: gsl@birdmarella.com
Email: pjs@birdmarella.com

ATTORNEYS FOR DEFENDANT MO YUN

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2015, I electronically filed the foregoing with the Clerk of Court using the CM EFC system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by ECF/Electronic filing.

Executed on July 1, 2015, at Los Angeles, California.

/s/ Diane Hunsaker

Diane Hunsaker
Legal Assistant
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
telephone 310-201-2100