IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:13-cr-00147-SMR-CFB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LI SHAOMING, MO HAILONG, a/k/a | ) | ORDER GRANTING DEFENDANT MO |
| Robert Mo, WANG LEI, WANG HONGWEI, | ) | YUN'S MOTION IN LIMINE |
| YE JIAN, LIN YONG, and MO YUN, | ) | TO EXCLUDE ALLEGED EXCERPTS OF |
| | ) | INSTANT MESSAGE CONVERSATIONS |
| Defendants. | ) | |

Cut-and-paste excerpts of instant message conversations were found on the office computer of Defendant Mo Hailong. The Government contends some are excerpts from chat conversations between Defendant Mo Hailong and Defendant Mo Yun showing Defendant Mo Yun's involvement in the charged conspiracy. [ECF No. 297]. Defendant Mo Yun moves in limine to exclude evidence of those excerpts. [ECF No. 245]. For the reasons set forth below, the Court grants Defendant Mo Yun's motion.

## I. BACKGROUND

The following is a brief background; additional relevant material is discussed in the Court's analysis below. Defendant Mo Yun, along with Defendant Mo Hailong and five others, is charged by a Second Superseding Indictment with conspiracy to steal trade secrets in violation of 18 U.S.C. § 1832(a)(1), 1832(a)(2), 1832(a)(3), and 1832(a)(5) (Count 1) and conspiracy to transport stolen property in violation of 18 U.S.C. § 2314 and 371 (Count 2). [ECF No. 384].

In December 2013, the FBI executed search warrants on Defendant Mo Hailong's home and business in Florida. [Decl. of Peter Shakow, Ex. A, ECF No. 247 at 19]. The search warrants

sought digital storage devices and computers.  *Id.*  Ultimately more than 20 devices, including an office computer, were seized.  *Id.* at 20.  Saved on the office computer were communications between Defendant Mo Hailong and other individuals allegedly involved in the conspiracy, including Defendant Mo Yun.  *Id.* at 19–20, 28.  The communications relevant to this motion in limine appeared to be cut-and-paste portions of instant message conversations between Defendants Mo Yun and Mo Hailong that Defendant Mo Hailong had saved into a word processing file.  *Id.* at 51.  FBI Special Agent Mark Betten, who testified at a July 2014 hearing on the Government's appeal of a California court's detention determination, conceded that the Government does not know whether the excerpts contained in the word processing documents represent all the communications in their original form.  *Id.* at 51–52.  He likewise agreed that there could have been information contained in the original conversations that Defendant Mo Hailong did not cut and paste into the word processing document.  *Id.* at 52.  Of the hundreds of excerpts produced to Defendant Mo Yun in discovery, approximately seventy are purportedly excerpts of conversations between Defendant Mo Yun and Defendant Mo Hailong.[1]  *Id.* at 1.

Defendant Mo Yun filed this motion in limine on March 27, 2015.  [ECF No. 245].  With the motion, she filed under seal a supporting declaration, which included as exhibits the appeal detention hearing testimony of Special Agent Betten, the instant message excerpts, and examples of broken or unavailable hyperlinks in the instant message excerpts.  [ECF No. 247].  Additional instant message excerpts were filed in support of a separate motion.  [ECF No. 250].  The

---

[1] Defendant Mo Yun seeks exclusion of all the excerpts produced in discovery, including excerpts of conversations purportedly between Defendants Mo Hailong and Li Shaoming.  For brevity and efficiency's sake, however, her briefing focuses on only those excerpts purportedly related to her.  [ECF No. 245-1 at 9 n.3].

Government responded on April 27. [ECF No. 297].  On May 13, Defendant Mo Yun replied.  [ECF No. 345].  Two days earlier, Defendant Mo Yun had filed under seal the declaration of a forensic investigator containing his conclusions about the instant message excerpts. [ECF Nos. 332; 332-1].  No evidentiary hearing was held on the motion, but the Court heard oral argument on the motion and other pending motions on May 19–20, 2015.  [*See* ECF Nos. 361; 362].  The Court took this matter under advisement.

## II.  DISCUSSION

Defendant Mo Yun raises three principal arguments for excluding the instant message excerpts.  First, she contends a heightened authentication standard applies to instant message conversations and under that standard, these messages should not be admitted.  [ECF No. 245-1 at 16–17].  Second, she argues that, regardless, the instant message excerpts are untrustworthy and thus should be excluded. *Id.* at 19–20.  Last, she insists, in any event, the probative value of the evidence is low and the danger of unfair prejudice is high, and so it should be excluded under Federal Rule of Evidence 403. *Id.* at 20.  The Government counters all three arguments.  [ECF No. 297].  The Court addresses the arguments below.

### A.  Authentication

Evidence admitted at trial must be authenticated.  Although the standard for proving authenticity is ordinarily "not exacting," a heightened standard is imposed for some types of evidence. 31 Charles Alan Wright et al., *Federal Practice & Procedure: Evidence* § 7104 (1st ed. 2015) [hereinafter *Federal Practice & Procedure*].  Two such types of evidence are audio and video recordings.  *See United States v. Henley*, 766 F.3d 893, 912 (8th Cir. 2014) (audio recording); *United States v. Roach*, 28 F.3d 729, 732–33 (8th Cir. 1994) (video recording).  In this Circuit, seven

guidelines inform whether audio and video recordings are properly authenticated.  *See United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974) (adopting seven guidelines).[2]  Defendant Mo Yun asks the Court to use those same seven guidelines to determine the authenticity of instant messages.  The United States Court of Appeals for the Eighth Circuit has never done so.

### 1.  Whether to Apply the Heightened Standard

Defendant Mo Yun's argument for applying the heightened standard here boils down to the following straightforward syllogism: (1) a heightened authentication standard applies to audio and video recordings because they are vulnerable to alteration; (2) instant message communications are similarly vulnerable to alteration; therefore (3) the heightened standard applies to instant message communications.  [ECF No. 245-1 at 9–12].  Under this heightened standard, she reasons, the Government cannot meet its burden to prove the instant message excerpts are authentic.  *Id.* at 12.

The Government's response is equally straightforward.  It argues the heightened standard does not apply to online chats recorded by and recovered from a defendant, in this case Defendant Mo Hailong.  [ECF No. 297 at 4].  The Government insists the Eighth Circuit does not apply the heightened authentication standard to a recording found in the possession of a defendant; thus, the

---

[2] The seven guidelines are:

> (1) That the recording device was capable of taking the conversation now offered in[to] evidence. (2) That the operator of the device was competent to operate the device. (3) That the recording is authentic and correct. (4) That changes, additions or deletions have not been made in the recording. (5) That the recording has been preserved in a manner that is shown to the court. (6) That the speakers are identified. (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*United States v. Smith*, 591 F.3d 974, 979 n.3 (8th Cir. 2010) (quoting *McMillan*, 508 F.2d at 104)).

heightened standard does not apply here. *Id.* at 4–5. It also points out that the instant message excerpts are not recordings; nor, for that matter, were they created by the Government. *Id.* at 5. The Government asserts it need only show a rational basis for its claim the evidence is what it asserts it is. *Id.* at 3. Under this lower standard, there is more than sufficient evidence to meet the threshold determination of authenticity, it contends. *Id.* at 6.

The Court need not spend long in determining whether the heightened authentication standard applies to instant messages. In support of heightening the standard, Defendant Mo Yun cites *United States v. Jackson*, where a district court found a cut-and-paste document containing alleged chat conversations between the defendant and a government agent posing as a fourteen-year-old girl was not properly authenticated and thus excluded it. 488 F. Supp. 2d 866, 869, 871 (D. Neb. 2007). Defendant Mo Yun notes the court in *Jackson* found changes, additions, and deletions had been made to the cut-and-paste document; this language, she insists, indicates the district court focused on the fourth guideline adopted in *McMillan*. *Id.* at 871; [ECF No. 345 at 9]. She adds that Jackson cited *United States v. Webster*, 84 F.3d 1056 (8th Cir. 1996), which in turn cited *McMillan*. *Webster*, 84 F.3d at 1064 (citing *McMillan*, 508 F.2d at 104). She thus infers that *Jackson* applied the heightened standard for authenticity adopted in *McMillan*. The implication is that precedent exists for this Court to do so.

The Government disagrees that *Jackson* applied the heightened standard. It notes that *Jackson* cited *Webster* not for a list of guidelines, but rather for the proposition that "[t]he government must make a foundational showing that the transcript is trustworthy." *Jackson*, 488 F. Supp. 2d at 870 (citing *Webster*, 84 F.3d at 1064); [ECF No. 297 at 5]; *cf.* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 901.02[2] (Mark S. Brodin, ed., Matthew

Bender) [hereinafter *Weinstein's Federal Evidence*] ("Many courts analyze authenticity questions, in part, in terms of trustworthiness.").  That *Jackson* cited *Webster* merely for this single proposition saps the argument that it novelly applied the heightened authenticity standard to instant messages, as the Government's argument implies.  After all, unlike *Jackson*, *Webster* quoted all seven *McMillan* guidelines (conspicuously, in block form), even though the Eighth Circuit was applying the heightened standard to audio and video recordings.  *Compare Webster*, 84 F.3d at 1064, *with Jackson*, 488 F. Supp. 2d at 870.  The Court agrees with the Government.

Still other reasons argue against ratcheting up the authentication standard.  The Eighth Circuit recently upheld a district court's decision to admit chat transcripts without hinting at a heightened standard.  *United States v. Manning*, 738 F.3d 937, 943 (8th Cir. 2014).  So, too, have numerous other circuit courts of appeals examined electronic evidence's authenticity without applying a heightened standard.  *See, e.g.*, *United States v. Fluker*, 698 F.3d 988, 999–1000 (7th Cir. 2012) (upholding authenticity finding because the government authenticated email with evidence sufficient to support a finding that the item was what it was claimed to be); *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000) (finding email was properly authenticated under authentication standard applied to other types of documents); *United States v. Tank*, 200 F.3d 627, 630–31, 631 n.5 (9th Cir. 2000) (declining to apply standard for determining admissibility of audiotapes and finding the government presented evidence sufficient to allow a juror to find chat room logs were properly authenticated); *United States v. Simpson*, 152 F.3d 1241, 1249–50 (10th Cir. 1998) (finding chat transcript was properly authenticated because the government presented evidence sufficient to support a finding that it was what the government claimed).  These courts' approaches accord with commentators' views.  *See* 5 Stephen A. Saltzburg et al., *Federal Rules of*

*Evidence Manual* § 901.02[12], at 901-23 (10th ed. 2011) [hereinafter *Evidence Manual*] ("The authentication standard is no different for website data or chat room evidence than for any other."); 5 *Weinstein's Federal Evidence* § 901.08[4] ("Chat room conversations are authenticated in much the same way as other communications."); 100 Am. Jur. Proof of Facts 3d 89 § 13 (2008) ("[T]he authentication standard for chat room or other internet evidence is not different from the authentication requirements for any other types of evidence."). The Court declines to extend the *McMillan* guidelines to instant messages.

### 2. Authenticity of the Instant Message Excerpts

That conclusion does not resolve the matter, though. Defendant Mo Yun still insists the instant message excerpts are untrustworthy and so should be excluded. [ECF No. 245-1 at 19–20]. The Government contends there is more than sufficient evidence to meet a threshold determination of authenticity. [ECF No. 297 at 6].

The authenticity requirement is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A proponent "'need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be.'" *United States v. Hyles*, 479 F.3d 958, 968 (8th Cir. 2007) (quoting *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993)). The burden under this standard is "relatively low." *United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1127 (8th Cir. 2013); *see also* 5 *Evidence Manual* § 901.02[1], at 901-6 ("This is a mild standard—favorable to admitting the evidence."). Once the threshold requirement is satisfied, any question about the evidence's authenticity is for the jury. *Kaplan v. Mayo Clinic*, 653 F.3d 720, 726 (8th Cir. 2011).

Several principles guide courts assessing evidence's authenticity.  First, the Government bears the burden of authenticating the evidence.  *See Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1122 (8th Cir. 2012) (explaining proponent bears burden of authentication).  Second, district courts have broad discretion in making authenticity determinations.  *See United States v. Garrison*, 168 F.3d 1089, 1092–93 (8th Cir. 1999) (holding district court did not abuse its broad discretion in admitting testimony about a telephone conversation).  Last, "[i]n determining whether a matter is authentic, a court only may consider evidence that is itself admissible."  31 *Federal Practice & Procedure* § 7104.[3]

Several methods exist for authenticating evidence.  *United States v. Young*, 753 F.3d 757, 773 (8th Cir. 2014).  One such method is testimony from a witness with knowledge the item is what it is claimed to be, Fed. R. Evid. 901(b)(1), but here the Government has no testimony from a participant in the instant message conversations.  *Cf. United States v. Lundy*, 676 F.3d 444, 453 (5th Cir. 2012) (affirming finding chat conversations were authentic where agent who posed as fifteen-year-old girl testified the cut-and-paste chats were an accurate reflection of chats); *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (rejecting authenticity challenge where government agent and informant testified that cut-and-paste records of conversations were accurate records of those conversations); *Siddiqui*, 235 F.3d at 1322–23 (relying on testimony of email recipients in affirming authenticity determination).  Other methods include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all

---

[3] *See also* 5 *Evidence Manual* § 901.02[5], at 901-11 ("A judgment as to whether a reasonable jury will find evidence to be authentic can only be made by examining the evidence that the jury will be permitted to hear."); 5 *Weinstein's Federal Evidence* § 901.06[1][c][iii] ("In determining the preliminary question of authenticity under Rule 104(b) . . . a judge may only consider evidence that is itself admissible.").

the circumstances." Fed. R. Evid. 901(b)(4); *Young*, 753 F.3d at 757.  The Government may prove authenticity through circumstantial evidence. *United States v. Wadena*, 152 F.3d 831, 854 (8th Cir. 1998).

The Court believes the Government has satisfied its relatively low burden at this stage.  First, the fact the excerpts were found on Defendant Mo Hailong's computer strongly suggests the evidence is what the Government purports it is: excerpts of chats between Defendant Mo Yun and Defendant Mo Hailong copied and pasted by Defendant Mo Hailong.  *See Young*, 753 F.3d at 774 (noting that an anonymous writing found in defendant's purse connected it to her); *Manning*, 738 F.3d at 943 (noting chats were found on the defendant's computer); *United States v. Kandiel*, 865 F.2d 967, 974 (8th Cir. 1989) (holding cassette tapes were properly authenticated where they were found in the defendant's home); *United States v. Helmel*, 769 F.2d 1306, 1312 (8th Cir. 1985) (holding drug ledger was properly authenticated when it was found in the home of one alleged co-conspirator); *United States v. Wilson*, 532 F.2d 641, 645 (8th Cir. 1976) (holding drug ledger was properly authenticated where it was found in an apartment frequented by two of three co-conspirators).  The excerpts also mention collecting seeds and the names of Defendants Mo Yun, Mo Hailong, and Li Shaoming.  *See Helmel*, 769 F.2d at 1312 (noting properly authenticated drug ledger contained references to illegal activities and names of co-conspirators); *Fluker*, 698 F.3d at 1000 (examining matters discussed in emails and concluding they supported finding of authenticity); *Siddiqui*, 235 F.3d at 1322–23 (examining emails' contents and upholding authenticity finding).  The Court concludes the Government has shown a rational basis to conclude the evidence is excerpts of instant message conversations between Defendants Mo Yun and Mo Hailong.

### B. The Danger of Unfair Prejudice

Defendant Mo Yun next argues the Court should exclude the instant message excerpts because their probative value is substantially outweighed by the danger of unfair prejudice. [ECF No. 245-1 at 5]. She notes the instant message excerpts are from 2007 and 2008, which she argues makes them irrelevant to a conspiracy ongoing in 2011 and 2012. [ECF No. 345 at 11]. Further, she argues the problems with the errors and inconsistencies with the transcripts make them unfairly prejudicial. *Id.* at 9. The Government argues the excerpts are highly probative of Defendant Mo Yun's involvement in the conspiracy, which is reflected by the conversations' content and the fact Defendant Mo Hailong saved them on his computer. [ECF No. 297 at 11 & n.9].

Federal Rule of Evidence 403 vests district courts with broad discretion to balance probative value against the danger of unfair prejudice. *United States v. Chaika*, 695 F.3d 741, 745 (8th Cir. 2012). The Rule allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. To be sure, it "'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case.'" *United States v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007) (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981)). Instead, it "'protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" *Id.* (quoting *Wade*, 663 F.2d at 783).

For the reasons the Government points out, the instant message conversations are probative of Defendant Mo Yun's involvement in the alleged conspiracy, but the Court does not agree that they are highly probative. The excerpted conversations allegedly took place between Defendant Mo Yun and Defendant Mo Hailong in 2007 and early 2008. [*See* ECF No. 384 ¶¶ 29, 30, 31, 34, 79]. The vast majority of the other alleged overt acts, however, occurred in 2011 and 2012. *See id.*

¶¶ 37–75, 79.  The Government points to no evidence indicating Defendant Mo Yun's involvement in these later events.  In fact, it concedes she no longer worked for Beijing Dabeinong Technology Group Company after March 2009.  *Id.* ¶ 10.  These facts diminish the evidence's probative value.

Even putting aside the remoteness, many of the conversations appear to be about matters divorced from the alleged conspiracy.  For instance, one purported excerpted instant message conversation—which begins as abruptly and unceremoniously as it ends—discusses, in part, whether a greeting is necessary for "hard copy materials" not intended for a lecture.  [ECF No. 247 at 115].  Another discusses a fraught marriage.  [ECF No. 250 at 12–14].  In light of this and the temporal gap between the conversations and the other alleged overt acts of the conspiracy, the Court assigns the instant message excerpts low probative value.

On the other side of the balance is the high danger of unfair prejudice to Defendant Mo Yun.  The myriad reasons asserted by Defendant Mo Yun for questioning the instant message excerpts' trustworthiness support this conclusion.  The evidence is not the original instant message conversations; it is excerpts of conversations that took place in 2007 and 2008 purportedly copied and pasted into a word processing document.  The Government does not know why these conversations, and not others, were saved; nor does it know why only these portions were cut and pasted.  And because the original conversations no longer exist, there is no way to examine the conversations' original content.  Defendant Mo Yun notes a litany of inconsistencies and errors in the excerpts:  (1) dates and file names have been created and added to the cut-and-paste documents; (2) several excerpts are merely partial versions of other, longer ones saved under different file names; (3) hyperlinks included within the messages are dead, and if the URL is typed into an Internet browser, many of the webpages appear to have changed; (4) attachments embedded within

the original instant messages cannot be accessed; (5) even if documents with similar file names are available elsewhere in the provided discovery, there is no way to determine whether the version is the same as the embedded version; (6) the excerpts contain no time stamps or indicia of when they were made; (7) there are blank areas and unusual spacing in numerous excerpts; (8) numerous excerpts appear to start mid-discussion; (9) and offline communications referred to in a number of excerpts are unavailable.  [ECF No. 245-1 at 7–8].  Also, Defendant Mo Yun's purported instant message interlocutor Defendant Mo Hailong will not be available for cross-examination about the conversations.  For these reasons, the Court concludes the instant message excerpts of conversations purportedly between Defendants Mo Yun and Mo Hailong have a high danger of unfair prejudice.

Thus, having carefully weighed these matters, the Court finds the danger of unfair prejudice substantially outweighs the probative value of the instant message excerpts, and therefore finds exclusion under Rule 403 is appropriate as to Defendant Mo Yun.

### C.  Introduction of Evidence Against Defendant Mo Hailong

Defendant Mo Hailong has not sought a motion in limine regarding these same instant message excerpts.  In the event the Government opts to introduce this evidence against Defendant Mo Hailong at trial, the Government shall characterize, redact, and otherwise describe such evidence as: (A) conversations between Defendant Mo Hailong and an unnamed person in the same office/division of DBN as Defendant Mo Yun during the relevant time frames; or as: (B) conversations between Defendant Mo Hailong and Defendant Li Shaoming that discuss a third party whose name is redacted and identified only as an unnamed person in the same office/division of DBN as Defendant Mo Yun during the relevant time frames.

### III.  CONCLUSION

For the reasons set forth, Defendant Mo Yun's Motion in Limine [ECF No. 245] is **GRANTED**.

IT IS SO ORDERED.

Dated this 17th day of July, 2015.

STEPHANIE M. ROSE
UNITED STATES DISTRICT JUDGE