IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Crim. No. 4:13-CR-00147 |
| v. | ) | |
| | ) | |
| MO HAILONG, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY REGARDING CHINESE CORN BREEDING AND YIELD, AND INTELLECTUAL PROPERTY PROTECTION IN CHINA**

# TABLE OF CONTENTS

**BACKGROUND** ................................................................................................................ 2

    I.   Challenged testimony .......................................................................................... 2

    II.  Defendant's motion ............................................................................................. 4

**ARGUMENT** ..................................................................................................................... 4

    I.   The evidence is relevant ...................................................................................... 4

    II.  The evidence will not result in unfair prejudice ............................................ 6

    III. Dr. Hayes is qualified to testify ...................................................................... 10

    IV. Defendant's charges of racism are false ....................................................... 11

**CONCLUSION** ............................................................................................................... 13

Defendant has challenged the testimony of four government experts about the state of corn breeding in the United States and China, and related topics. (Dkt. 486.) The evidence defendant challenges is relevant to prove his motive, and that of his coconspirators, to steal the highly valuable trade secrets of American companies. The evidence will not result in unfair prejudice. And the government's experts are qualified to testify. The court should deny defendant's motion.

## BACKGROUND

### I. Challenged testimony

While defendant's motion summarizes the testimony he challenges, his description leaves out important details. The following is a summary combining the expected testimony of the four government experts.

Corn is the largest crop grown in China. Chinese demand for corn has increased in recent years, and this increase is expected to continue. The Chinese government has placed a high priority on food security, and the government wants to grow within China all, or nearly all, the corn China consumes. To help achieve this goal, the government has designated certain companies as "National Key Dragon Head Enterprises," and has supported such companies in numerous ways. DBN and its seed company subsidiary, Kings Nower, are both such companies.

In order to meet its growing demand for corn, China will have to significantly increase its corn yield. Chinese yield lags significantly behind that of the United States. A primary reason for this difference is genetics: American corn germplasm produces significantly higher yields than Chinese corn germplasm. This is true for

2

several reasons, including that U.S. corn is designed to be planted at much higher densities. It is also genetically modified to produce valuable traits, including resistance to pests. Studies show that when U.S. varieties and Chinese varieties were grown in the same locations in China using the same farming practices, the U.S. varieties produced significantly higher yields than the Chinese varieties.

The protection of intellectual property in China is relatively weak. This has at least two consequences. First, Chinese companies have not made the same investment as American companies in developing new varieties of corn. For this and other reasons, Chinese seed companies are not competitive with American seed companies. So far, Chinese seed companies have been unable on their own to develop corn varieties that yield as much as American varieties.

Second, American seed companies don't grow or sell their best varieties in China. In order to steal the best American varieties from fields, a Chinese competitor would have to come to the United States.

Farmers want to buy corn seeds that produce the highest yields. This is true in China, which is moving to mechanized corn production. A Chinese seed company such as DBN that gained access to top American seed varieties would reap significant profits.[1]

---

[1] The government has disclosed this testimony through a combination of four experts, Dr. Frederick Gale, Dr. Dermot Hayes, Dr. Stephen Smith, and Dr. Kendall Lamkey. Their testimony is summarized in more detail in Government Exhibits 1-4. While the evidence summarized above combines testimony from multiple experts, the government will probably not require all four experts to testify on these matters at trial.

## II. Defendant's motion

Though defendant presents his motion as a *Daubert* challenge, it is really just an ordinary motion in limine based on Federal Rules of Evidence 401 and 403. Defendant does not question whether the proposed testimony is proper expert testimony, and, with one small exception, does not challenge the qualifications of the government's experts. Rather, he claims the testimony is irrelevant, or that its relevance is substantially outweighed by the risk of unfair prejudice. This is a purely legal argument. It does not require an evidentiary hearing to resolve. And it is wrong.

## ARGUMENT

### I. The evidence is relevant

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. "The fact to which the evidence is directed need not be in dispute." *Id.,* Advisory Committee Notes (1972). And "[t]he threshold for relevance," including the relevance of expert testimony, "is quite minimal." *United States v. Omar*, 786 F.3d 1104, 1112 (8th Cir. 2015).

Here, the expert testimony helps establish motive—the motive of defendant, his coconspirators, and his employer, DBN, to steal the valuable corn seeds of American companies. It is hornbook law that in a criminal case, "evidence of motive is relevant and admissible," and, indeed, "often of great importance." Wharton's Criminal Evidence § 4:45 (15th ed. 2015); *accord United States v. Anderson*, 783

F.3d 727, 745 (8th Cir. 2015).

Defendant is charged with conspiring to steal the trade secrets of Pioneer and Monsanto, and with conspiring to transport stolen property worth more than $5,000. The expert testimony described above will help the jury understand defendant and DBN's motive to travel to the United States, steal Pioneer and Monsanto corn seed, and smuggle that seed back to China. The seed was extremely valuable. American corn companies have developed some of the best corn germplasm in the world. The seeds grown in the United States produce yields significantly better than seeds available in China. China needs high-yielding seeds to feed its population. Farmers want to buy it. Seed companies want to sell it. DBN couldn't develop seeds of this quality on its own, so it chose to steal them from American corn fields.

Defendant claims the expert testimony doesn't prove his motive to steal trade secrets, as opposed to corn that was publicly available. (Dkt. 486 at 8-9.) Even if that were true, the evidence would still be relevant to count two, which charges conspiracy to transport stolen property, regardless of whether that property was a trade secret. The testimony helps show defendant's intent to steal valuable corn seed from American companies—the crime charged in count two.

For several reasons, the evidence is also relevant to count one, the conspiracy to steal trade secrets. According to defense filings, the central defense at trial will be that defendant and others conspired to steal seeds they believed were publicly available, and therefore not secret. The expert testimony will help show that is

5

false: if the seeds and their germplasm were publicly available, the breeding programs of Chinese companies like DBN should have been on par with Pioneer and Monsanto's, rather than lagging far behind.

Another facet of the defense is that the defendants believed all the seeds they stole were patented, and that none of these patented seeds contained trade secrets. The expert testimony will help refute this by showing DBN's strong financial motive to steal the most valuable American seeds—whether or not they were patented. The American seeds were far better than anything DBN was capable of creating on its own, and if DBN managed to swipe the best germplasm from two of the most successful seed companies in the world, DBN stood to make a lot of money. Once the defendants decided they would sneak into American corn fields and steal the valuable property of Pioneer and Monsanto, the defendants had no reason to limit their conspiracy to seeds that had been patented, and every reason to steal everything they could get, including trade secrets.

Therefore, the expert testimony it not merely relevant; it goes to the heart of what will be the central dispute at trial.

## II. The evidence will not result in unfair prejudice.

Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." All relevant evidence offered against a defendant is prejudicial, and properly so. *See United States v. Meyers*, 503 F.3d 676, 681-82 (8th Cir. 2007). The rule focuses on unfair prejudice, which means evidence that encourages the jury to decide the case

on an improper basis, typically improper emotion. *Id.*; *Anderson*, 783 F.3d at 745.

The Eighth Circuit has held that when the court considers evidence under Rule 403, "the general rule is that the balance should be struck in favor of admission." *United States v. Augustine*, 663 F.3d 367, 373 (8th Cir. 2011). Other circuits have explained that the exclusion of otherwise admissible evidence under Rule 403 is an "extraordinary remedy" that "should be used sparingly." *United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013); *accord United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011); *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009); *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987).

In practice, the Eighth Circuit has joined other courts of appeals and shown great reluctance to exclude evidence under Rule 403. To take just one example, the Eighth Circuit has held that in a drug case, a jury may hear that the defendant murdered a potential witness against him, because such evidence is relevant to prove the defendant's consciousness of guilt and is not unfairly prejudicial. *United States v. Castleman*, 795 F.3d 904, 914-16 (8th Cir. 2015). The proposed evidence in this case plainly pales in comparison to a defendant's commission of murder. And the probative value of the proposed evidence is high. As the Eighth Circuit has recently recognized, evidence of a defendant's "possible financial motive" to commit the crime has "substantial probative value." *Anderson*, 783 F.3d at 745 (rejecting Rule 403 challenge to such evidence).

In support of his argument that this is a rare case requiring the exclusion of relevant evidence, defendant asserts a non-sequitur. He claims evidence showing

7

DBN's financial motive to steal American corn will cause the jury to convict him based on racial prejudice. (Dkt. 486 at 9-11.) But the government's evidence is simply not about race. The Chinese government wants to be self-sufficient when it comes to corn production, and the government supports Chinese agricultural companies to accomplish this goal. Chinese seed companies don't have corn seeds that can produce the type of yield necessary to grow enough corn in China. American seed companies do have such corn seeds. If Chinese companies could get American corn germplasm, they would make lots of money. Evidence along these lines does not inflame racial hatred.[2]

If DBN had employed a white American to steal corn from Pioneer and Monsanto's fields in the United States so DBN could use that corn as part of its breeding program, the proposed testimony would be equally admissible against the American defendant as proof of DBN's financial motive. If a German seed company had a similar financial motive to steal American corn, the proposed testimony would be equally admissible against it.

---

[2] For these reasons, the one Eighth Circuit case defendant can muster is miles away from this one. In *United States v. Vue*, 13 F.3d 1206 (8th Cir. 1994), two defendants of Hmong ethnic descent were on trial for smuggling opium in the Twin Cities. *Id.* at 1207. At trial, the case agent testified at length that opium smuggling in the Twin Cities was primarily conducted by "Hmong individuals," and estimated that 95% of the investigations into such crimes involved the Hmong. *Id.* at 1211-12. This was mere propensity evidence of the worst kind; its only relevance was to suggest the defendants must have committed the crime because they were of Hmong descent. Unsurprisingly, the Eighth Circuit held the evidence was improper and reversed the convictions. *Id.* at 1213. Here, in contrast, no one is suggesting that most, much less 95%, of people who steal American intellectual property are Chinese. Furthermore, the expert testimony summarized above will not in any way suggest defendant is guilty because he is Chinese, or that his Chinese ethnicity is evidence of his guilt.

Defendant claims it would be "improper" for any evidence or argument at trial to connect DBN in any way to the Chinese government. (Dkt. 486 at 10.) That can't be right. Congress has passed a statute making it a crime for a defendant to steal trade secrets "intending or knowing that the offense will benefit any foreign government . . ." 18 U.S.C. § 1831(a). There is no "China exception" to the statute, and no rule forbidding evidence that a defendant stole trade secrets on behalf of the Chinese government. And even where, as here, the government did not charge that defendant acted on behalf of a foreign government, evidence that he did so is admissible if it helps establish defendant's motive to steal.

Eighth Circuit precedent makes clear that defendant's motion is not a close call. For example, in *United States v Ali*, 799 F.3d 1008 (8th Cir. 2015), and *United States v. Omar*, 786 F.3d 1104 (8th Cir. 2015), the defendants were native-born Somalis charged with providing material support to al Shabaab, a terrorist organization in Somalia. *Ali*, 799 F.3d at 1014; *Omar*, 786 F.3d at 1105. In both cases, the Eighth Circuit affirmed the admission of expert testimony that al Shabaab identifies with al Qaeda, Osama bin Laden, and global jihad, and that the group uses suicide bombings and improvised explosive devices. *Ali*, 799 F.3d at 1016, 1028; *Omar*, 786 F.3d at 1107-08, 1112-13. The Court rejected a Rule 403 challenge to the evidence, and concluded that such testimony was not unfairly prejudicial because it was "dry and academic." *Ali*, 799 F.3d at 1028; *Omar*, 786 F.3d at 1113.

If expert testimony linking a defendant to al Qaeda and suicide bombing is

9

"dry and academic," then expert testimony about corn germplasm is likely to induce a coma. Such testimony can hardly be said to inflame the racial passions of the jury, and it does not violate Rule 403.

### III. Dr. Hayes is qualified to testify.

Defendant challenges the qualifications of the government's expert Dr. Dermot Hayes to make the following statement: "China does not have a strong record of protecting intellectual property rights and as a result, U.S. companies are reticent to sell their best varieties in that market." (Dkt. 486 at 11-12.) Dr. Hayes is qualified to give this testimony.

Dr. Hayes is a Professor of Economics and Finance and the Pioneer Chair in Agribusiness at Iowa State University. While his academic work does not focus specifically on intellectual property in China, it does focus on intellectual property in the seed industry, and Dr. Hayes has published multiple articles on that topic. (*See* Government Exhibit 5.) Dr. Hayes has also traveled repeatedly to China—six or seven times in the past twenty-eight years. Many of these trips involved visiting farms and corn production areas. Dr. Hayes has also interviewed the manager of Pioneer's seed production facility in China. (*See* Government Exhibit 6.)

Dr. Hayes considers it common knowledge among people who study intellectual property that China does not have a strong record of protecting intellectual property rights. This common knowledge has been confirmed by Dr. Hayes's repeated visits to China, where he has personally observed apparent violations of intellectual property rights that are open and widespread. His opinion

that lax intellectual property protection has prevented American seed companies from selling their best varieties in China is also informed by his discussions with Pioneer employees in China—who have told him so—and by the academic literature. One thesis of the literature is that Chinese corn production would increase if the Chinese introduced the best American seed varieties, which are not currently available in China.[3] (*See* Government Exhibit 7.)

This background leaves Dr. Hayes well-qualified to offer the testimony defendant challenges, and no hearing is necessary on this issue. *See United States v. Kenyon*, 481 F.3d 1054, 1061 (8th Cir. 2007) (holding that no hearing is necessary "[w]hen a district court is satisfied with an expert's education, training, and experience, and the expert's testimony is reasonably based on that education, training, and experience").

## IV. Defendant's charges of racism are false.

Defendant's motion goes beyond a standard evidentiary argument and, for the second time in this case, accuses the government and its witnesses of racism.[4] In sweeping condemnations, he claims, "the FBI's investigative tactics make clear that an unwarranted focus on the national origin of Mr. Mo and his co-defendants has profoundly affected this case." And he says, "the government's experts appear

---

[3] Specifically, Li, Yu, Xinglin Ma, Tianyu Wang, Yongxiao Li, Cheng Liu, Zhizhai Liu, Baocheng Sun et al. "Increasing maize productivity in China by planting hybrids with germplasm that responds favorably to higher planting densities." Crop Science 51, no. 6 (2011): 2391-2400.

[4] *See* Dkt. 290-1 at 4 & n.1; Dkt. 253-3 at 8-9 & n.9; Dkt 486 at 3-4.

unduly biased against Chinese nationals." (Dkt. 486 at 3-4.)

These are, of course, extremely serious charges. They are false. And the "evidence" defendant marshals to support them is less than flimsy. There is no need here to wade into the details of defendant's dashed-off allegations. But one point is worth emphasizing. When the FBI investigates the possible theft of intellectual property from American companies, it is not racist for agents to recognize that the Chinese government and Chinese companies have made a concerted effort to steal the intellectual property of American companies. This effort has been acknowledged by the President of the United States, former Attorney General Holder, the Director of the FBI, the former Director of the National Security Agency, as well as academic commentators and others too numerous to count.[5] While the government does not intend to offer general evidence at trial of China's campaign to steal U.S.

---

[5] *E.g.,*

http://www.nytimes.com/2015/09/16/world/asia/cyberthreat-posed-by-china-and-iran-confounds-white-house.html

https://www.whitehouse.gov/the-press-office/2015/09/25/remarks-president-obama-and-president-xi-peoples-republic-china-joint

http://www.justice.gov/opa/pr/us-charges-five-chinese-military-hackers-cyber-espionage-against-us-corporations-and-labor

http://www.nbcnewyork.com/news/national-international/Obama-Xi-Personal-Ties-Cyber-Disputes--329439341.html

Peter K. Yu, *Trade Secret Hacking, Online Data Breaches, and China's Cyberthreat*s, 2015 Cardozo L. Rev. de novo 130 (2015).

intellectual property, when FBI agents and others investigate the theft of such property, they are not required to take leave of their senses.

If defendant has evidence this investigation was motivated by racism, he should file a motion to dismiss the indictment. If he doesn't have such evidence—and he doesn't—he should stop falsely and publicly accusing the government and its witnesses of racism.

## CONCLUSION

For the reasons stated above, the court should deny defendant's motion to exclude expert testimony about corn breeding in the United States and China.

Respectfully Submitted,

Kevin E. VanderSchel
Acting United States Attorney

By:  /s/ *Marc Krickbaum*

Jason Griess
Marc Krickbaum
Virginia Bruner
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: marc.krickbaum@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2015, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_\_ U.S. Mail  \_\_\_\_ Fax  \_\_\_\_ Hand Delivery

 X  ECF/Electronic filing  \_\_ Other means (email)

UNITED STATES ATTORNEY

By:  */s/  J. Beane*
      Legal Assistant