IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 4:13-CR-00147 |
| v. ) | |
| ) | |
| MO HAILONG, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S MOTION IN LIMINE RE: PRECLUDING QUESTIONING ON MATTERS SUBJECT TO LAW ENFORCEMENT SENSITIVE QUALIFIED EVIDENTIARY PRIVILEGE**

At trial, the United States intends to introduce evidence derived from (1) telephone calls made by the defendant and/or coconspirators; (2) email messages sent or received by the defendant; (3) audio recordings of conversations between coconspirators; and (4) global positioning system (GPS) data reflecting car trips made by the defendant and/or coconspirators. The trial will include testimony regarding this evidence.[1]

The government's witnesses will not testify about (1) the methods used to enter or exit the locations, (2) any specialized training or background beyond that necessary to describe the process and procedures for obtaining the evidence, (3) the technical specifications of audio recording devices and GPS monitoring devices, including the methods of installation, concealment, and location of the devices, (4) the technical specifications of email interception and monitoring, and (5) other non-testifying witnesses who were present for covert entries.

The United States hereby asserts the law enforcement sensitive qualified evidentiary privilege, and respectfully requests that this Court preclude the defense from cross-examining or

---

[1] The evidence described above has been produced to the defendant in discovery.

1

in any other manner soliciting testimony in the presence of the jury the following information: (1) legality of the collection of the above evidence; (2) technical specifications of the audio recording devices or GPS devices, to include methods of installation, concealment and location of devices; (3) methods of entering and exiting vehicles during installation, maintenance, or removal of audio recording or GPS devices; (4) training of government witnesses that would reveal sensitive government programs or sources and methods; and (5) the presence of other non-testifying witnesses during the installation, maintenance, or removal of audio recording or GPS devices.  As discussed herein, case law supports the exclusion of this type of evidence to protect national security interests.

## BACKGROUND ON THE LAW ENFORCEMENT SENSITIVE QUALIFED EVIDENTIARY PRIVLEGE

The Supreme Court in *Roviaro v. United States* recognized an "informer's privilege" that protects the identity of government informants and allows the government to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  *Roviaro*, 353 U.S. 53, 59 (1957).

Courts have since extended the qualified privilege in *Roviaro* to cover other investigative techniques, including traditional and electronic surveillance. For example, in *United States v. Green*, the D.C. Circuit upheld the privilege over the defendant's request, during a suppression hearing, to learn the location of an observation post used in a drug investigation:

> Just as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure

>of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property.

*United States v. Green*, 670 F.2d 1148, 1155-1158 (D.C. Cir. 1981). *See also United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982) (extending the privilege to the context of trial).

Courts have held that given "the public interest in effective law enforcement," the FBI may assert a qualified privilege to protect sensitive law enforcement techniques and procedures from disclosure. *Roviaro*, 353 U.S. at 59. With respect to electronic surveillance equipment, the Eleventh Circuit has held that the privilege applies, if information about the equipment is provided to defendants and the public, and it will "educate criminals regarding how to protect themselves against police surveillance. Electronic surveillance is an important tool of law enforcement, and its effectiveness should not be unnecessarily compromised. Disclosure of such information will also educate persons on how to employ such techniques themselves, in violation of Title III." *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986).

Even where some aspects of a protected technique are known to the public, "there is no principle . . . that requires an agency to release all details concerning these and similar techniques simply because some aspects of them are known to the public." *Barnard v. U.S. Dep't of Homeland Security*, 598 F.Supp.2d 1, 23 (D.D.C. 2009) (FOIA case). *See also Piper v. Dep't of Justice*, 294 F.Supp.2d 16, 31 (D.D.C. 2003) (in FOIA case, court accepted arguments that disclosure of the identity of an electronic device used for monitoring purposes would reduce its effectiveness and allow for individuals being investigated by the FBI to take countermeasures to circumvent the technique).

The law enforcement sensitive evidentiary privilege is "grounded in well-established doctrine and is widely recognized by the federal courts." *In re The City of New York*, 607 F.3d

923, 941 n. 18 (2d Cir. 2010). The privilege is designed, *inter alia*, to prevent disclosure of law enforcement techniques and procedures that, once revealed, could risk future circumvention of the law or compromise of the technique. *See generally, id*. at 940-45 (exploring the privilege in depth). *See also Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. July 31, 1998) (unpublished), *aff'd,* 203 F.3d 53 (D.C. Cir. 1999) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. [It] serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations."); *Van Horn*, 789 F.2d at 1507-1508 (finding the existence of a qualified government privilege not to disclose sensitive investigative techniques); *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988) (stating that the law enforcement privilege exists and prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation"); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir.1981) (stating that the "law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files") (internal quotation marks and ellipsis omitted).

Technical specifications of surveillance are covered by the "law enforcement sensitive" qualified evidentiary privilege. *See In re U.S. Dep't of Homeland Sec.,* 459 F.3d 565, 569-71 (5th Cir. 2006) (finding that "in today's times the compelled production of government

4

documents could impact highly sensitive matters relating to national security. Therefore, the reasons for recognizing the law enforcement privilege are even more compelling now than when [prior cases in the 5th Circuit] were decided.").

In *United States v. Van Horn*, the Eleventh Circuit specifically recognized that the privilege applies to electronic surveillance devices and upheld the privilege over the defendant's request to learn the type and placement of microphones in a co-defendant's office. *See* 789 F.2d 1492, 1507-08 (11th Cir. 1986). As referred to above, the law enforcement privilege prevents disclosure, preserves the confidentiality of sources, protects law enforcement, maintains the privacy of individuals, and prevents interference with an investigation." *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988).

## APPLICATION OF THE LAW ENFORCEMENT SENSITIVE QUALIFIED EVIDENTIARY PRIVILEGE

The law enforcement privilege is a qualified, not absolute privilege, and therefore, there are circumstances in which information subject to the privilege must nevertheless be disclosed. *In re The City of New York*, 607 F.3d at 940. The Second Circuit has analyzed, in depth, the actual procedure that should be followed by a court in determining whether the privilege bars disclosure. *Id*. at 948-49.

As a threshold matter, the party asserting the law enforcement privilege bears the burden of demonstrating that the material the government seeks to protect is the type of material that the law enforcement privilege is intended to protect—in this case, information pertaining to law enforcement techniques and procedures, as well as information that would seriously impair the ability of a law enforcement agency to conduct future investigations. *Id*. at 948.

Once the party asserting the privilege successfully shows that the law enforcement privilege applies, "there ought to be a pretty strong presumption against lifting the privilege." *Id*.

at 945 (quoting *Dellwood Farms,* 128 F.3d at 1125). The court must balance the public interest in non-disclosure against the need of a particular litigant for access to the privileged information. *Id.* at 948 (*quoting In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988); *see also Dellwood Farms*, 128 F.3d at 1125 (holding that the actual determination of the existence of the law enforcement sensitive privilege is a "particularistic and judgmental task" that involves balancing the "need of the litigant who is seeking privileged investigative materials . . . against the harm to the government if the privilege is lifted . . . ."). To rebut the presumption against lifting the privilege, the party seeking disclosure must show (1) that its request is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that there is a "compelling need" for the information relevant to the party's case. *In re City of New York,* 607 F.3d at 948, *quoting Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F. 2d 1336, 1343 (D.C. Cir. 1984). (Other relevant criteria courts have used in determining whether the party seeking disclosure has rebutted the privilege with respect to investigative equipment, often called the *Frankenhauser* criteria, includes: whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; whether the investigation has been completed; whether the information sought is available through other discovery or from other sources; and the importance of the information sought to the plaintiff's case. *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973); *Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998); *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).

Even if the party seeking disclosure successfully rebuts (by a showing of, among other things, a "compelling need"), the court must then weigh the public interest in non-disclosure

6

against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required. *In re City of New York*, 607 F.3d at 945.

To assess both the applicability of the privilege and the need for the materials, the court must ordinarily review the materials in question or hold an evidentiary hearing in chambers. Frequently, because filing documents under seal may inadequately protect particularly sensitive information, the court may, in the exercise of its informed discretion and on the basis of the circumstances presented, require that the party possessing the materials appear *ex parte* in chambers to submit the materials for in camera review by the judge. *Id.* at 948-49. (An appropriately general docket entry memorializing any *ex parte* proceedings can be entered in the public records of the district court so long as it does not compromise the interests of the party holding the confidential information, or the public. *Id.* at 949 n. 25); *In re U.S. Department of Homeland Security*, 459 F.3d at 571 (instructing the district court to review the information for which the law enforcement sensitive privilege is being asserted in camera to evaluate whether the privilege applies.)

If the court determines that the law enforcement privilege is not sufficient to protect disclosure of the materials at issue, the materials must be disclosed. *In re The City of New York*, 607 F.3d at 949. However, to minimize the effects of disclosure, the court can restrict the manner in which the documents are provided through the issuance of a protective order. The Second Circuit suggested that where release is directed, the documents should be available only on an "attorneys' eyes only" basis or requiring that the documents-and other submissions that reference them-be filed under seal. *In re The City of New York*, 607 F.3d at 949.

The court will essentially consider the defendant's "need [for] the evidence to conduct his defense and [whether] there are . . . adequate alternative means of getting at the same point. The

7

degree of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege." *Harley*, 682 F.2d at 1020; *see also United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (reviewing "whether the [defendant] demonstrate[s] an authentic 'necessity,' given the circumstances, to overbear the qualified privilege"); *United States v. Foster*, 986 F.2d 541, 543-45 (D.C. Cir. 1993) (balancing defendant's need for information against importance of government's interest in avoiding disclosure).

## GOVERNMENT'S ASSERTION OF THE LAW ENFORCEMENT SENSITIVE QUALIFIED EVIDENTIARY PRIVILEGE

The material in this case that the United States is seeking to protect is of the type that the law enforcement privilege envisioned—that is, information pertaining to law enforcement techniques and procedures, as well as information that would seriously impair the ability of a law enforcement agency to conduct future investigations. Moreover, the defendant does not have a "compelling need"—or, the government submits, any need—to solicit testimony pertaining to any of that information.

As to the legality of the collection of the evidence, to the extent that defendant has standing to challenge the legality of various collections, defendant has filed various motions to suppress evidence. This Court has already ruled on all of those motions, so the legality of evidence collection has already been adjudicated. Any further attempts to solicit testimony regarding the legality of evidence collection, or any details of specific judicial authorizations—including some details of classified authorizations—would serve no legitimate defense purpose. Details of classified authorizations in particular fall within the law enforcement privilege, as disclosure of such details could negatively impact ongoing national-security-related investigations.

As to the technical specifications and installation/location/concealment details of the surveillance or GPS devices, disclosure of such specifications or details would unnecessarily compromise the sources and methods used and the future deployment of these investigative tools. For example, with specific knowledge of the techniques used or the concealments, a criminal defendant, or other bad actors observing the trial, could defeat the purpose of the investigative tools. The same can be said for details of methods used for entering and exiting vehicles in connection with use of these surveillance tools; those details would enable future investigative targets to detect use of these tools and thereby impede investigations. The government cannot foresee a legitimate, let alone compelling, defense need for these details.

The same is true for questioning of law enforcement witnesses regarding sensitive training that doesn't relate to their testimony. Testimony related to sensitive training programs could lead to disclosure of sensitive law enforcement programs or even classified material. Moreover, testimony on such matters does not relate to the specific roles of these witnesses in this case and therefore is not relevant, nor is it helpful to the defendant.

Finally, the identity of other non-testifying government personnel present during the activities referred to herein is not relevant. If the identity of these individuals were revealed it could compromise sensitive details—such as the number, type, or specific identities of personnel used to implement certain investigative techniques—and possibly lead to disclosure of sensitive government programs. The public's knowledge of such tradecraft and personnel could enable individuals to employ measures to evade such law enforcement actions. More importantly, such information would not be helpful to the defendant.

These possibilities present an unacceptable risk, and squarely demonstrate how disclosure of the information discussed herein "would be contrary to the public interest in the effective

functioning of law enforcement," and it would compromise "the integrity of an enforcement technique" used, which is the hallmark of the evidentiary privilege. Any compromise of the law enforcement sensitive information discussed herein will have a detrimental impact on the national security of the United States.

Moreover, the public interest in nondisclosure significantly outweighs defendant's need for the information. The FBI has always asserted that its sources and methods, to include electronic surveillance capabilities and equipment, are law-enforcement sensitive. In addition, FBI policy dictates that the devices themselves are not to be compromised through court proceedings. The probative value of any evidence elicited by the defense concerning technical specifications of audio recording or GPS devices, tradecraft of entering and exiting vehicles in connection with the use of such devices, specific training of government witnesses on sources and methods, and the identity and role of other non-testifying witnesses during collection activities, in light of the national security interests related to these investigative techniques, is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time. Fed. R. Evid. 403.

If the court requires further information or explanation on any matter contained within this motion, the government requests that the court hold an *ex parte* hearing so that the government may have the opportunity to provide further explanation regarding sensitive and/or classified matters.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court instruct the defense and any defense witnesses not to discuss any of the matters set out in this motion without first obtaining permission from the Court outside the presence and hearing of the jury. In

particular, the court should preclude mention of (1) the methods used to enter or exit the locations, (2) any specialized training or background beyond that necessary to describe the process and procedures for obtaining the evidence, (3) the technical specifications of audio recording devices and GPS monitoring devices, including the methods of installation, concealment, and location of the devices, (4) the technical specifications of email interception and monitoring, and (5) other non-testifying witnesses who were present for covert entries.

Respectfully Submitted,

Kevin E. VanderSchel
Acting United States Attorney

By: */s/ Jason Griess*
_____
Jason Griess
Marc Krickbaum
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: jason.griess@usdoj.gov

*/s/ Matthew Walczewski*
_____
Matthew Walczewski
Trial Attorney
U.S. Department of Justice
600 E Street NW
Washington, DC 20004
Tel: (202) 233-0986
Fax: (202) 233-2146
Email: matthew.walczewski@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_\_ U.S. Mail    \_\_\_\_ Fax    \_\_\_\_ Hand Delivery

 X  ECF/Electronic filing    \_\_ Other means (email)

UNITED STATES ATTORNEY

By:    */s/   Jan Beane*
      Legal Assistant